IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO, </br></br> Plaintiff </br></br> v. </br></br> ROLLING STONE LLC, </br> SABRINA RUBIN ERDERLY, and </br> WENNER MEDIA LLC, </br></br> Defendants. | Case No. 3:15-cv-00023-GEC |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ADDITIONAL TIME TO DEPOSE "JACKIE"**

Plaintiff Nicole P. Eramo, through her undersigned counsel, respectfully submits this Memorandum of Law in Support of her Motion for Additional Time to Depose "Jackie."

Dated: March 15, 2016

Respectfully submitted,

By: /s/ *Elizabeth M. Locke*
Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
Andrew C. Phillips (VA Bar No. 88880)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
andy@clarelocke.com

*ATTORNEYS FOR PLAINTIFF*

## TABLE OF CONTENTS

Page

INTRODUCTORY STATEMENT ................................................................................ 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ............................ 2

ARGUMENT ..................................................................................................................... 8

CONCLUSION ............................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Moore v. CVS Corp.*
2005 WL 581357, at *2 (W.D.Va. Mar. 11, 2005) .................................................................. 8

*Syncora Guarantee Inc. v. EMC Mortgage Corp.*
2012 WL 12505608, at *2 (N.D. Cal. Mar. 8, 2012) ............................................................... 9

**Rules**

Fed. R. Civ. P. 30(d) Committee Notes (2000) .................................................................. 8, 9

# INTRODUCTORY STATEMENT

In accordance with the Court's February 18, 2016 Order [Dkt. 49], and pursuant to Federal Rule of Civil Procedure 30(d), Plaintiff respectfully requests that the Court enter an order permitting Plaintiff additional time to depose "Jackie,"[1] a nonparty who was the principal source for *Rolling Stone's* widely publicized and defamatory article that is the subject of this action. While the Federal Rules set forth a presumptive duration of seven hours for a deposition, the Court may extend this time period on a showing of good cause when necessary for a fair examination of the deponent. Here, additional time will be necessary to fairly examine Jackie, for three reasons.

***First***, Jackie was the central source for *Rolling Stone's* defamatory article, "A Rape on Campus: A Brutal Assault and Struggle for Justine at UVA," (hereafter, "the Article") **both** for *Rolling Stone's* now-discredited claims that Jackie was the victim of a gang-rape hazing ritual at a University of Virginia fraternity — the alleged details of which *Rolling Stone* falsely claimed were relayed by Jackie to Plaintiff, Dean Nicole Eramo — as well as for *Rolling Stone's* false claims that Plaintiff was indifferent to Jackie's supposed gang rape and sought to conceal and cover it up. *Rolling Stone's* reporter and "fact checker" interviewed Jackie at length about her supposed assault and abusive treatment at the hands of Dean Eramo, interviewing her some ten or more times over the course of five months. These interviews generated over 100 single-spaced pages of notes and transcripts, and four hours of audio recordings. A fair examination of what Jackie told *Rolling Stone* and when will require more than Plaintiff's pro-rata share of the presumptive time allotted by Rule 30.

---

[1] As in previous briefing before the Court and out of deference to the requests of Jackie's counsel in the continuing spirit of cooperation and good faith, Plaintiff herein is referring to this nonparty only as "Jackie," the moniker *Rolling Stone* used for her in the article at issue.

***Second***, all parties to this action have indicated that they intend to question Jackie extensively. The *Rolling Stone* Defendants have stated that they intend to question Jackie for a full half of the seven hours, meaning that Plaintiff's counsel would have only 3.5 hours to question Jackie. This is insufficient for a fair examination, and the need for all parties to this action to question Jackie at length is a factor that warrants additional time.

***Third***, Plaintiff anticipates that the questioning of Jackie will be particularly time-consuming, and that her counsel will assert frequent objections to the scope of the questioning, obstructing the free questioning of Jackie. Jackie's counsel has also flatly rejected Plaintiff's good-faith attempts to reach pre-deposition factual stipulations that would aid in shortening the scope and length of the deposition. Moreover, the voluminous evidence that Jackie has a well-documented history of making untruthful statements about the very subject matter at issue here is likely to complicate the deposition, leading to further objections by the witness and her counsel.

For these reasons, Plaintiff requests a total of 6.5 hours to question Jackie on the record, exclusive of breaks, extended objections, colloquy among counsel, or court conferences. Plaintiff cannot speak definitively for *Rolling Stone's* counsel, but understands that counsel for all Defendants has indicated that they require approximately 3.5 hours to question Jackie. Thus, in total, Plaintiff's request asks that Jackie be subject to ten hours of questioning. This request thus asks for only a modest three total hours beyond Rule's 30's presumptive allotment, and it would still permit the questioning to be completed in a single day of testimony. Moreover, Plaintiff's counsel wishes to stress to the Court that counsel will make every effort possible to complete the questioning in less than the time requested.

PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff Nicole P. Eramo commenced this action on May 12, 2015, by filing a Complaint in the Circuit Court for the City of Charlottesville. (May 12, 2015 Complaint, *Eramo v. Rolling*

2

*Stone LLC, et al.*, No. 3:15-cv-00023-GEC, (Va. Cir. May 12, 2015) ("Compl.") [Dkt. 1-1].) The Complaint names as defendants Rolling Stone LLC and Wenner Media LLC, the entities that publish *Rolling Stone* magazine, as well as Sabrina Rubin Erdely, a contributing editor for *Rolling Stone*. (Compl. ¶¶ 18-20.) Plaintiff alleges that Defendants defamed Plaintiff in a November 19, 2014 article published in *Rolling Stone*, as well as in subsequent statements to the media, by claiming that Plaintiff — in her capacity as an Associate Dean of Students at the University of Virginia — attempted to cover up and conceal the supposed gang rape of a college student — called "Jackie" in the Article — in order to protect the University's reputation. (*See generally id.*)

The Article begins with a graphic depiction of the violent gang rape of a University of Virginia ("UVA") freshman — called "Jackie" in the Article — at a fraternity house at UVA, which the Article claims occurred on September 28, 2012. (*Id.* ¶ 46.) The Article claims that Jackie was invited to a fraternity date function by a coworker at the UVA student pool, who then lured Jackie in a bedroom upstairs and coordinated an assault in which seven men took turns sexually assaulting Jackie over the course of three hours on top of a pile of broken glass. (*Id.* ¶ 47.) None of the alleged rapists are identified in the Article. (*Id.* ¶ 83.) According to the Article, a bloodied and bruised Jackie left the fraternity house at 3 a.m. and called several friends, who urged her not to report this violent gang rape because they worried it could hurt their social standing at UVA. (*Id.* ¶¶ 48-50.)

The Article then goes on to describe Jackie's interactions with Dean Eramo, who was the head of UVA's Sexual Misconduct Board. (*Id.* ¶¶ 54-71.) While Jackie is cast as the protagonist of the Article, Dean Eramo is cast as the villain. The Article claims that after Jackie reported her assault to UVA, Dean Eramo abused Jackie, discouraged Jackie from reporting her gang rape,

intentionally coddled Jackie into doing nothing, and took no action in response to Jackie's report — all, allegedly, to protect UVA's reputation. (*Id*. ¶¶ 54-65.) In subsequent media appearances, the reporter, Ms. Erdely, further claimed that Dean Eramo "brushed off" Jackie, "did nothing," sought to "suppress" Jackie's sexual assault, failed to report it to police, and "discouraged" Jackie from formally pursing punishment against her supposed attackers. (*Id*. ¶¶ 77-80.)

Eventually, the Article was proven to be almost entirely fictional. Within two weeks of its publication, the fraternity named as the site of Jackie's gang rape produced evidence demonstrating that there was no "date function" or any other gathering at the fraternity on the night that *Rolling Stone* claimed the attack occurred, and that no members of the fraternity matched the description given of Jackie's chief assailant. (*Id*. ¶ 90.) Erdely's evasive answers during a media tour designed to capitalize on the publicity surrounding the Article led to further questioning when it became apparent that Erdely had not interviewed or attempted to interview any of the alleged attackers or the three friends that supposedly met with Jackie on the night of the assault. (*Id*. ¶¶ 85-88.) As more responsible media outlets began to investigate, it became apparent that Jackie's claims were entirely false, and that she likely invented the supposed gang rape in order to gain the sympathy of a man she was romantically interested in and to cover for her failing grades. (*Id*. ¶¶ 56, 93-94.) On December 6, 2014, a group of students familiar with Dean Eramo — including Jackie and other students who were interviewed by Erdely — wrote an open letter to the *Cavalier Daily* newspaper decrying *Rolling Stone's* false portrayal of Dean Eramo and lauding her work on behalf of sexual assault victims. (*Id*. ¶179.)

On March 23, 2015, following a lengthy investigation, the Charlottesville Police Department issued a report stating that it found "no substantive basis of fact to conclude that an incident occurred that is consistent with the facts described in the November 19, 2014, Rolling

4

Stone Magazine article." (*Id*. ¶ 125.) The report includes numerous details conclusively rebutting the claims made in the *Rolling Stone* Article. (*Id*. ¶¶ 107-125.) The police also noted that Jackie refused to speak with police or cooperate with the investigation. (*Id*. ¶ 116.)

The Charlottesville Police further demonstrated that *Rolling Stone's* claims about Dean Eramo were entirely false. When Jackie initially met with Dean Eramo, Jackie related a version of her supposed sexual assault that was very different from the tale depicted in the Article. (*Id*. ¶ 108.) Jackie refused to identify the alleged perpetrators or where the assault supposedly occurred, and was adamant that she did not want to formally report her sexual assault to UVA or the police. (*Id*. ¶ 109.) Far from seeking to suppress Jackie's sexual assault, Dean Eramo urged Jackie to report the assault to police, and twice arranged for detectives to meet with Jackie in Dean Eramo's presence. (*Id*. ¶¶ 109-113.) However, when Jackie learned that the police wanted to investigate whether her claims were true, she refused to cooperate and insisted that she did not want the police to initiate an investigation. *(Id*. ¶¶ 112-113.)

On December 5, 2014 *Rolling Stone* issued a statement acknowledging "discrepancies" in Jackie's account, blaming Jackie for misleading Erdely, and claiming that their trust in Jackie had been "misplaced."[2] Rolling Stone, however, waited another four months before finally retracting the Article, after a report commissioned by *Rolling Stone* itself described the Article as a "journalistic failure," and concluded that *Rolling Stone* "set aside or rationalized as unnecessary essential practices of reporting." (*Id*. ¶ 14.) Commentators have called the Article "a disgrace" and "bogus journalism." (*Id.)*

---

[2] *See* Krishnadev Calamur, *'Rolling Stone' Says Trust In Gang-Rape Accuser Was 'Misplaced'*, NPR (Dec. 5, 2014, 1:46 PM), *available at* http://www.npr.org/sections/thetwo-way/2014/12/05/368748289/rolling-stone-says-trust-in-gang-rape-accuser-was-misplaced.

5

On July 27, 2015, Plaintiff served "Jackie" with a document subpoena pursuant to Federal Rule of Civil Procedure 45, demanding that she produce documents related to her communications with Erdely, *Rolling Stone*, UVA, and others regarding her claimed sexual assault and her interactions with Dean Eramo that were the subjects of the Article. (*See generally* Nov. 13, 2015 Pl.'s Mem. In Support of Her Mot. To Compel Nonparty Jackie's Compliance with Rule 45 Subpoena, *Eramo v. Rolling Stone,* No. 1:15-MC-35-EBL/IDD (Nov. 13, 2015) ("Mot. To Compel")[Dkt. 2]).) After counsel for Dean Eramo granted a generous extension of time to respond, counsel for Jackie served her objections on October 14, 2015, refusing to provide any documents whatsoever in response to the Subpoena. (*Id.* at 8.) Following numerous attempts to meet and confer with Jackie's counsel in an attempt to gain her cooperation, Plaintiff was required to file a motion to compel her compliance with the document subpoena. Jackie's counsel thereafter moved to transfer that motion to this Court, and sought additional delay by requesting additional and supplemental briefing on the motion.

On January 25, 2016, the Court entered an Order granting in part and denying in part the motion to compel. (*See* Jan. 25, 2016 Order, No. 15-mc-00011[Dkt. 35].) The Court granted the motion in full or in part with respect to each category of documents sought by Dean Eramo, but denied the motion in part by limiting certain document demands in scope and/or temporally. (Jan. 25, 2016 Mem. Op., No. 15-mc-00011 [Dkt. 34].) On February 1, 2016 Plaintiff issued a deposition subpoena to Jackie. *Rolling Stone* issued its own deposition subpoena to Jackie on the same day. Jackie's counsel thereupon initiated two telephonic hearings with the Court, arguing that Jackie should not be subject to a deposition. On February 18, 2016, the Court ordered that Jackie sit for a deposition on April 5, 2016. (Feb. 18, 2016 Order 3:15-cv-00023-GEC [Dkt. 50].) The Court further ordered that any party seeking additional time to depose Jackie file a

6

motion on or before March 15, 2016. (*Id*.) On February 25, 2016, Plaintiff issued a subpoena for Jackie's April 5 deposition.

On March 3, 2016, counsel for Plaintiff and counsel for Jackie held a telephone call to discuss whether the parties could agree to any preconditions or stipulations regarding the scope and duration of the deposition. Counsel for Jackie's only proposal was that Plaintiff be completely barred from asking Jackie any questions whatsoever regarding the tale of her supposed sexual assault that she relayed in detail to *Rolling Stone*. On March 4, 2016, counsel for Plaintiff followed up by letter, explaining in detail why everything Jackie told to *Rolling Stone* — including the tale of sexual assault she told to *Rolling Stone* — was plainly relevant to this action and that Plaintiff could not agree to such a blanket prohibition on questioning in advance of the deposition. However, Plaintiff offered a compromise in order to limit the length of the deposition and address Jackie's counsels' claimed concern about invasive questioning regarding the details of Jackie's supposed sexual assault. *Id*. Plaintiff's counsel stated that if Jackie would agree to stipulate to certain facts regarding *Rolling Stone's* description of her supposed sexual assault — many or all of which have been publicly reported by the Charlottesville Police Department and numerous media outlets — then Plaintiff would agree not to question Jackie in detail about her supposed sexual assault, and that the deposition would likely be considerably shortened.[3] *Id*. Jackie's counsel rejected this proposal and to date has not provided any counter-proposal. Jackie's counsel has also stated that she will not agree to Plaintiff's request for additional time to depose Jackie.

---

[3] For example, Plaintiff proposed that Jackie stipulate that she was not gang raped at Phi Kappa Psi on September 28, 2012, and that the description of the supposed gang rape published by *Rolling Stone* was factually inaccurate.

ARGUMENT

While Federal Rule 30(d) places a nominal seven-hour limitation on depositions, the comments to Rule 30 make clear that the Court has discretion to allow for additional time where "necessary for a fair examination of the deponent." Fed. R. Civ. P. 30(d) Committee Notes (2000); *see also Moore v. CVS Corp.*, 2005 WL 581357, at *2 (W.D. Va. Mar. 11, 2005) (granting an additional four hours to depose a witness and noting that "rigid application of the seven hour rule ought not provide an unnecessary roadblock to the interests of justice . . . .") Here, given Jackie's central role in the case, the sheer volume of her communications with *Rolling Stone*, the need for Plaintiff and Defendant to substantively and extensively question Jackie, and the anticipated contentiousness and difficulty of taking the deposition, there is good cause for a modest extension of the seven-hour time limit. Accordingly, Plaintiff requests that she be granted a total of 6.5 hours to depose Jackie — or three hours more than Plaintiff would be permitted if Plaintiff and Defendants were to split the default seven-hour time limit.

First, Jackie's role as the chief source for *Rolling Stone's* defamatory Article makes her an indisputably key witness in this case. As the Court has previously recognized, "[o]ne of the main issues in [this] defamation action is defendants' due diligence in relying on Jackie as a source for the Article," and a corollary issue is "the question of what defendants could have discovered about Jackie's story and credibility" if they had exercised appropriate diligence. (*See* Jan. 25, 2016 Mem. Op. at 10.) The Court has also recognized the relevance of evidence relating to whether "defendants negligently or recklessly disregarded red flags about Jackie's story." (*Id*. at 9.) In order to probe these issues and learn what *Rolling Stone* knew, could have known, and should have known about Jackie's credibility as a primary source, Plaintiff will need to question Jackie about her interviews with *Rolling Stone* and the content of those interviews.

8

Case 3:15-cv-00023-GEC   Document 54   Filed 03/15/16   Page 11 of 16   Pageid#: 1201

This is no small task. Jackie conducted some ten or more interviews with Erdely and *Rolling Stone*. She exchanged numerous emails and phone calls with Erdely. Erdely's notes of her interviews with Jackie run to over 100 single-spaced pages. The tape recordings of just *two* of those ten interviews run to four hours of audio. Moreover, Plaintiff will need to question Jackie about everything she may have told Erdely that Erdely did not see fit to memorialize in her notes. A mere 3.5 hours is simply not sufficient time for Plaintiff to fairly examine Jackie regarding all of these events and voluminous documents given Jackie's central role in this case, and there is therefore good cause for a modest extension of time. *See Syncora Guarantee Inc. v. EMC Mortgage Corp.*, 2012 WL 12505608, at *2 (N.D. Cal. Mar. 8, 2012) (granting two full seven-hour days to question a nonparty witness "of central importance to [the] litigation" where "both parties claim the need to affirmatively question her" about relevant facts).

Second, additional time is necessary because all parties have indicated in correspondence that they intend to question Jackie extensively. Because of Jackie's importance to this case, it is anticipated that the *Rolling Stone* Defendants will also seek to question Jackie regarding the information she provided to *Rolling Stone* in Erdely's voluminous notes and audio recordings. In fact, *Rolling Stone's* counsel has indicated that Defendants will want a full 3.5 hours to question Jackie. The need for all parties to extensively question this witness weighs in favor of a modest extension of time. *See id.*; *see also* Fed. R. Civ. P. 30(d) Committee Notes (2000) (the need for multiple parties to extensively question a witness is a factor to be weighed in considering requests for extension of time). It also bears noting that an equal split of seven hours is prejudicial to Plaintiff in that *Rolling Stone* has *already* had the opportunity to interview and question Jackie multiple times and over the course of many hours. What exactly Jackie did and did not tell *Rolling Stone* is information known *only to Jackie and Rolling Stone*, whereas

9

Plaintiff, the victim of Jackie and *Rolling Stone's* actions, must discover that information through Jackie's deposition testimony. It is thus fair and reasonable that if *Rolling Stone* is permitted 3.5 hours to question Jackie, Plaintiff should be permitted a modest amount of additional time.

Finally, Plaintiff believes additional time is warranted here because Plaintiff is concerned that despite Plaintiff's best efforts, the deposition may not proceed apace. As explained in detail above, Plaintiff has had significant difficulty for months gaining cooperation from Jackie and her counsel. That continues to be the case with respect to the deposition. In an effort to meet and confer regarding the amount of time for the deposition, Plaintiff's counsel proposed a short list of high-level factual stipulations designed to streamline the questioning and allow for fair discovery, while also showing sensitivity to Jackie's counsels' claim that subjecting Jackie to questioning about the specific details of her supposed sexual assault would be traumatizing. Plaintiff thus proposed that Jackie stipulate and testify to certain facts that did not require such specific questioning about the details of her sexual assault — for example, that the description of Jackie's supposed gang rape published by *Rolling Stone* was false, and that Jackie was not in fact sexually assaulted at the Phi Kappa Psi fraternity on September 28, 2012. *Id*. Essentially, Plaintiff merely requested that Jackie confirm by stipulation and/or testimony certain high-level facts that have already been publicized by the Charlottesville Police Department and innumerable media outlets. This attempt at compromise was flatly rejected.

Given the history with this witness, Plaintiff is concerned that excessive objections and instructions by counsel not to answer questions may take up precious record time at the deposition. If Jackie and/or her counsel are as uncooperative as they have been thus far in the discovery process, a mere 3.5 hours of questioning will be insufficient. For this additional reason, Plaintiff believes a modest additional allotment of time is warranted.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant her Motion for Additional Time to Depose Jackie, and enter an order permitting Plaintiff a total of 6.5 hours to question Jackie on the record, exclusive of breaks, extended objections, colloquy among counsel, and/or court conferences.

Dated: March 15, 2016                     Respectfully submitted,

By: /s/ *Elizabeth M. Locke*
Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
Andrew C. Phillips (VA Bar No. 88880)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
andy@clarelocke.com

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff's Motion for Additional Time to Depose Jackie in the above-captioned matter was served on the below counsel of record on March 15, 2016, via the Court's electronic filing system (for those attorneys that have registered), and via email and Federal Express (for Jackie's counsel).

Pat A. Cipollone
Rebecca R. Anzidei
Philip J. O'Beirne
Stein Mitchell Cipollone Beato & Missner LLP
1100 Connecticut Avenue N.W., Suite 1100
Washington, D.C. 20036
Telephone: (202) 737-7777
Fax: (202) 296-8312
Email: pcipollone@steinmitchell.com
pobeirne@steinmitchell.com
Email: ranzidei@steinmitchell.com

Palma Pustilnik
Staff Attorney
Central Virginia Legal Aid Society
1000 Preston Avenue, Suite B
Charlottesville, VA 22903
Telephone: (434) 327-1443
Fax: (434) 296-5731
Email: palma@cvlas.org

*Attorneys for Nonparty Respondent "Jackie"*

Michael John Finney
William David Paxton
Gentry Locke Rakes & Moore
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373
Telephone: (540) 983-9334
Fax: (540) 983-9400
Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara
Samuel M. Bayard

Davis Wright Tremaine LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC,
Sabrina Rubin Erdely, and Wenner Media LLC*

Dated: March 15, 2016                    By: /s/ *Elizabeth M. Locke*
                                              Elizabeth M. Locke

13