IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO ) | |
| ) | |
| Plaintiff ) | Case No. 3:15-cv-00023-GEC |
| ) | |
| v. ) | |
| ) | |
| ROLLING STONE LLC, ) | |
| SABRINA RUBIN ERDERLY, and ) | |
| WENNER MEDIA LLC, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO NON-PARTY RESPONDENT'S MOTION TO QUASH
PLAINTIFF'S RULE 45 DEPOSITION SUBPEONA OR IN THE ALTERNATIVE
<u>MOTION FOR A PROTECTIVE ORDER</u>**

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................. 1

**COUNTERSTATEMENT OF FACTS** .................................................................................. 3

**ARGUMENT** ........................................................................................................................... 4

    I.    **Respondent Failed to Meet and Confer in Good Faith as Required by the Federal Rules.** ................................................................................................................ 5

    II.   **The Court Has Already Recognized That Jackie Is A Highly Relevant Witness.** ........ 6

    III.  **Respondent Fails to Make Any Factual Showing of Harm.** .......................................... 8

    IV.  **Respondent's Requested Protective Order Proposal Would Unreasonably Limit Important Discovery** ................................................................................................. 11

**CONCLUSION** ..................................................................................................................... 13

**CERTIFICATE OF SERVICE** ............................................................................................. 15

**CASES**

*Alliance to End Repression v. Rochford*
   75 F.R.D. 428 (N.D. Ill. 1976) ................................................................................ 12

*Harrington v. New England Mut. Life Ins. Co.*
   684 F. Supp. 174 (N.D. Ill. 1998) ............................................................................. 11

*Humbert v. O'Malley*
   303 F.R.D. 461 (D. Md. 2014) ................................................................................. 10

*Mill-Run Tours, Inc. v. Khashoggi*
   124 F.R.D. 547 (S.D.N.Y. 1989) .............................................................................. 12

*National Life Ins. Co. v. Hartford Accident and Indemnity Co.*
   615 F.2d 595 (3d Cir. 1980) ..................................................................................... 12

*Payless Shoesource Worldwide, Inc. v. Target Corp.*
   237 F.R.D. 666 (D. Kan. 2006) .................................................................................. 5

*Perry v. Edwards*
16 F.R.D. 131 (W.D. Mo. 1954) ................................................................................... 12

*Robinson v. Potter*
   453 F.3d 990 (8th Cir. 2006) ....................................................................................... 5

*United States v. McGowan*
   590 F.3d 446 (7th Cir. 2009) ..................................................................................... 13

*United States v. Tunnell*
   667 F.2d 1182 (5th Cir. 1982) ................................................................................... 13

**RULES**

Federal Rule of Civil Procedure 26(c)(1) ................................................................... 4, 5

**MISCELLANEOUS**

Sheila Coronel, et al., "A Rape on Campus: What Went Wrong?," *Rolling Stone Magazine* (Apr. 5, 2015) *available at* http://www.rollingstone.com/culture/features/a-rape-on-campus-what-went-wrong-20150405 ........................................................................................ 10

# INTRODUCTION

Respondent "Jackie's" Motion to Quash Plaintiff's Rule 45 Deposition Subpoena or in the Alternative Motion for a Protective Order of March 15, 2016 should be denied in its entirety. The bulk of Jackie's Memorandum consists of overly aggressive, unwarranted, and inaccurate attacks on Plaintiff for issuing a deposition subpoena to the individual who was the chief source for the magazine article that is the subject of this defamation action. Respondent has set forth no legal basis for quashing or limiting Jackie's deposition. Jackie is, by any estimation, a key witness in this action and she is required to sit for a deposition.

*First*, the Court has already recognized that Jackie's role as the chief source for *Rolling Stone's* defamatory article makes her a highly relevant witness in this case, and has already issued an order directing that Jackie sit for a deposition. (*See* Mem. Op., No. 3:15-mc-00011 (Jan. 25, 2016) [Dkt. 34]); (Order, No. 3:15-cv-00023 (Feb. 18, 2016) [Dkt. 50].) Respondent's counsel failed to meet and confer on their request for the Court to revisit those Orders, and Respondent's brief noticeably fails to address or discuss the substance of the Court's prior Orders. Moreover, Respondent fails to offer any argument disputing the relevance of Jackie's testimony, and resorts instead to making extraneous attacks on Plaintiff. Because Jackie's testimony is highly relevant to both Plaintiff's claims and Defendants' defenses, she must be deposed. And because Jackie has already spent many hours being interviewed by *Rolling Stone* in advance of publication of "A Rape on Campus," the Court should grant Plaintiff's request for the full 6.5 hours of deposition time.

*Second*, Respondent's claim that the clear importance of Jackie's testimony in this matter is outweighed by the "harm" of requiring her to sit for a deposition is meritless. Jackie herself willingly gave ten or more interviews to *Rolling Stone* about the very topics at issue here, and voluntarily relayed the same false tale to *The Washington Post* and a UVA alumni magazine. The Charlottesville Police Department and Jackie's own friends have conclusively shown that the

sexual assault depicted in the *Rolling Stone* article simply did not happen, and Jackie and her counsel have yet to offer a shred of evidence or any explanation that it did notwithstanding Jackie's filing of dozens of pages of briefing on Plaintiff's subpoenas. Given these facts, it is apparent that the "harm" that Jackie and her counsel are truly concerned with is that she may be forced to admit, under oath, that she told a great many untruths to *Rolling Stone* and others. But that is not a legally viable basis for quashing a deposition.

*Third*, Jackie's request for a protective order requiring that she be deposed only by written questions relating solely to what Respondent told Defendants about Dean Eramo is not feasible and would severely and irreparably harm Plaintiff. Moreover, the Court has already stated during one of Respondent's myriad requests for telephonic conferences seeking "informal guidance" on these issues that such an approach would be acceptable only if the parties agree to it. Oral testimony given under oath and recorded by video permits the questioner and viewers of the deposition (for example, the judge and the jury during a trial) to evaluate the witness' credibility. The Court has already held that Jackie's credibility as a source for *Rolling Stone* is a key issue in the case, and that evidence tending to show that *Rolling Stone* should have learned of the many inconsistencies and falsehoods in Jackie's stories is relevant to this action. It has been widely reported that Respondent told *Rolling Stone* countless untruths that *Rolling Stone* should have learned were false if *Rolling Stone* had not purposely avoided corroborating Jackie's statements. Each untruth that Respondent told to *Rolling Stone* is relevant because *Rolling Stone's* purposeful refusal to verify anything Jackie told the magazine demonstrates *Rolling Stone's* negligence and actual malice in relying on Jackie as a source for its defamatory claims despite countless red flags suggesting she was not credible. Jackie's attempt to preemptively and broadly restrict questioning

about the veracity of what she told to *Rolling Stone*, and insisting that such question only take place in writing, would untenably handicap Plaintiff's ability to discover relevant evidence.

**COUNTERSTATEMENT OF FACTS**

The facts of this case are now well known to this Court. Plaintiff hereby incorporates by reference the statement of facts in her Motion for Additional Time To Depose "Jackie" of March 15, 2016 [Dkt. 53] and adds only the following:

On March 3, 2016, counsel for Plaintiff and counsel for Jackie held a telephone call to discuss whether the parties could agree to any preconditions or stipulations regarding the scope and duration of the deposition. Counsel for Jackie's only proposal was that Plaintiff be completely barred from asking Jackie any questions whatsoever regarding the tale of her supposed sexual assault that she relayed in detail to *Rolling Stone*. Jackie's counsel did not meet and confer with Plaintiff's counsel that she was seeking to revisit the question of whether Jackie should be deposed or whether that deposition should take place through written questions.

On March 4, 2016, counsel for Plaintiff followed up by letter, explaining in detail why everything Jackie told to *Rolling Stone* — including the tale of sexual assault she told to *Rolling Stone* — was plainly relevant to this action and that Plaintiff could not agree to such a blanket prohibition on questioning in advance of the deposition. However, Plaintiff offered a compromise in order to limit the length of the deposition. Plaintiff's counsel stated that if Jackie would agree to stipulate to certain facts regarding *Rolling Stone's* description of her supposed sexual assault — many or all of which have been publicly reported by the Charlottesville Police Department and numerous media outlets — then Plaintiff could agree not to question Jackie in specific detail about

3

her supposed sexual assault, and that the deposition would likely be considerably shortened.[1] *Id* at 1-2. Jackie's counsel rejected this proposal and did not offer any counter-proposals.

On March 15, 2016, Jackie filed and served her Motion to Quash Jackie's subpoena entirely and in the alternative, to enter a Protective Order and Memorandum in support of Her Motion to Quash. (Mot. to Quash Pl.'s Rule 45 Dep. Subpoena or in the Alternative Mot. for a Protective Order, No. 3:15-mc-00011-GEC (Mar. 15, 2016) [Dkt. 40]; Mem. in Support of Her Mot. to Quash. Pl.'s Rule 45 Dep. Subpoena or in the Alternative Mot. for a Protective Order, No. 3:15-00011-GEC (Mar. 15, 2016) [Dkt. 41].)

## ARGUMENT

Jackie's Motion does not present meritorious grounds for quashing her deposition, or for limiting the scope and manner of Jackie's deposition in the onerous ways she demands. Accordingly, the Motion should be denied in its entirety, for several reasons. First, neither her Motion nor Memorandum contains the attorney certification required by Federal Rule of Civil Procedure 26(c)(1), nor could it. Plaintiff was not given a fair opportunity to confer on any of the relief requested, as the only issue Jackie's counsel raised with respect to her deposition is completely different from any of the relief requested in her Motion. Accordingly, the Motion is facially defective and should be denied on that basis. Second, the Court has already held that Jackie is a highly relevant witness and ordered her deposition. Third, Respondent fails to identify any harm or any reason for limiting the deposition. Respondent provides only attorney argument and speculation — but not a shred of factual evidence — to justify the claimed harm. Finally, Respondent presents no grounds justifying her request to be deposed only by written questions on an extremely limited topic of questioning, which would severely prejudice Plaintiff.

---

[1] For example, Plaintiff proposed that Jackie stipulate that she was not gang raped at Phi Kappa Psi on September 28, 2012, and that the description of the supposed gang rape published by *Rolling Stone* was factually inaccurate.

4

**I.      Respondent Failed to Meet and Confer in Good Faith as Required by the Federal Rules.**

As an initial matter, Plaintiff's Motion is facially defective and should not be considered by the Court, because it fails to include a certification by Respondent's attorneys that they met and conferred in good faith with Plaintiff's counsel in an effort to resolve the dispute without court action, as required by Federal Rule of Civil Procedure 26(c)(1). *See Payless Shoesource Worldwide, Inc. v. Target Corp.*, 237 F.R.D. 666, 671 (D. Kan. 2006) (where plaintiff's failure to meet and confer in good faith about discovery deficiencies as well as certify that it had done so was sufficient to deny its motion); *see also Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006) (affirming district court's denial of plaintiff's motion to compel discovery responses because she could not demonstrate that she had conferred in good faith with the defendant). In fact, there was no such good faith effort. As noted above, Plaintiff's counsel and Jackie's counsel had one telephone conversation regarding the *scope* of Jackie's deposition, and the only proposal put forward by Jackie's counsel was that Plaintiff's counsel agree to be barred from asking Jackie any questions about her claimed sexual assault. Jackie's counsel did not confer regarding a motion to quash the deposition outright, regarding her new proposal that the deposition be by written questions and be "limited to the topic of statements made by Respondent to Defendants about Dean Eramo after July 12, 2014," or regarding the contention that the deposition should take place after summary judgment, as opposed to on the date the Court has already ordered it to take place. (*See* Mem. at 12-14.) The failure to confer in good faith regarding the actual relief requested and to certify having done so renders Respondent's Motion non-compliant with Rule 26(c)(1), and the Motion should be denied on that basis alone.

**II.       The Court Has Already Recognized That Jackie Is A Highly Relevant Witness.**

Even setting aside the procedural deficiencies of Respondent's motion, Respondent's substantive request that the deposition be quashed altogether ignores the previous rulings of this Court and relies on nothing but unwarranted attacks on Plaintiff and her counsel.  As the Court is aware, Respondent previously refused to comply with a document subpoena issued by Plaintiff, and for months insisted that Respondent was immune from participating in any discovery. Respondent forced Plaintiff to file a motion to compel compliance with the document subpoena, the Court rejected this contention, and it held that Jackie is a relevant witness that is subject to discovery. (*See* Mem. Op. at 9.)  Specifically, the Court held that "communications between Jackie and defendants, and between Jackie and Eramo/UVA, are ***highly relevant*** to the claims and defenses in the defamation action, and that discovery of such communications is proportionate to the needs of the case." (*Id*. (emphasis added).)  The Court also recognized that everything Jackie told to Defendants is relevant to this action because "Eramo argues that the statements in the Article were defamatory, and that defendants negligently or recklessly disregarded red flags about Jackie's story."  (*Id*.)  With respect to the issue of Jackie's credibility and the truth of what she told to *Rolling Stone*, the Court noted that "[o]ne of the main issues in the defamation action is defendants' due diligence in relying on Jackie as a source for the article." (*Id*. at 10.)  Finally, on February 18, 2016, after ***Respondent*** initiated a telephonic hearing to protest the deposition subpoena Plaintiff issued to Jackie, the Court issued an Order that, far from quashing the subpoena, stated "it is hereby ORDERED: The parties shall depose Jackie on April 5, 2016". (Order ¶ 1.)

Respondent's Memorandum fails to meaningfully address or request reconsideration of the Court's prior rulings that Jackie is subject to a deposition and that discovery regarding everything she told *Rolling Stone* is highly relevant to this action.  Indeed, the only "arguments" Respondent's attorneys make with respect to the obvious importance of Jackie's testimony are protracted

6

personal attacks on Dean Eramo and her counsel, and wholly irrelevant opinions from Jackie's counsel regarding the overall strength of Plaintiff's case against *Rolling Stone*. (*See* Mem. at 8-12.)[2] While Plaintiff could go on at length about the substantial strength of her case and the great likelihood that a jury will ultimately find *Rolling Stone* liable to Plaintiff, there is no need to do so here, because Jackie's Memorandum cites no authority suggesting that a third-party's uninformed opinion regarding the merits of an active suit is in any way relevant to the issue of whether that third party must comply with a valid deposition subpoena. While it bears noting that (1) the article at issue has roundly been proven to be completely false, (2) the Charlottesville Police have already confirmed that Jackie did not tell Plaintiff the "gang rape" story that appeared in *Rolling Stone* and that Plaintiff arranged multiple meetings between Jackie and detectives despite Jackie's resolute unwillingness to have her claims investigated, (3) the *Rolling Stone* Defendants were forced to ***publicly apologize*** to Dean Eramo, and (4) the actual defendants to this action did not even bother filing a motion to dismiss on any grounds, the plain fact is that Jackie's arguments are legally irrelevant and have no bearing on whether she is subject to a deposition.[3]

---

[2] Indeed, some of these arguments border on conspiracy theory, such as the repeated claim that Plaintiff's counsel has attempted to "de-designate" discovery documents concerning Jackie as part of a supposed effort to embarrass Jackie in the media. (*See* Mem. at 2, 3.) In fact, as the Court is aware, while Plaintiff and *Rolling Stone* have a dispute as to whether ***all*** of the materials Defendants voluntarily provided to the Columbia Journalism Review — not just documents relating specifically to Jackie — were properly designated as confidential, Plaintiff just last week filed a stipulated order indefinitely extending the deadline to file any motions to de-designate those documents precisely because Plaintiff sees no pressing need to file any of those documents publicly. (Stipulated Order (Mar. 11, 2016) [Dkt. 51-1.) Respondent's claims thus make no sense and are contradicted by an Order already entered by the Court. (Order (Mar. 15, 2015) [Dkt. 52].

[3] Respondent's claim that there is no need for a deposition because there are recordings and transcripts of Jackie's interviews with *Rolling Stone* is also inaccurate. (*See* Mem. at 9.) In fact, only two of the ten interviews she gave to *Rolling Stone* were audio recorded. The "transcript" in question is not a true transcript, but a word document of reporter Sabrina Erdely's rough notes of her conversations with Jackie (which do not include Jackie's two interviews with *Rolling Stone's* fact checker, for which no notes have been produced). Defendants have never claimed, and Plaintiff does not by any means concede, that these rough notes are a verbatim "transcript" of Jackie's interviews, or that they were even intended to be wholly complete and accurate. Indeed, the need to determine whether the notes accurately Jackie's conversations with *Rolling Stone*, as well as what information Ms. Erdely may have left out of her notes, is itself an important issue that can only be explored in a live, in-person deposition of Jackie.

7

The bottom line is that, as the Court has already held, Jackie is a highly relevant witness in this action. *Rolling Stone* published a completely false story alleging that Jackie was gang raped as part of a fraternity hazing ritual, and claiming that Dean Eramo sought to cover up and suppress Jackie's supposed assault. The apparent source for virtually *all* of these falsehoods was Jackie, and therefore Jackie's credibility — and whether *Rolling Stone* acted negligently or recklessly in printing what Jackie told them — are key issues in the case.

III.     **Respondent Fails to Make Any Factual Showing of Harm.**

As with the document subpoena, Respondent continues to insist that her status as a claimed sexual assault victim immunizes her from deposition discovery altogether because the supposed harm to Respondent outweighs the relevance of discovery from Jackie. (Mem. at 6-7.) The Court has already rejected this argument with respect to the document subpoena, holding that with respect to Jackie's communications between her and Defendants, her and UVA, her and Ryan Duffin, and communications she authored under the guise of her non-existent perpetrator, "Haven Monahan," Plaintiff "has made a prima facie showing of relevance and proportionality, which has not been sufficiently refuted by Jackie." (Mem. Op. at 9.) Plaintiff offers no new evidence to refute the relevance of these topics or to demonstrate how the harm to Jackie outweighs the high relevance of these matters.

In prior briefing, Plaintiff demonstrated conclusively — on the basis of the Charlottesville Police Department's investigation, the Columbia Journalism Review report, innumerable media reports, and Jackie's own communications using false aliases — that the gang rape Jackie claimed to have suffered at Phi Kappa Psi on September 28, 2012 simply did not happen, and that Jackie created the fake persona of the alleged perpetrator as a misguided ploy to earn the affections of a fellow student named Ryan Duffin. (*See* Nicole Eramo's Mem. of Law in Support of Her Mot. to Compel Nonparty Respondent Jackie's Compliance with Rule 45 Subpoena at 4-6, No. 3:15-mc-

8

00011-GEC (Nov. 13, 2015) [Dkt. 2]); (Nicole Eramo's Reply Br. in Support of Her Mot. to Compel Nonparty Respondent "Jackie" to Comply with Rule 45 Subpoena at 9, No. 3:15-mc-00011-GEC (Dec. 2, 2015) [Dkt. 11]); (Nicole Eramo's Resp. to Non-Party Respondent's Supplemental Resp. in Opp'n. to Pl.'s Mot. to Compel Produc. at 13-22, No. 3:15-mc-00011-GEC (Jan. 6, 2016) [Dkt. 29].) Plaintiff need not repeat all the particulars of that evidence here, except to say that in voluminous briefing Respondent has filed, Respondent and her attorneys have ***never*** attempted to refute any of it.

Importantly, Respondent and her attorneys have also never offered any affirmative evidence or facts whatsoever to substantiate the claim that Jackie was a victim of a sexual assault on or around September 28, 2012. Jackie's attorneys repeatedly claim she is a victim, but have never even identified ***what supposed sexual assault they are referring to***. The two different tales of sexual assault that Jackie has told – the first to Dean Eramo and the second to *Rolling Stone* – both have been demonstrated to be false through Jackie's own communications with Mr. Duffin and by the Charlottesville Police Department, respectively. There simply is no allegation. There is no alleged perpetrator. There is no alleged incident. There is no alleged date, time, or location of the supposed assault. There is no ongoing police investigation into any alleged assault. In prior briefing, Plaintiff also pointed out that Respondent has pointedly failed to offer a declaration or any other cognizable evidence from Jackie or anyone else attesting to her status as a victim. (Nicole Eramo's Resp. to Non-Party Respondent's Supplemental Resp. in Opp'n. to Pl.'s Mot. to Compel Produc. at 14-15, No. 3:15-mc-00011-GEC (Jan. 6, 2016) [Dkt. 29]). Respondent has still failed to do so despite being called out on this glaring omission.

The only rational inference to be drawn from this repeated failure is that Jackie's attorneys have not offered such a declaration for the same reason they instructed Jackie not to speak with

9

the police who were trying to investigate her assault — that given the wealth of evidence that the supposed assault did not happen, any statements under oath claiming that it did would amount to perjury. And it is highly questionable why Respondent's attorneys continue to make bald claims in briefing to the Court that they are desperately unwilling to allow their client to make under oath. In evaluating whether there is any potential "harm" to Jackie from being required to testify about what she told *Rolling Stone*, the Court should not discount the wealth of evidence and facts offered by Plaintiff in favor of the unsupported attorney arguments and glaring paucity of cognizable evidence offered by Respondent.

Moreover, Respondent's entire argument as to potential "harm" relies on the claim — again, entirely unsupported by evidence, fact, or declaration — that Jackie would be traumatized by having to give a deposition. But again, the only actual evidence before the Court is that after telling *Rolling Stone* she would "definitely be interested in sharing [her] story,"[4] Jackie willing sat for some ten interviews with *Rolling Stone*, at least two additional interviews with *The Washington Post*, and another with a reporter for a UVA alumni magazine. Thus, again, the only actual facts offered to the Court show that Respondent is perfectly capable of discussing the subject matter that would come up in the deposition, and that she has been enthusiastic about speaking with multiple media outlets in the recent past.

Finally, the authorities Respondent cites for her "harm" argument do not support her assertion that simply claiming victim status is sufficient to avoid a valid deposition subpoena. For example, *Humbert v. O'Malley*, 303 F.R.D. 461 (D. Md. 2014) did not involve deposition testimony at all, and in fact held that the victim ***was required*** to testify at trial of a suit filed by her perpetrator — but that she could do so by videoconference, under oath, and subject to cross

---

[4] *See* Sheila Coronel, et al., "A Rape on Campus: What Went Wrong?," *Rolling Stone Magazine* (Apr. 5, 2015) *available at* http://www.rollingstone.com/culture/features/a-rape-on-campus-what-went-wrong-20150405.

examination. *Id*. at *465.  And in *Harrington v. New England Mut. Life Ins. Co.*, 684 F. Supp. 174 (N.D. Ill. 1998), the court held that the victim's testimony had zero probative value in insurance litigation regarding the death of her perpetrator. *Id*. at *176-77.  This is plainly not the case here, where the Court has already held that Jackie's information is highly relevant to the issues in the case.

Respondent has not demonstrated any factual or legal basis for quashing her deposition altogether.  To the extent that Jackie has any valid "harm" concerns, these can be addressed the same way the Court addressed them in evaluating the document subpoena — by balancing relevance and burden and placing reasonable conditions on the deposition for Jackie's benefit.  For example, throughout the litigation, Plaintiff has shown good faith by honoring Respondent's request to refer to her only as "Jackie" without using her last name, despite no requirement to do so.  Plaintiff will continue to do so to protect Jackie from embarrassment.  Plaintiff has already agreed to Respondent's request that the location of the deposition be kept confidential and not made public.  Plaintiff will agree to have the deposition taken at a mutually-agreeable location that is convenient for Respondent.  And Plaintiff agrees that Respondent is free to designate the deposition as confidential pursuant to the protective order in this case, again, to protect Respondent from embarrassment.  These measures are more than sufficient to protect Jackie's confidentiality and anonymity.

**IV.**     **Respondent's Requested Protective Order Proposal Would Unreasonably Limit Important Discovery.**

Respondent also demands that, should her Motion to Quash be denied, the Court should enter a protective order requiring that the deposition be by written questions instead of live, oral testimony, and that any depositions not be videotaped. (*See* Mem. at 12-13.)  These demands are

11

unreasonable, inadequate given the nature of the Respondent's expected testimony, and highly prejudicial to the Plaintiff.

Substituting written questions for live deposition testimony is an infrequent, undesirable, and inferior means for conducting a deposition. *See Perry v. Edwards*, 16 F.R.D. 131, 133 (W.D. Mo. 1954). Such a procedure should only be used when seeking "the proof of formal matters" regarding very narrow and straightforward topics. *Id.*; *see Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989) (oral depositions were "indispensable" in order to explore and assess the witnesses' nuanced testimonies into their relationships with other people). Written questions do not permit follow-up questions from counsel, nor do they allow counsel to observe the demeanor of witnesses and therefore evaluate the witness's credibility. *See National Life Ins. Co. v. Hartford Accident and Indemnity Co.,* 615 F.2d 595, 599–600 n. 5 (3d Cir. 1980) (oral depositions are preferable to other deposition means because they afford the parties the opportunity to view the "spontaneity of the responses"). And written questions of course allow counsel for the witness to assist with and even carefully tailor the witness's responses to avoid direct answers to the questions, which are likely to lead to additional future discovery disputes. *See Alliance to End Repression v. Rochford*, 75 F.R.D. 428, 429 (N.D. Ill. 1976) (requests for written interrogatories instead of oral depositions were denied where witnesses were hostile to plaintiff's suit and had shown no willingness to cooperate with discovery matters, and any attempt to complete a deposition by written interrogatories would lead to "an endless stream of objections for resolution"). For this reason alone, oral depositions are especially important when dealing with a recalcitrant witness. *Id.* Given Jackie and her counsels' efforts to resist any and all efforts at discovery to date, any attempt to depose Jackie by written questions will result in voluminous objections, evasive answers, repeated requests for telephonic hearings, further motions to compel,

further motions to quash, and the like. There is simply no need to waste the Court's and counsel's time with even more briefing on these matters when an oral deposition can be conducted and concluded in one or two days.

For similar reasons, videotaped depositions are greatly preferable to simple stenographic transcripts should a deposition act as a substitute for live testimony during trial. Plaintiff, along with a jury, must also be able to view and assess Jackie's demeanor and body language while answering questions in order to properly assess her credibility and the appropriateness of *Rolling Stone's* reliance on her credibility. Videotaped testimony allows the jury and trier of fact to see and hear the witnesses "motions, facial expressions, demeanor, and voice inflections," which a simple transcript does not. *See United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982); *see United States v. McGowan*, 590 F.3d 446, 456 (7th Cir. 2009) (videotaped testimony allows the jury to fully experience the witness's testimony, "to view her demeanor, to hear her voice and to determine her credibility."). Given that Jackie's credibility as a source for *Rolling Stone* is a key issue that the jury will have to decide, it is imperative that Respondent's deposition be videotaped. While Plaintiff has no reason to believe that Jackie will actually be unavailable for trial in a legal sense, the history of this dispute leads Plaintiff to believe that Jackie's attorneys will fight to prevent her from testifying at trial. Live, videotaped deposition testimony from this key witness is thus essential to preserve the record of her testimony in a way that is useful to the jury should Jackie refuse to testify at trial.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Respondent's Motion and order that the deposition take place as scheduled.

Dated: March 22, 2016   Respectfully submitted,


By: */s/ Thomas A. Clare*   
Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
Andrew C. Phillips (VA Bar No. 88880)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
andy@clarelocke.com

*ATTORNEYS FOR PLAINTIFF NICOLE ERAMO*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Nicole Eramo's Opposition to Nonparty Respondent's Motion to Quash Plaintiff's Rule 45 Deposition Subpoena or in the Alternative Motion for a Protective Order on March 22, 2016 via ECF (for those attorneys that have registered), or by email and Federal Express (for those attorneys that have not).

    Pat A. Cipollone
    Rebecca R. Anzidei
    Philip J. O'Beirne
    Stein Mitchell Cipollone Beato & Missner LLP
    1100 Connecticut Avenue N.W., Suite 1100
    Washington, D.C. 20036
    Telephone: (202) 737-7777
    Fax: (202) 296-8312
    Email: pcipollone@steinmitchell.com
    pobeirne@steinmitchell.com
    Email: ranzidei@steinmitchell.com

    Palma Pustilnik
    Staff Attorney
    Central Virginia Legal Aid Society
    1000 Preston Avenue, Suite B
    Charlottesville, VA 22903
    Telephone: (434) 327-1443
    Fax: (434) 296-5731
    Email: palma@cvlas.org

    *Attorneys for Nonparty Respondent "Jackie"*

    Michael John Finney
    William David Paxton
    Gentry Locke Rakes & Moore
    P.O. Box 40013
    Roanoke, VA 24022-0013
    Telephone: (540) 983-9373
    Telephone: (540) 983-9334
    Fax: (540) 983-9400
    Email: finney@gentrylocke.com
    Email: paxton@gentrylocke.com

    Elizabeth A. McNamara
    Samuel M. Bayard

1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC,
Sabrina Rubin Erdely, and Wenner Media LLC*


Dated: March 22, 2016                                By: */s/ Thomas A. Clare*
                                                         Thomas A. Clare