IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO ) | |
| ) | |
| Plaintiff ) | Case No. 3:15-cv-00023-GEC |
| ) | |
| v. ) | |
| ) | |
| ROLLING STONE LLC, ) | |
| SABRINA RUBIN ERDELY, and ) | |
| WENNER MEDIA LLC, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION IN LIMINE NO. 1,
TO EXCLUDE EVIDENCE ABOUT WUVA INTERVIEW OF MS. ERAMO**

Plaintiff Nicole P. Eramo respectfully files this Motion in Limine No. 1 to exclude under FRE 402, 403, 1001, and 1002 evidence and testimony regarding a 21-minute interview of Ms. Eramo conducted (unbeknownst to Ms. Eramo at the time) by a UVA student for the UVA-student-operated radio station WUVA in late September 2014 (the "WUVA Interview").[1] Ms. Eramo moves to exclude this interview—which did not include any mention or discussion of Jackie's report of her alleged sexual assault (much less Ms. Eramo's handling thereof) and which was not published until November 23, 2014, well after Defendants published their "Rape on Campus" article—because it is wholly irrelevant to the claims and defenses in this case and would create a substantial risk of jury confusion regarding the actual issues in this case.

Defendants have indicated that they intend to offer a videotaped recording of (or other testimony regarding) this interview at trial because, according to them, Erdely reviewed a *different* approximately 5-minute video clip that contained unspecified excerpts of the WUVA

---

[1] Videotape Recording of WUVA Interview ("WUVA Interview Recording") (Ex. A).

Interview, which WUVA published on its website before Defendants published their "Rape on Campus" article and, they claim, the WUVA Interview is therefore relevant to "Defendants['] state of mind and belief in the accuracy of the challenged [s]tatements [in the "Rape on Campus" article] for actual malice."[2] Defendants have indicated this intent even though they have failed to make the video clip purportedly containing those interview excerpts—the only parts of the interview Defendants claim they reviewed before publishing the "Rape on Campus" article—part of the record in this case (which they easily could have done) and even though they have admitted they do not know (and therefore can only speculate as to) the contents of that video clip or the excerpts in it. Defendants have also indicated that they believe the interview is relevant to damages, presumably because they speculate that people who watched the interview could have formed an unfavorable opinion of Ms. Eramo based on it.

As explained below, evidence and testimony about (including the videotape of) the WUVA Interview should be excluded as irrelevant for separate and independent reasons. ***First***, the interview, in which a student asked Ms. Eramo about UVA's sexual misconduct and disciplinary policies generally, does not relate to or even touch on Jackie's report of her alleged sexual assault or Ms. Eramo's handling of that report and therefore has absolutely no relevance to Ms. Eramo's claims in this case, which are based on Defendants' statements that Ms. Eramo willfully acted "to suppress" *Jackie's* reported sexual assault, "discouraged" *Jackie* from reporting her rape, "coddled" *Jackie* into keeping her rape quiet, displayed a callous "indifference" to *Jackie's* plight, and subjected *Jackie* to "abuse." ***Second***, because the WUVA

---

[2] Defs.' Resp. to Pl.'s Objs. to Evid. Submitted in Supp. of Defs.' Mot. for Summ. J. [Dkt. 139-1] at 23 (Aug. 5, 2016). Defendants also assert that evidence regarding the fact of the interview is relevant to Ms. Eramo's status as either a public or private figure, but that is an issue for summary judgment, not an issue for the jury. *See* Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. [Dkt. 98] at 20-27 (July 1, 2016); Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. [Dkt. 117] at 40-43 (July 22, 2016); Pl.'s Reply Br. in Supp. of Pl.'s Mot for Partial Summ. J. [Dkt. 133] at 11-16 (Aug. 5, 2016); Pl.'s Supplemental Submission in Supp. of Pl.'s Mot. for Partial Summ. J. [Dkt. 151] at 1-32 (Aug. 22, 2016).

Interview was not published or seen by Defendants until after their publication of their "Rape on Campus" article, it could not possibly have informed Defendants' beliefs or state of mind at the time they published that article. The fact that Defendants may have watched a *different* video clip that was published before they published the "Rape on Campus" article and that video clip purportedly contained brief excerpts of the interview cannot justify admitting video or evidence about the WUVA Interview because Defendants have chosen not to make the video clip containing those excerpts that they supposedly viewed (which is no longer available online) part of the record in this case and, as such, can admittedly only speculate about that video clip's actual contents. ***Third***, Defendants' rank speculation that people who watched the WUVA Interview could have formed an unfavorable opinion of Ms. Eramo based on it cannot render the interview relevant, nor would it be proper for Defendants to play the video of the interview (or portions thereof) to the jury essentially as character evidence to attempt to get the jury's buy-in to Defendants' apparent (and incorrect) belief that Ms. Eramo comes off as unlikable in the interview. This is especially true because the interview was only publicly released because of Defendants' defamatory "Rape on Campus" article and "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"[3] and allowing Defendants to skew the jury's perception of Ms. Eramo based on it would amount to letting Defendants benefit from their own tortious conduct that resulted in the interview's release.

Additionally, even if the WUVA Interview were relevant to the claims or defenses in this case (and it is not), it should be excluded under FRE 403 because any probative value it may have is substantially outweighed by the danger of misleading the jury and confusing the issues in this case by turning the trial into a referendum on UVA's sexual assault policies and/or

---

[3] *See* UVA040002871-72 (Email from ▇▇▇▇ to ▇▇▇▇▇▇▇▇) (Nov. 30, 2014) (Ex. B).

provoking jurors' feelings about those policies rather than properly adjudicating the defamatory nature of Defendants' actual statements about Ms. Eramo.

## RELEVANT BACKGROUND

In September 2014, Ms. Eramo was approached by a UVA student who asked to interview her for a class-related journalism project.[4] Ms. Eramo agreed, and on September 23, 2014 sat for an interview.[5] The interview was then conducted by a different student who was a staff member for WUVA, a UVA-student-run radio station.[6] The interview, which was videotaped, lasted slightly more than 21 minutes and involved questions about and discussion of UVA's sexual misconduct policies, its system for adjudicating sexual assault cases, and its disciplinary policies relating to perpetrators of sexual assaults.[7] The interviewer did not ask about, and Ms. Eramo did not mention, Jackie's report of her alleged sexual assault or Ms. Eramo's interactions with Jackie following her report of her alleged sexual assault.[8]

The WUVA Interview was not published or made publicly available until November 23, 2014—four days *after* Defendants published their "Rape on Campus" article.[9] As such, Defendants did not, and could not have, seen that interview until after they published their "Rape on Campus" article.

Prior to November 23, 2014, only a *different* 5-minute video clip that "included portions of [WUVA's] interview with Ms. Eramo" was ever published or made available to Defendants.[10] WUVA published that video clip on its website on October 8, 2014.[11] That 5-minute clip is not part of the record in this case—Defendants never provided it to Ms. Eramo or sought to issue a

---

[4] Dep. of Nicole P. Eramo ("Eramo Dep.") 70:12-71:12 (May 4, 2016) (Ex. C).
[5] *Id.*
[6] *Id.*
[7] *See generally* WUVA Interview Recording (Ex. A).
[8] *See id.*
[9] *See* UVA040002871-72 (Email from R. Marks to multiple recipients) (Nov. 30, 2014) (Ex. B).
[10] *See id.*
[11] *Id.*

subpoena to WUVA for it—and discovery is now closed. The record does not indicate what portion(s) of the WUVA Interview may have been included in that 5-minute video clip and Defendants have admitted that they do not know—and can only speculate about—which parts of the WUVA Interview may have been included in it.[12]

## ARGUMENT

This Court has broad discretion to exclude evidence when ruling on a motion in limine, *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012), and the court's exercise of that discretion will be overturned only for an abuse of discretion, *Garraghty v. Jordan,* 830 F.2d 1295, 1298 (4th Cir. 1987). Evidence is relevant only if "it has any tendency to make a fact more or less probable that it would be without the evidence" *and* "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. In addition, even where evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 vests broad discretion in the trial court to exclude prejudicial evidence." *Romero v. Boyd Bros. Transp. Co.*, No. 93-cv-85, 1994 WL 287434, at *3 (W.D. Va. June 14, 1994).

**I.     The WUVA Interview Is Irrelevant And Should Be Excluded Under FRE 402.**

The videotaped recording of, and evidence or testimony about, the WUVA Interview should be excluded under FRE 402 because it has absolutely no relevance to the claims or defenses or damages in this case.

---

[12] Eramo Dep. 89:12-14 (Ex. C) (Defendants' counsel speculating, when playing a portion of the full WUVA Interview Recording, that "we *believe*" the portion played was part of the 5-minute video clip available prior to the "Rape on Campus" article).

### A. The WUVA Interview Is Irrelevant Because Nothing In The Interview Relates To Defendants' Statements On Which Ms. Eramo's Claims Are Based.

As Ms. Eramo's Complaint makes clear (and as confirmed by summary judgment briefing), Ms. Eramo's claims in this case relate to specific statements Defendants published in their "Rape on Campus" article and in contemporaneous interviews and press releases promoting and discussing that article. (*See* Compl. ¶¶ 210, 225, 240, 255, 270, 285.) Those statements accused Ms. Eramo of taking or failing to take concrete actions with regard to her handling of *Jackie's* report of her alleged sexual assault and her interactions with *Jackie*:

- "Discourag[ing] *Jackie* from sharing her story";

- Having a "nonreaction" to *Jackie's* claim that she was aware of two other gang rape victims, and failing to "take action out of regard for campus safety";

- Callously telling *Jackie* that UVA did not publish sexual assault statistics "[b]ecause nobody wants to send their daughter to the rape school";

- Doing "nothing," "brush[ing] off" *Jackie*, and acting "with indifference" when *Jackie* came to her to report her alleged sexual assault and the alleged sexual assaults of two other women;

- "Discourag[ing] [*Jackie*] from moving [] forward" with reporting her alleged sexual assault and instead attempting to "suppress" it in order to further her own "ethos" and put UVA's interest above the interests of assault victims;

- Causing Jackie to suffer "a whole new kind of abuse" when attempting to hold the perpetrators of her alleged sexual assault accountable; and

- Doing "nothing" with the information *Jackie* provided about her alleged gang-rape and two other alleged gang-rapes, and showing a "level of indifference."

(*See id.*)

Importantly, the WUVA Interview did not involve any questions about or discussion of Jackie's (or any student's) report of her alleged sexual assault to Ms. Eramo or Ms. Eramo's interactions with Jackie (or any other student) following her reported assault. Rather, the interview focused exclusively on general questions about UVA's sexual misconduct policies,

UVA's system for adjudicating alleged sexual assault cases, and UVA's disciplinary policies relating to perpetrators of sexual assaults.[13]

Simply put, because the WUVA Interview has nothing to do with the statements that form the basis of Ms. Eramo's claims (as identified above and in the Complaint), it cannot, as a matter of law, have "any tendency to make a fact ... of consequence ... more or less probable that it would be without the evidence." *See* Fed. R. Evid. 401. Nothing in the WUVA Interview relates to or has any bearing on the truth of Defendants' statements that actually form the basis of Ms. Eramo's claims or Defendants' belief in the truth of those statements. Nothing in the interview relates to bears on the truth of Defendants' statements that Ms. Eramo willfully acted "to suppress" Jackie's reported sexual assault. Nothing in the interview relates to or bears on the truth of Defendants' statements that Ms. Eramo "discouraged" Jackie from reporting her rape. Nothing in the interview relates to or bears on the truth of Defendants' statements that Ms. Eramo "coddled" Jackie into keeping her rape quiet. Nothing in the interview relates to or bears on the truth of Defendants' statements that Ms. Eramo subjected Jackie to "abuse." And nothing in the interview relates to or has any bearing on the truth of Defendants' statements that Ms. Eramo displayed a callous "indifference" to Jackie's plight. The interview is therefore irrelevant under FRE 402 and should be excluded.

      **B.    The WUVA Interview Is Irrelevant Because It Was Published After Defendants' Defamatory "Rape on Campus" Article.**

The WUVA Interview is also irrelevant and inadmissible under FRE 402 for the separate and independent reason that it was only published and made available to Defendants *after* they published their "Rape on Campus" article and therefore could not have had any bearing on

---

[13] WUVA Interview Recording (Ex. A)

7
Case 3:15-cv-00023-GEC   Document 168   Filed 09/16/16   Page 7 of 12   Pageid#: 11078

Defendants' state of mind *at the time of publication* of their defamatory statements (nor does it reflect Defendants' earlier state-of-mind).

As Defendants themselves have repeatedly argued, the actual malice inquiry focuses on a defendant's state of mind "at the time of publication." (*See e.g.*, Defs.' Mem. in Supp. of Mot. for Summ. J. [Dkt. 102] at 50 (Jul 1, 2016)). However, Defendants published their "Rape on Campus" article on November 19, 2014, and the WUVA Interview was not published or made available until November 23, 2014—four days after publication of the "Rape on Campus" article.[14] As such, the WUVA Interview could not have had any bearing on Defendants' state of mind at the time they published the article (and, of course, it does not reflect Defendants' earlier state-of-mind) and is therefore irrelevant to that issue.

Defendants' only response is to assert that they reviewed a *different* video clip published by WUVA on October 8, 2014 that purportedly contained brief excerpts of the WUVA Interview. However, Defendants elected not to obtain and make that video clip part of the record in this case, and with discovery closed, Defendants (and Ms. Eramo) can only speculate as to what parts of the WUVA Interview might have been included in that video clip. Of course, speculation cannot substitute for admissible evidence, and Defendants cannot show cherry-picked portions of the WUVA Interview to the jury based on nothing more than their speculation and unsupported assertions that those portions *might* have been part of the video clip that was available and possibly reviewed by Defendants before publication of their "Rape on Campus" article. *See Capital Concepts, Inc. v. Mountain Corp.*, 936 F. Supp. 2d 661, 671 (W.D. Va. 2013) (explaining, in the context of expert evidence, that "to the extent the deficient evidence is based upon and asks for speculation, it must be excluded"). Moreover, any attempt by

---

[14] Defendants do not contend that they viewed the full WUVA Interview until after it was published and made available online.

8
Case 3:15-cv-00023-GEC    Document 168    Filed 09/16/16    Page 8 of 12    Pageid#: 11079

Defendants to prove the contents of the video clip they purportedly reviewed by using the WUVA Interview (or any other evidence) would clearly violate the Best Evidence Rule. *See* Fed. R. Evid. 1001 & 1002.[15]

    **C.    The WUVA Interview Is Not Relevant To Damages.**

Finally, Defendants cannot transform the entirely irrelevant WUVA Interview into a relevant piece of evidence by asserting that it is relevant to damages, presumably based on their unadulterated speculation (with which Ms. Eramo disagrees) that Ms. Eramo "came off poorly" in the interview such that people who watched it could have formed an unfavorable opinion of her. Presenting the WUVA Interview to the jury and asking it to conclude that other people might have formed a negative opinion of Ms. Eramo based on it would blatantly call for impermissible speculation and constitute a transparent attempt to attack Ms. Eramo's character and bias the jury against her. That should not be permitted. Indeed, Defendants' attempt to use the WUVA Interview to negatively portray Ms. Eramo or their attempt to suggest that the interview may have caused people to lower their opinions of her would be especially improper here because the WUVA Interview was only published because of Defendants' defamatory "Rape on Campus" article and "█████████████."[16] Thus, allowing Defendants to use that interview to negatively portray Ms. Eramo or to downplay the damage to Ms. Eramo caused by their own defamatory statements would amount to nothing less than letting Defendants benefit from their own tortious conduct that resulted in the interview's release.

---

[15] The limited exception to this rule in FRE 1004 for lost or destroyed originals does not apply because there is no suggestion that the 5-minute video clip was ever lost or destroyed; rather, Defendants consciously elected not to obtain it and make it part of the record in this case.

[16] *See* UVA040002871-72 (Email from ██████ to ██████████) (Nov. 30, 2014) (Ex. A).

9

## II. The WUVA Interview Would Substantially Confuse The Issues At Trial And Should Be Excluded Under FRE 403.

Even if the WUVA Interview were relevant (and as explained above, it is not), it should be excluded under FRE 403 because any limited probative value it may have "is substantially outweighed by a danger of ... confusing the issues [and] misleading the jury." *See* Fed. R. Evid. 403.

As Defendants' summary judgment briefing has made clear, Defendants have adopted a litigation strategy of avoiding the actual statements on which Ms. Eramo bases her claims (as clearly identified in her Complaint) and instead attempting to make this case about UVA's sexual misconduct and disciplinary policies. But this case is ***not*** about UVA's policies; it is about very specific allegations that Defendants made about Ms. Eramo's supposed actions and inactions with regard to Jackie. If the WUVA Interview, which focuses on UVA's sexual misconduct and disciplinary policies generally, is admitted, it will significantly increase the risk that the trial will be converted into a referendum on those policies or, at the very least, it will run the risk of provoking jurors' feelings about those policies that have nothing to do with Ms. Eramo's actual claims about Defendants' actual defamatory statements. Deraillng the trial or provoking those feelings would be highly and unfairly prejudicial to Ms. Eramo and, as such, evidence regarding the WUVA Interview should be excluded under FRE 403.

## CONCLUSION

For the foregoing reasons, Ms. Eramo respectfully requests that the Court grant her Motion in Limine No. 1, To Exclude Evidence About the WUVA Interview of Ms. Eramo.

Dated: September 16, 2016						Respectfully submitted,

									By:   /s/ Elizabeth M. Locke_____
									Thomas A. Clare (VA Bar No. 39299)
									Elizabeth M. Locke (VA Bar No. 71784)
									Andrew C. Phillips (VA Bar No. 88880)
									Joseph R. Oliveri (VA Bar No. 77152)
									CLARE LOCKE LLP
									902 Prince Street
									Alexandria, Virginia 22314
									Telephone: (202) 628-7400
									tom@clarelocke.com
									libby@clarelocke.com
									andy@clarelocke.com
									joe@clarelocke.com

									*Attorneys for Plaintiff Nicole P. Eramo*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Nicole Eramo's Motion in Limine No. 1, To Exclude Evidence About the WUVA Interview of Ms. Eramo was served on the below counsel of record on September 16, 2016 in accordance with the Fed. R. Civ. P.:

Michael John Finney & William David Paxton
GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373
Telephone: (540) 983-9334
Fax: (540) 983-9400
Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara & Samuel M. Bayard
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230 / Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 / Fax: (202) 973-4448
Email: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC,*
*Sabrina Rubin Erdely, and Wenner Media LLC*

Benjamin Gaillard Chew
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, DC 20036-5303
Telephone: (202) 585-6511
Email: bchew@manatt.com

*Attorney for Defendant Sabrina Rubin Erdely*

Dated: September 16, 2016　　　　　　　　　By:　*/s/ Elizabeth M. Locke*
　　　　　　　　　　　　　　　　　　　　　　　　Elizabeth M. Locke