IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO, | ) |
| Plaintiff | ) Case No. 3:15-cv-00023-GEC |
| v. | ) |
| ROLLING STONE LLC, SABRINA RUBIN ERDELY, and WENNER MEDIA LLC, | ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION IN LIMINE NO. 3,
TO EXCLUDE EVIDENCE ABOUT THE OCR LETTER OF FINDING, THE DRAFT
THEREOF, AND THE UVA COMPROMISE AGREEMENT RELATING THERETO**

Plaintiff Nicole P. Eramo files this Motion in Limine No. 3 to exclude under FRE 402, 403, 404, and 802 evidence and testimony regarding the Office of Civil Rights ("OCR") Letter of Finding ("OCR Letter") regarding UVA's policies and procedures for handling reports of sexual harassment and assault,[1] the draft of the OCR Letter,[2] and UVA's compromise Resolution Agreement ("UVA Agreement") relating to the Letter.[3] Ms. Eramo moves to exclude these highly misleading documents—which relate to UVA's policies for handling reports of sexual harassment and assault in general over a six-year period and not Jackie's report of her alleged sexual assault or Ms. Eramo's handling thereof[4] and which was not published until September 21, 2015, almost a year after Defendants' "Rape on Campus" article—because they are irrelevant

---

[1] Letter from Alice B. Wender (OCR Director) to Teresa Sullivan (UVA President) Re: OCR Review No. 11-11-6001, Letter of Finding (Sept. 21, 2015) (Ex. A).
[2] Letter from Alice B. Wender (OCR Director) to Teresa Sullivan (UVA President) Re: OCR Review No. 11-11-6001, Letter of Finding (Aug. 31, 2015) (Ex. B).
[3] UVA Resolution Agreement, OCR Docket No. 11-11-6001 ("UVA Agreement") (Sept. 17, 2015) (Ex. C).
[4] As explained below, although Defendants may assert otherwise, they have not developed any record evidence or testimony that links any of the reports discussed in the OCR Letter to Jackie's report of her alleged sexual assault. Rather, they have only elicited a "guess" and speculation regarding such a linkage.

1

to the claims and defenses in this case, would unfairly prejudice Ms. Eramo and confuse the jury, are hearsay, and are improper character evidence.

Ms. Eramo's claims in this case are straightforward: Ms. Eramo has challenged specific statements that Defendants published in their "Rape on Campus" article and in contemporaneous interviews that accuse Ms. Eramo of failing to take concrete actions with regard to her handling of *Jackie's* report of her alleged sexual assault. (*See* Compl. ¶¶ 210, 225, 240, 255, 270, 285.) Nevertheless, Defendants attempt to avoid the actual statements on which Ms. Eramo bases her claims and instead attempt to make this case about UVA's sexual misconduct and disciplinary policies. In doing so, Defendants have indicated their intent to offer the OCR Letter and related documents at trial, ostensibly because those documents are relevant to the "substantial truth" of Defendants' defamatory statements and to damages. But the OCR Letter is not relevant and, if introduced into evidence, would only unfairly prejudice Ms. Eramo and confuse and mislead the jury about the actual issues in this case.

Evidence and testimony about the OCR Letter and related documents should be excluded for four independent reasons. ***First***, the OCR Letter and related documents should be excluded as irrelevant because they relate only to UVA's policies and procedures for handling reports of sexual harassment and assault in general and do not have any relevance to the truth or falsity of Defendants' statements regarding Ms. Eramo's treatment of *Jackie* that form the basis of Ms. Eramo's claims Moreover, because the OCR Letter and related documents were not issued until nearly a year after Defendants published their defamatory statements, they have no relevance to Defendants' state of mind at the time they published their article or the damages suffered by Ms. Eramo. ***Second***, the OCR Letter and related documents should be excluded because even if they were relevant, their virtually nonexistent probative value would be far

outweighed by the significant danger of unfair prejudice to Ms. Eramo and confusion of the issues for the jury that their admission would cause by suggesting to the jury that Ms. Eramo (who had no control over sexual assault policy at UVA) engaged in misconduct or insufficiently performed her job as an Associate Dean. Indeed, their admission at trial would compel Ms. Eramo to offer additional evidence to contest assertions in those documents thereby resulting in mini-trials unrelated to Ms. Eramo's claims and significantly confusing the issues at trial. ***Third***, the OCR Letter and draft of that letter should be excluded as inadmissible hearsay and double hearsay. ***Finally***, the OCR Letter and related documents should be excluded as improper character evidence and evidence of supposed prior acts to prove conformity therewith.

## RELEVANT BACKGROUND

The Office of Civil Rights issued the OCR Letter on September 21, 2015—nearly a year after Defendants published "A Rape on Campus" and related promotional statements. The OCR Letter focused on UVA's policies and procedures in the years 2008-2015 for handling reports of sexual harassment and assault and assessed whether, in OCR's opinion, those policies and procedures were compliant with Title IX. The Letter was based on an OCR investigation initially completed in 2011-2012 that was resumed, ███████████████████ on November 20, 2014, entirely in response to Defendants' "Rape on Campus" article.[5] It bears emphasis that the final OCR Letter was preceded by a draft letter that was completely discarded because it was so riddled with inaccuracies that UVA and high ranking Virginia officials pushed back on the erroneous conclusions in the draft. After discarding the draft, however, OCR refused to provide UVA any opportunity whatsoever to rebut the findings of facts in the final letter.[6] Accordingly, the facts reported in the OCR Letter were not adduced in an adversarial proceeding

---

[5] Dep. of Susan Davis Vol. II ("Davis Dep. Vol. II")144:15-147:8 (Apr. 28, 2016) (Ex. D).
[6] Dep. of Susan Davis Vol. I ("Davis Dep. Vol. I") 70:14-71:15 (Apr. 27, 2016) (Ex. E).

3

overseen by a neutral magistrate, nor were they subject to review or pressure-testing by UVA. Rather, they reflected the one-sided, untested, and hyperbolic opinions of OCR following its so-called investigation, much of which was conducted in the immediate aftermath of the publication of "A Rape on Campus."[7]

Critically, OCR's process that resulted in its issuance of the OCR Letter was fraught with indicia of unreliability and irregularity. For example, OCR conducted most of its investigatory interviews in the days after Defendants' publication of "A Rape on Campus," at which time there was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[8] OCR also repeatedly refused to solicit relevant information from UVA, provide feedback to UVA, or respond to UVA's requests to provide additional information relevant to OCR's investigation, including information that contradicted many of the "findings" in OCR's draft letter that was belatedly shared with UVA—and that would have contradicted "findings" in the final OCR Letter had UVA been allowed to provide it.[9] In fact, OCR's process was so concerning that in August 2015 the Governor of Virginia wrote to the Secretary of Education to take issue with OCR "den[ying] [UVA] the very basic requirements of due process" and a top OCR official "prejudg[ing] the very issues OCR was investigating."[10] Virginia's two Senators similar wrote to the Secretary to express their concern with "serious procedural questions [relating to OCR's investigation] that could affect the accuracy of the investigation."[11]

Importantly for purposes of this motion, although OCR reviewed records from UVA

---

[7] *See* OCR Letter at 3 (Ex. A); Davis Dep. Vol. I 89:25-90:7 (Ex. E); Davis Dep. Vol. II 157:6-13 (Ex. D).
[8] Davis Dep. Vol. II 159:6-161:3 (Ex. D). As Ms. Davis cogently analogized, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*Id.*)
   *See, e.g.*, Letter from Teresa Sullivan (UVA President) to Alice Wender (OCR Director) (Sept. 2, 2015) (Ex. F); Davis Dep. Vol. II 162:3-163:12 (Ex. D).
[10] Letter from Gov. Terry McAuliffe to Anne Duncan (Sec. of Educ.) at 1-3 (Aug. 14, 2015) (Ex. G).
[11] Letter from Sen. Mark Warner & Sen. Tim Kaine to Anne Duncan (Sec. of Educ.) (Aug. 25, 2015) (Ex. H).

4

student sexual assault complaints, OCR did not, in its Letter or otherwise, identify the names of the students who filed the complaints referred to anonymously in its Letter. As UVA witness Susan Davis has testified, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████"[12] Accordingly, Ms. Davis testified, █████████████████

████████████████████████████████████████████████████████████."[13]

Defendants have, in this litigation, speculated that Jackie's report of her sexual assault was briefly mentioned in the OCR Letter, but have offered no concrete or definitive evidence to support that speculation. Defendants could have subpoenaed the authors of the OCR Letter to ask them, but they chose not to. Instead, ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████."[14]

On September 17, 2015, four days before the OCR Letter was issued, UVA and OCR entered into a compromise Resolution Agreement. Under the terms of Agreement, as accepted by OCR, UVA pledged to adopt various modifications to its Title IX policies and procedures but expressly reserved its rights to contest the factual and legal conclusions in the OCR Letter that was thereafter issued and did not admit to any of the findings in that letter.[15] In light of the Agreement, OCR cut short its investigation that resulted in the OCR Letter.[16]

## ARGUMENT

This Court has broad discretion to exclude evidence when ruling on a motion in limine,

---

[12] Davis Dep. Vol. I 88:22-89:18 (Ex. E).
[13] Davis Dep. Vol. I 89:19-24 (Ex. E).
[14] Davis Dep. Vol. I 88:22-89:24, 91:1-8, 105:22-106:1 (Ex. E).
[15] UVA Agreement at 1 (Ex. C).
[16] OCR Letter at 3 (Ex. A).

*Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012), and the court's exercise of that discretion will be overturned only for an abuse of discretion, *Garraghty v. Jordan,* 830 F.2d 1295, 1298 (4th Cir. 1987). Evidence is relevant only if "it has any tendency to make a fact more or less probable that it would be without the evidence" *and* "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Moreover, even where evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence of character and past actions is also inadmissible to prove actions in accordance with that character or those prior actions. Fed. R. Evid. 404(a)-(b).

Additionally, evidence of out of-court statements offered for the truth of the matters they assert is inadmissible as hearsay unless it meets a specific hearsay exception. Fed. R. Evid. 801-804. As is relevant here, to satisfy the "public records" hearsay exception, FRE 803(8), the proponent of hearsay evidence must demonstrate that that evidence sets out "(i) [an] office's activities"; "(ii) a matter observed while under a legal duty to report"; or (iii) "factual findings from a legally authorized investigation," in which case the evidence may be admissible if "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). Where hearsay evidence contains within it additional hearsay, that "double hearsay" is inadmissible unless "each part of the combined [hearsay] statements conforms with an exception to the [hearsay] rule." Fed R. Evid. 805.

Notably, multiple courts that have considered materials like the OCR Letter have held them inadmissible under FRE 802-803 and 805. *See, e.g., M.S. v. Fairfax Cnty. Sch. Bd.*, No. 05-cv-1476, 2006 WL 2376202, at *4 (E.D. Va. Aug. 11, 2006) (approving exclusion of state

Department of Education letter of finding as "replete with hearsay"); *EEOC v. Ford Motor Co.*, 98 F.3d 1341, 1996 WL 557800, at *10 (6th Cir. 1996) (affirming exclusion of hearsay-filled EEOC report and explaining attempt to admit it constituted a "not-too-subtle attempt to end-run the Federal Rules of Evidence"). And courts, including the Fourth Circuit, have singled out draft reports as particularly inadmissible. *See, e.g.*, *United States v. Gray*, 852 F.2d 136, 139 (4th Cir. 1988) (affirming exclusion of non-final agency report); *Smith v. Isuzu Motors Ltd.*, 137 F.3d 859, 862-63 (5th Cir. 1998) (citing cases from the Second, Fourth, and Tenth Circuits).

## I. The OCR Letter And Related Documents Are Irrelevant And Should Be Excluded Under FRE 402.

### A. The OCR Letter And Related Documents Are Irrelevant Because Nothing In Them Relates To Defendants' Statements On Which Ms. Eramo's Claims Are Based Or To Damages Issues.

Ms. Eramo's claims in this case are straightforward and relate to specific statements by Defendants about Ms. Eramo's handling of Jackie's reported sexual assault.[17] Simply put, the OCR Letter and related documents have no relevance to those statements or their truth or falsity. Indeed, Defendants have offered no evidence—only inadmissible speculation—that the OCR Letter even mentions Jackie's reported sexual assault. But significantly, even if the OCR Letter did mention Jackie's reported sexual assault as Defendants speculate, nothing in that Letter even purports to opine whether Ms. Eramo caused Jackie to suffer "abuse," attempted to "suppress" Jackie's reported assault, "brushed off" Jackie, "[d]iscourag[ed] Jackie from sharing her story," had a "nonreaction" to Jackie's claims or about two gang rape victims, callously told Jackie that UVA did not publish sexual assault statistics "because nobody wants to send their daughter to

---

[17] These statements include accusations that Ms. Eramo caused Jackie to suffer "a whole new kind of abuse"; "[d]iscourag[ed] Jackie from sharing her story"; had a "nonreaction" to Jackie's claim about two gang rape victims; callously told Jackie that UVA did not publish sexual assault statistics "because nobody wants to send their daughter to the rape school"; did "nothing," "brushed off" Jackie, and acted "with indifference" when Jackie reported her assault to her; and attempted to "suppress" Jackie's reported assault. (Compl. ¶¶ 210, 225, 240, 255, 270, 285.)

7

the rape school," or acted "with indifference" when Jackie reported her assault.[18] Similarly, the UVA Agreement relates only to UVA policy- and procedure-changes and does not opine on any identified sexual assault reports. And the early draft of the OCR Letter, which represented only initial conclusions based on incomplete documentation, was substantially modified (with large parts deleted) when the final OCR Letter was issued.

Additionally, because these documents were not issued until almost a year after Defendants published their defamatory statements, they cannot have any relevance to Defendants' state of mind at the time they published their statements. And because, as explained in Ms. Eramo's Motion in Limine No. 2, Ms. Eramo's Complaint claims extensive damages *"in the aftermath of the ['Rape on Campus'] article"* (Compl. ¶¶ 202-07)—long before the OCR Letter and related documents were published—those documents are similarly irrelevant to damages issues. In short, these documents simply cannot have "any tendency to make a fact ... of consequence ... more or less probable that it would be without the evidence," Fed. R. Evid. 402.

## II. The OCR Letter And Related Documents Would Unfairly Prejudice Ms. Eramo, Confuse The Issues At Trial, and Mislead The Jury And Should Be Excluded Under FRE 403.

*First*, the OCR Letter and related documents will significantly and unfairly prejudice Ms. Eramo. The OCR Letter, which never opined that Ms. Eramo engaged in any misconduct or inadequately performed her job duties,[19] nevertheless unequivocally opines that *UVA* failed to comply with Title IX and that *UVA's* policies created a "hostile environment." And because the

---

[18] If anything, the OCR Letter was complimentary regarding UVA's support for sexual assault victims, observing that UVA "consistently provided supports to students who reported being subjected to sexual violence, such as access to counseling, academic adjustments, and changes to housing arrangements." (OCR Letter at 1 (Ex. A).)

[19] The OCR Letter never even mentions Ms. Eramo by name. Although the Letter refers to an interview of Ms. Eramo (who is identified only by her title) by the student-run WUVA in its "Hostile Environment" section, the Letter makes clear that it was *the University policies, the "University process," and UVA's "official position*" on sanctions for perpetrators of sexual assaults that, in OCR's opinion, contributed to a hostile environment at UVA. The Letter did ***not*** opine that it was improper for Ms. Eramo to have given that interview, and Ms. Eramo has never been responsible for making UVA's policies or procedures.
8

Letter was issued by an office in the Department of Education, it comes with the imprimatur of the federal government and will suggest, perhaps conclusively, to the jury that UVA engaged in wrongdoing and taint Ms. Eramo by association—even though OCR's investigation was fraught with indicia of unreliability and irregularity and involved no evidentiary hearings or similar.

***Second***, the OCR Letter and related documents will significantly confuse the issues in this case and mislead the jury. As Ms. Eramo's Complaint makes clear, this case is ***not*** a case about the adequacy of UVA's Title IX related policies; it is about very specific allegations that Defendants made about Ms. Eramo's supposed actions and inactions with regard to Jackie. The OCR Letter and related documents do not relate to Ms. Eramo's supposed actions and inactions with regard to Jackie or, thus, the statements that form the basis of Ms. Eramo's claims; they instead address UVA's policies and procedures in general. Their admission will therefore serve only to confuse those issues and play into Defendants' telegraphed trial strategy of converting the trial into a referendum on UVA's policies or, at the very least, to provoke jurors' feelings about those policies (for which Ms. Eramo is in no way responsible) thereby tainting Ms. Eramo in the eyes of the jury. The admission of those documents would also require Ms. Eramo to devote significant efforts to challenging their assertions to rehabilitate herself in the eyes the jury, thereby inevitably leading to a mini-trial on issues irrelevant to her actual claims.[20]

### III. The OCR Letter And Draft Are Inadmissible As Hearsay And Double Hearsay.

***First***, because Defendants would introduce the OCR Letter (and draft) to prove the "facts" they assert, they constitute hearsay. And the only potentially applicable hearsay exception that could justify their admission—the FRE 803(8) public records exception—is inapplicable. Under FRE 803(8), a document like the OCR Letter is not admissible if "circumstances indicate

---

[20] *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, No. 07-cv-641, 2008 WL 4610305, at *2 (E.D. Va. Oct. 14, 2008) (excluding evidence under FRE 403 because its admission would force the opposing party to attempt and to discredit it and lead to confusing "mini-trials").

9

a lack of trustworthiness" in its conclusions. As explained above, that is precisely the case with the OCR Letter. Indeed, as courts have explained in excluding agency "findings" with far fewer indicia of unreliability than here, where (as here) an agency makes a "finding" without a hearing, the investigation has "lingered for over a year," and "there is no information in the record as to the evidence available to the agency," those "findings" lack the trustworthiness required by FRE 803(8). *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009).

**Second**, the OCR Letter (and draft) are inadmissible under FRE 805 for the related but distinct reason that they are rife with hearsay within hearsay. The OCR Letter itself makes clear that its "facts" and conclusions are based on interviews with persons and reviews of "reports of possible sexual harassment"—sources of information that are themselves hearsay. Such a "letter of findings" that is "replete with hearsay" is inadmissible. *M.S..*, 2006 WL 2376202, at *4.

**Finally**, even if the OCR Letter could be admissible, the draft of that Letter cannot be, as courts have repeatedly found that draft or interim conclusions by agencies do not constitute actual "factual findings" by agencies under FRE 803(8) and lack the trustworthiness required by that rule. *See, e.g.*, *Gray*, 852 F.2d at 139; *Smith*, 137 F.3d at 862-63.

## IV. The OCR Letter And Draft Thereof Are Inadmissible Character Evidence.

Lastly, to the extent Defendants seek to introduce the OCR Letter or related documents as evidence of Ms. Eramo's purported conduct with regard to sexual assault victims other than Jackie (despite the lack of any evidence connecting Ms. Eramo with any complaints mentioned in the Letter) to suggest her conduct with regard to Jackie, they should also be excluded as impermissible character evidence and evidence of prior acts to show conformity under FRE 404.

## CONCLUSION

Ms. Eramo respectfully requests that the Court grant her Motion in Limine No. 3.

Dated: September 16, 2016	Respectfully submitted,

By: _/s/ Elizabeth M. Locke_____
Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
Andrew C. Phillips (VA Bar No. 88880)
Joseph R. Oliveri (VA Bar No. 77152)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
andy@clarelocke.com
joe@clarelocke.com

*Attorneys for Plaintiff Nicole P. Eramo*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Nicole Eramo's Motion in Limine No. 3, To Exclude Evidence About The OCR Letter of Finding, the Draft Thereof, and the UVA Compromise Agreement Relating Thereto was served on the below counsel of record on September 16, 2016 in accordance with the Fed. R. Civ. P.:

Michael John Finney & William David Paxton
GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373
Telephone: (540) 983-9334
Fax: (540) 983-9400
Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara & Samuel M. Bayard
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230 / Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 / Fax: (202) 973-4448
Email: alisonschary@dwt.com
*Attorneys for Defendants Rolling Stone LLC,*
*Sabrina Rubin Erdely, and Wenner Media LLC*

Benjamin Gaillard Chew
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, DC 20036-5303
Telephone: (202) 585-6511
Email: bchew@manatt.com
*Attorney for Defendant Sabrina Rubin Erdely*

Dated: September 16, 2016                    By:  */s/ Elizabeth M. Locke*
                                                  Elizabeth M. Locke