IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-00023-GEC |
| ROLLING STONE LLC, SABRINA RUBIN ERDELY, and WENNER MEDIA LLC, | ) |
| Defendants. | ) |

**MOTION *IN LIMINE* NO. 1 AND SUPPORTING AUTHORITIES: EXCLUSION OF CERTAIN EVIDENCE PRIOR TO THE DAMAGES STAGE OF TRIAL**

Defendants Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely (collectively, "Defendants") move this Court *in limine* to exclude under Rules 401-403 and 801 of the Federal Rules of Evidence certain categories of evidence, arguments, and references prior to a finding of liability by the jury and the point when the Court moves the case to the damages stage of trial.

Regardless of whether the categories of evidence described herein may be admissible during the damages stage of the trial, they are irrelevant to any theory of liability, are designed to generate undue sympathy for Eramo, will be prejudicial, and will cause delay if offered prior to a finding of liability.[1] As such, this evidence and any reference to the associated information should be excluded during opening and the liability stage of the trial. Specifically, Defendants

---

[1] Defendants note also that much of this evidence may not even be admissible at the damages stage. In the event the jury finds that the statements in the Article itself are not defamatory, but were to find liability based only on one or more of the post-publication statements (which form the basis of Counts III-VI), then it is not clear that any evidence of the effect of the Article alone on Eramo will be relevant at all, as neither Defendant can be liable for the consequence of non-actionable statements.

seek to exclude from the opening statements and liability stage of the trial: (1) any reference to or evidence of correspondence, emails, or communications from readers of the article "A Rape on Campus" (the "Article") received by Eramo or by the University of Virginia ("UVA") following the Article's publication, including but not limited to the open letter "Advocating for Dean Eramo," published in the UVA student newspaper *The Cavalier Daily* on November 24, 2014 (the "Open Letter" or "Advocating for Dean Eramo"); and (2) any other testimony, exhibits, or arguments concerning the impact or effect of the Article on Eramo's employment at UVA, her reputation or standing in the community, her health or medical care, or her personal life.

## ARGUMENT

### I.  READER REACTIONS TO THE ARTICLE RECEIVED BY ERAMO OR BY UVA SHOULD BE EXCLUDED PRIOR TO A FINDING OF LIABILITY

Considerations of avoiding unjustifiable prejudice, jury confusion, and delay require excluding from the liability stage of trial any reader correspondence reacting to the Article that Eramo or UVA received or viewed following the Article's publication, including but not limited to direct email and/or mail correspondence as well as the Open Letter. In discovery, Eramo and UVA produced a large collection of correspondence received from readers of the Article following its publication on November 19, 2014.[2] Eramo also produced a copy of "Advocating for Dean Eramo," an open letter to UVA President Teresa Sullivan collecting notes of support from a collection of UVA students, faculty, and staff, which was published in *The Cavalier Daily* on November 24, 2014.[3]

---

[2] Eramo included two examples of these letters as Exhibits 30 and 31 to her July 1, 2016 Statement of Undisputed Facts in support of her Motion for Partial Summary Judgment (Dkts. 99-34 and 99-35). Copies of these two letters are attached as Exhibit 1 and Exhibit 2 to this motion. Eramo also produced approximately 30 additional reader communications, and UVA produced nearly 100 others.

[3] Eramo filed a copy of this open letter as Exhibit 33 to her Statement of Undisputed Facts in support of her Motion

2

All of these documents—including the largely anonymous and unsigned notes of support in "Advocating for Dean Eramo"—could be offered for only a few possible purposes in connection with proving liability. First, Plaintiff will attempt to use some or all of them to show how readers of the Article understood and interpreted the meaning of the Article or, alternatively, to show that the depiction of Eramo in the Article is in fact "false." Yet, so offered, the documents constitute out-of-court statements offered for the truth of the matters contained therein, frequently by unnamed persons. They are therefore hearsay, and should be excluded for that reason alone from the liability stage of this bifurcated trial. Fed. R. Evid. 802.

Even if not hearsay—and they plainly are—this evidence has no bearing on the question of whether Defendants' published the statements with actual malice, and it is thus not probative of any fact "of consequence in determining the action" at the liability stage. Fed. R. Evid. 401, 402. The question of actual malice—which Eramo must prove in order for Defendants to be liable—focuses on a defendant's state of mind *at the time of publication*. *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512 (1984). Readers' reactions to the Article *after* publication are not "of consequence" to the question of a defendant's state of mind at the time of publication, and are thus irrelevant to an actual malice inquiry. Fed. R. Evid. 401; *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) ("Whether a proposition is of consequence to the determination of the action [under Rule 401] is a question that is governed by the substantive law. Simply stated, the proposition to be proved must be part of the hypothesis governing the case.").

Equally important, the proffered evidence has no probative value as to whether the challenged statements are defamatory as there is no reason to believe the readers here are

---

for Partial Summary Judgment (Dkt. 99-37). A copy of it is attached as Exhibit 3 to this motion.

3

"reasonable," and in any event, such evidence is improper lay opinion testimony that usurps the jury's role. Fed. R. Evid. 701; *Duncan v. Pearson*, 135 F.2d 146, 150-51 (4th Cir. 1943) (affirming the exclusion by the trial court of "[e]vidence as to the construction placed by witnesses upon the article alleged to be libelous"); *Tomblin v. WCHS-TV8*, 434 F. App'x 205, 212 (4th Cir. 2011) (trial court did not err when it found third parties' opinions regarding the alleged defamatory meaning of a broadcast inadmissible, since "such impressions would not be helpful to the trier of fact because they would be duplicative of those which could be reached by the jury").[4] *See also* Ex. 4 [Hearing Tr.] at 32:19-22 ("the mere fact that a number of other people read [the Article] one way so as to prompt them to make a response doesn't suggest that others read it another way and didn't feel compelled based on their reading to make a response").

Moreover, introduction of this commentary at the liability stage will inundate the jury with third-party viewpoints that often tend towards vituperative and hyperbolic, creating a significant and unjustifiable risk of prejudice and confusion. Fed. R. Evid. 403. Indeed, Plaintiff's clear goal attempting to offer this evidence at the liability stage of trial is to foster this kind of jury bias. For instance, in one of the emails Eramo filed with her Motion for Partial Summary Judgment, the author writes, "I am in the process of reading the Rolling Stone article about rapes on the UVA campus. I am so sickened by what I have read and I think you should

---

[4] Plaintiff relied on the *Tomblin* case at oral argument on the parties' cross-motions for summary judgment on August 12, 2016, claiming that in this case "the Fourth Circuit held that exactly that type of evidence, how real people read the story, is admissible to show the defamatory meaning of the publication." (Ex. 4 [Hearing Tr.] at 171:7-11.) This claim was not accurate. In *Tomblin*, the Fourth Circuit in fact affirmed a trial court's ***exclusion*** of portions of sworn affidavits by third parties setting out their opinions of the challenged broadcast's defamatory implication. *Tomblin*, 434 F. App'x at 212. The Fourth Circuit agreed that such evidence would be "unhelpful," and thus inadmissible under Rule 701, as the jury should make its own evaluation of the challenged statements. *Id*. Defendants note further that the sentence from the *Tomblin* opinion that Plaintiffs quoted to this Court ("Moreover, witnesses could surely testify to the understanding about the daycare that they *actually* took from the broadcast while watching it.") is plainly dicta. The only way to reconcile this sentence with the court's actual evidentiary ruling is to read it as leaving the door open to *live witness* testimony about something *other than* defamatory implication (for instance, on the question of damages). Here, Plaintiff offers only unreliable and inadmissible hearsay, and offers it in support of a defamatory meaning argument, which is impermissible under *Tomblin*.

4

ashamed of yourself. . . . You are a horrible person and school is an abomination and disgusts me." (Ex. 1 at ERAMO-00805.) In a second email, the author writes, "God will have his day with you and hold you accountable just as the boys who have raped and performed these disgusting acts. . . . You are a despicable human being." (Ex. 2 at ERAMO-00816.) Such extreme sentiments, with no information concerning the authors' reliability, or whether their reactions were to the challenged statements or to one of the many other statements not at issue here, would serve only to inflame and prejudice the jury. This type of evidence must be excluded from the liability stage of trial.[5] Fed. R. Evid. 403.

The Open Letter raises additional concerns of prejudice and confusion. First, not a single statement in "Advocating for Dean Eramo" questions the truth of the facts contained in the Article. For instance, the statement attributed to Margaret Edwards of the Maxine Platzer Lynn Women's Center defends Eramo for the same actions Eramo now contends she did not take, noting that "[t]he person who wrote the article quite frankly has not sat in [Eramo's] chair, or perhaps she would know why a 'neutral face' is sometimes necessary," and continues, "[a]utonomy—regaining a sense of control and choice—is critically necessary for recovering from rape. It makes for a messy justice system, but is integral to healing from trauma." (Ex. 3 at ERAMO-00879.) Another unsigned comment actually quotes the Article itself, opening with the sentence, "Dean Eramo, described in the Rolling Stone article as '[survivors'] best advocate and den mother,' has been the primary intake for all reports of sexual misconduct at UVA for 8 years," (*id.* at ERAMO-00881), and yet another opens, "The Rolling Stone article has appropriately brought to light very troubling issues in how the University deals with sexual

---

[5] Any suggestion that Plaintiff must prove that she suffered some damage to establish the existence of liability is premature. The Court has made clear that the trial will be bifurcated, and if the jury finds that any of the statements are not defamatory *per se*, this issue of whether Plaintiff must show damages as an element of her claim can be addressed by an appropriate stipulation.

5

misconduct." (*Id.*)  Still other letters provide no indication of whether they are actually in response to the statements at issue, or to other criticism of Eramo.  Far from contributing probative evidence to the record at trial, these comments in the Open Letter would serve only to prejudice the jury and intractably confuse the issues.  *Renfro Hosiery Mills Co. v. Nat'l Cash Register Co.*, 552 F.2d 1061, 1069 (4th Cir. 1977) (among grounds for exclusion was that the proffered evidence "had little if any probative value but rather considerable potential for prolongation of the trial and possible confusion of the issues").

The Open Letter also reaches impermissibly far into the realm of prejudicial character evidence.  As apparent from its title, the letter's purpose is to "advocate" for Eramo by compiling attestations of how many people admire and support her.  Such evidence amounts to no more than a plea that the jury side with the admired person, regardless of the facts of the case.  This concern is precisely why the Federal Rules of Evidence prohibit introduction of evidence of an individual's character except in limited circumstances.  *See* Fed. R. Evid. 404.  In its notes to Rule 404, the Advisory Committee acknowledges this justification for the rule:

> Character evidence is of slight probative value and may be very prejudicial.  It tends to distract the trier of fact from the main question of what actually happened on the particular occasion.  ***It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened***.

Fed. R. Evid. 404 advisory committee note to Subdivision (a) (1972) (emphasis added).  The Advisory Committee's reasoning applies with equal force to "Advocating for Dean Eramo."  The Open Letter will encourage the jury to "reward the good [woman] . . . despite what the evidence in the case shows actually happened."  Rule 403 requires exclusion of this type of prejudicial, confusing, and negligibly probative evidence from the liability stage of trial.  Fed. R. Evid. 403.

6

In the end, the only possible relevance of these documents is at the damages phase of the trial, should that occur. Evidence of the reaction to and impact of the challenged statements on Eramo's reputation may be relevant to a damages calculation if the reactions are in fact to statement(s) ultimately found defamatory. For example, if the jury finds that none of the challenged statements in the Article are defamatory or made with actual malice, but finds for Eramo on one or more post-publication statements, then the comments in the Open Letter or other communications responding only to the Article should not be admissible at all, even for damages. In any event, Eramo should not be permitted to bypass the rightful limitations of the hearsay and lay witness opinion rules at the liability stage and inject highly prejudicial, confusing, and irrelevant evidence when the evidence relates solely to damages.

## II. EVIDENCE CONCERNING THE EFFECT OF THE ARTICLE OR OTHER CHALLENGED STATEMENTS ON ERAMO'S EMPLOYMENT AT UVA, REPUTATION OR STANDING IN THE COMMUNITY, HER HEALTH OR MEDICAL CARE, OR HER EMOTIONAL OR PHYSICAL STATE SHOULD NOT BE PERMITTED DURING THE LIABILITY PHASE

Defendants acknowledge that evidence concerning the impact or effect of the Article or the other allegedly defamatory statements on Eramo's employment at UVA, her reputation or standing in the community, her health or medical care, or her personal life could be relevant to the calculation of damages. Nevertheless, these categories of evidence are irrelevant to the question of whether Defendants' published the challenged statements with actual malice or to the issue of substantial truth. Evidence relating solely to a plaintiff's experience following publication cannot inform this inquiry into a defendant's state of mind at the time of publication, or into whether the challenged statements are substantially true. Accordingly, any such evidence is inadmissible at the liability stage of trial. Fed. R. Evid. 401, 402. *See also supra* at 3; *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630, 652 (W.D. Va. 2008) (evidence relevant to

7

damages but irrelevant to liability was only admissible at the damages stage of a bifurcated trial). Indeed, these categories of evidence would serve only to foster unfair prejudice and confusion if admitted at the liability stage. Documents, testimony or argument regarding Eramo's personal struggles would risk inflaming, prejudicing, and confusing the jury, encouraging them to find liability because Eramo has ostensibly suffered damages, regardless of whether Defendants are responsible for those damages under the law. Indeed, Eramo's sole aim in attempting to introduce this evidence is to prompt that impermissible result, which is one of the principle reasons this Court's standard Scheduling Order requires the bifurcation of liability and damages stages of trial. Simply stated, there is no justification for the introduction of evidence going solely to Eramo's damages at the liability stage of this bifurcated trial. Fed. R. Evid. 403.

In this regard, Defendants are particularly concerned that in opening or when questioning witnesses, Plaintiff's counsel may refer to Eramo as "former Dean" or elicit testimony that her job duties changed after the Article. This information could be highly prejudicial during the liability phase of the trial, especially since it is undisputed that Eramo's position and title as Associate Dean at UVA did not change until March 1, 2016, nearly 16 months after the Article was published. During that interim period, in May 2015, Eramo received a high profile award for her work with sexual assault victims at graduation, and in July 2015, she received a pay raise and was given expanded responsibilities under UVA's new sexual assault policy implemented on July 1, 2015. There is a significant factual dispute as to whether the Article or any of the subsequent challenged statements were the cause of UVA's decision to eventually change Eramo's job duties in 2016. Defendants will show this change occurred only after the federal government publicly criticized Eramo's job performance in September 2015, and Eramo was

8

further publicly criticized in January 2016 for her attacks on Jackie in these proceedings. In any event, these issues are best reserved for the damages stage of trial.

In sum, any evidence of how Eramo was impacted or affected by the Article subsequent to the date on which she was allegedly defamed is irrelevant to the question of Defendants' liability, runs the risk of prolonging the liability phase, confusing the jury, and would be highly prejudicial if introduced for any reason other than damages.

## CONCLUSION

For all of these reasons, the Court should exclude from opening statements and during any aspect of the liability stage of trial (1) any reference to or admission of correspondence, emails, or communications from readers of the Article received by Eramo or by the University of Virginia following the Article's publication (including but not limited to the Open Letter); and (2) any other testimony, exhibits, or arguments concerning the impact or effect of the Article on Eramo's employment at UVA, her reputation or standing in the community, her health or medical care, or her personal life.


Dated: New York, New York
        September 16, 2016

By: /s/ Elizabeth A. McNamara

Elizabeth A. McNamara (*pro hac vice*)
Samuel M. Bayard (*pro hac vice*)

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Fl.
New York, New York 10020-1104
Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
              samuelbayard@dwt.com

Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC  20006-3401
Telephone:   (202) 973-4248
Fax:               (202) 973-4448
E-mail:          alisonschary@dwt.com

W. David Paxton (VSB No. 19798)
J. Scott Sexton (VSB No. 29284)
Michael J. Finney (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, VA  24022-0013
Telephone:   (540) 983-9300
Fax:               (540) 983-9400
E-mail:          paxton@gentrylocke.com
E-mail:          sexton@gentrylocke.com
E-mail:          finney@gentrylocke.com

*Attorneys for Defendants Rolling Stone LLC,
Sabrina Rubin Erdely, and Wenner Media LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, the foregoing was served by CM/ECF on counsel of record for all parties to this action. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Elizabeth A. McNamara
Elizabeth A. McNamara