**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| **NICOLE P. ERAMO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:15-cv-00023-GEC** |
| **ROLLING STONE LLC,** | ) | |
| **SABRINA RUBIN ERDELY, and** | ) | |
| **WENNER MEDIA LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 4 AND SUPPORTING AUTHORITIES:
CHARLOTTESVILLE POLICE DEPARTMENT'S
POST-PUBLICATION INVESTIGATION**

Defendants Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely (collectively, "Defendants") move this Court *in limine* to exclude evidence, testimony and argument at trial relating to the conclusions and results of the Charlottesville Police Department's post-publication investigation of Jackie's alleged gang rape, commenced after the publication of the Article on November 19, 2014, with the results publicly reported on March 23, 2015 in a press release and videotaped press conference. The conclusions and results of the Charlottesville Police Department's post-publication investigation, including statements made in the press release and press conference, should be excluded because (1) they are not relevant; and (2) the danger of unfair prejudice, confusing the jury, and wasting time on collateral matters substantially outweighs any probative value they might have.

**ARGUMENT**

A. **The Charlottesville Police Department's Post-Publication Investigation and Subsequent Statements Are Not Relevant**

This Court should exclude all testimony, evidence and argument relating to facts and conclusions developed during the Charlottesville Police Department's post-publication investigation, including without limitation a press release issued on March 23, 2015, statements made at the press conference that same day, and/or testimony or arguments regarding these matters, because they are not relevant to any issue to be tried in this case. Under Federal Rule of Evidence 402, "[ir]relevant evidence is not admissible." Evidence is only relevant if it has "any tendency to make a fact [of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, the facts and conclusions developed and reached only during the post-publication investigation of the Charlottesville Police Department ("CPD") are not relevant for two reasons.

First, the CPD investigation, press release, and press conference have no relevance to the issue of actual malice. This investigation was not requested by UVA or started by the CPD until after publication of the Article. The results or findings of that investigation were not announced until March 23, 2015, more than *four months* after "A Rape on Campus" (the "Article") was published. Erdely and Rolling Stone did not have access to the police's press statements or to the facts uncovered by the police during its investigation prior to November 19, 2014 when the Article was published or when any of the other challenged statements were made. As such, those facts have no bearing on Defendants' subjective state of mind prior to publication. *See Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD, 2013 WL 211071, at *7 (D. Nev. Jan. 17, 2013) (excluding evidence of FBI investigation after publication of allegedly defamatory statements because the investigation was not relevant to defendants' "understanding of the truth

2

of their statements" at the time of publication). *See also McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) ("[B]ecause the actual malice inquiry is subjective—that is, concerned with the defendant's state of mind when he acted—the inference of actual malice must necessarily be drawn solely upon the basis of the information that was available to and considered by the defendant prior to publication.") (citing *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 498 (1984)).

<u>Second</u>, the CPD investigation, press release, and press conference focus on the truth or falsity of Jackie's account of having been gang-raped at the Phi Kappa Psi house on September 28, 2012 and her claim that she was struck with a bottle on the Corner on April 6, 2014. These issues do not bear on the truth or falsity of the statements challenged as false and defamatory in this action. *See* Compl. ¶¶ 210, 225, 240, 255, 270, 285. Indeed, as the Court has already observed:

> The court believes that ***the particulars of Jackie's alleged assault are irrelevant to the claims and defenses of the defamation action*** and are disproportionate to Eramo's need for the information. The crux of the dispute in the defamation action is defendants' portrayal of Eramo and Jackie's communications with Eramo/UVA. ***The specific, graphic details about what may or may not have occurred on the night of September 28, 2012 have no bearing on these issues***.

January 25, 2016 Memorandum Opinion ("Mem. Op.") at 11 (No. 3-15-mc-00011, Dkt. 34) (emphasis added).

The CPD press release, attached as Exhibit 1, addresses the CPD's investigation of the following topics, all of which relate to the truth or falsity of "the particulars of Jackie's alleged assault" and the bottle-throwing incident, not the allegedly defamatory statements at issue in this action:

- On pages 2-3, the CPD questions the truth of Jackie's account of having a bottle thrown at her on the Corner in April 2014, indicating the injury was "consistent

with having fallen" and that Jackie's roommate denied having removed glass from her face. (Ex. 1 at ERAMO-04883-84.)

- On page 4, the CPD indicates that none of the Phi Kappa Psi fraternity brothers interviewed admitted to knowing Jackie or having knowledge of sexual assault. (*Id*. at ERAMO-04885.)

- On pages 4-5, the CPD states that there was "no evidence of a party having taken place at the fraternity house on September 28, 2012" and discusses a still photograph and other evidence that appear to buttress that conclusion. (*Id*. at ERAMO-04885-86.)

- On page 5, the CPD indicates that two of the "three friends" from the Article told police that Jackie had told them that she went out on date with an individual named "Haven Monahan" on September 28, 2012. (*Id*. at ERAMO-04886.)

- On page 5, the CPD reports that two of the three friends contradicted Jackie's version of events "in reference to where they met subsequent to the alleged sexual assault, her physical condition at the time they met, the time of day during which the meeting took place, the description of the assault, and their reactions to what they were allegedly told by 'Jackie.'" (*Id.*)

- On page 6, the CPD states it could not locate anyone named "Haven Monahan." (*Id*. at ERAMO-04887.)

- On page 6, the CPD indicates that police identified the person in a photograph purporting to be of "Haven Monahan" and determined that this individual had no involvement in the alleged gang rape. (*Id*.)

- On pages 6-7, the CPD reports that an individual who worked at UVA Aquatic and Fitness Center and who belonged to a fraternity (not Phi Kappa Psi) spoke to police with counsel and provided work schedules and financial records that may have been relevant to a dinner date with Jackie on September 28, 2102. (*Id*. at ERAMO-04887-88.)

- On page 7, the CPD reports that members of this individual's fraternity did not know Jackie or have knowledge of any sexual assault. (*Id*. at ERAMO-04888.)

- On page 7, the CPD indicates that this fraternity had a cookout on September 28, 2012, but police discounted that because interior of house was inconsistent with description in RS article, and a roster of fraternity brothers had no one named "Haven Monahan" or "Drew" on it. (*Id*.)

- On page 7, the CPD states that no victims came forward to substantiate the two other alleged rapes at Phi Kappa Psi. (*Id*.)

None of these topics reflect on the truth or falsity of any of the challenged statements about

Eramo or Defendants' subjective state of mind with respect to those challenged statements.

The CPD press release does contain some information relating to Jackie's interactions with Dean Eramo, including her meeting with Eramo in May 2013 (*id.* at ERAMO-04882-83) and the meetings between Jackie, Eramo and the CPD in April and May 2014 after the bottle incident (*id.* at ERAMO-04884), but that information is cumulative of information contained in contemporaneous records that demonstrate what transpired in those meetings.[1] It also is cumulative of testimony that Plaintiff and/or Jackie may give at trial regarding what happened in those meetings. And because this information was not made public until March 23, 2015, when the CPD held a press conference and issued the press release, it has no bearing whatsoever on Erdely's and Rolling Stone's state of mind regarding the characterization of these meetings in the Article or challenged post-publication statements (the last of which allegedly was made in early December 2014).

### B. Even If Marginally Relevant, the Probative Value of Evidence Relating to the CPD Investigation Is Substantially Outweighed by the Danger of Unfair Prejudice, Confusing the Issues, and Wasting Time

Even if the Court finds that evidence relating to conclusions and facts developed in the Charlottesville Police Department's post-publication investigation is relevant, the Court nevertheless should exclude it under Federal Rule of Evidence 403 because its marginal relevance is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Rule 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

---

[1] *See* Declaration of Sabrina Rubin Erdely in Support of Defendants' Motion for Summary Judgment Exs. 17, 26, 27 (Dkts. 104-7, 104-16, and 104-17); Declaration of Elizabeth A. McNamara in Support of Defendants' Motion for Summary Judgment Exs. 107, 108, 110 (Dkts. 108-25, 108-26, and 108-28).

Fed. R. Evid. 403. Here, testimony and evidence relating to the CPD investigation, press release, and press conference threaten to unfairly prejudice the Defendants and confuse the jury by inviting the jury to compare the information uncovered by the CPD (after publication of the Article) with the information Defendants were able to discover prior to publication. Such a comparison has no legitimate basis under the actual malice standard, nor even on the facts given UVA's very public request for assistance and the investigatory tools available to the police. There is no comparison to what a single journalist can obtain through requested cooperation, particularly when UVA obstructed an interview with Eramo and was parsimonious with the information that it provided.

Testimony, evidence, or arguments relating to the CPD's investigation, its press release, or its press conference is likely to confuse the jury and unfairly prejudice the Defendants by creating the impression that Defendants "could have" or "should have" discovered the same information that the CPD was able to discover only after the fact. But that impression is fundamentally misleading because the publication of the Article itself was a decisive event in the UVA community that fundamentally changed the investigative landscape and made it easier to gather pertinent information about Jackie's gang rape than it had been before publication. For example, after the Article was published, the Charlottesville Police had the full cooperation of UVA and Phi Kappa Psi. Prior to publication, UVA refused to allow Eramo to be interviewed— even after she agreed to—and Phi Kappa Psi refused to provide any information, even though evidence now reveals that it had all the relevant facts concerning the allegations, save the names of the victims. Furthermore, after publication, the CPD had access to information that Defendants did not (such as UVA pool records), and access to people who came forward only *after* the Article was published, such as the "three friends" who came forward to the national

6

press after publication of the Article.[2] The CPD had the power of the government behind it and investigatory tools not available to journalists. Not only will the comparison between the CPD's investigation and Defendants' pre-publication investigation confuse the issues, but the comparison will tempt the jury to evaluate the sufficiency of Defendants' actions in objective or "negligence" terms, which is impermissible under the actual malice standard. *Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 317 (4th Cir. 2008) ("The standard requires that the defendant have a 'subjective awareness of probable falsity' of the publication."); *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 711 (4th Cir. 1991) (*en banc*) (holding that it was reversible error to allow a jury to find actual malice according to an objective standard "by showing a departure from accepted journalistic practices").

In addition to these grounds for confusion, there is a further risk of juror confusion flowing from the equivocal message conveyed by the CPD press release. The press release does not state definitively that Jackie was not gang raped on September 28, 2012 or that the Article's account of her rape is false; rather it concludes that, *without being able to interview Jackie or access her UVA records*, "there is no substantive basis to support the account alleged in the Rolling Stone article." (Ex. 1 at ERAMO-04882.) At the same time, it acknowledges that the CPD "cannot rule out that something may have happened to 'Jackie' somewhere and at some time on the evening of September 28, 2012," and that "without additional evidence we are simply unable to reach a definitive conclusion." (*Id.* at ERAMO-04888.) It is unlikely that

---

[2] After the Article was published, on or around December 1, Ryan Duffin came forward and spoke with the UVA administration and the Charlottesville Police. *See* Ex. 2 [Duffin Dep.] 130:15-131:21. He then put Alex Stock in contact with the Charlottesville Police. *See* Ex. 3 [Stock Dep.] 42:2-22. Thereafter, Duffin, Stock, and Kathryn Hendley began speaking to the news media. *See, e.g.*, T. Rees Shapiro, *U-Va. Students challenge Rolling Stone account of alleged sexual assault*, Wash. Post (Dec. 10, 2014), https://www.washingtonpost.com/local/education/u-va-students-challenge-rolling-stone-account-of-attack/2014/12/10/ef345e42-7fcb-11e4-81fd-8c4814dfa9d7_story.html; Matt Stroud, *Friends Try to Correct Record on UVa Rape Story*, Associated Press (Dec. 14, 2014), http://www.businessinsider.com/friends-pushed-uva-jackie-to-call-police-after-alleged-gang-rape-2014-12.

jurors will be able to parse these fine distinctions and keep in mind the limitations of the purported findings in the CPD press release.

Further, permitting Plaintiff to call witnesses to testify, to introduce evidence, or to otherwise refer to the CPD's post-publication investigation will open the door to a lengthy, irrelevant, and highly prejudicial "trial within a trial" on the truth or falsity of Jackie's account of her gang rape and a comparison of the CPD's investigation versus Defendants' investigation. This will waste time on matters like the "three friends" and "Haven Monahan" that have no direct bearing on any statement which Eramo challenges as false and defamatory as to her in this action,[3] and will cause undue delay and a waste of time on matters that are salacious, confusing, and irrelevant to actual malice and the truth or falsity of the challenged statements.  Moreover, if Plaintiff is permitted to hold up the CPD investigation as a foil for Defendants' investigation, then Defendants will be entitled to put in evidence regarding the shortcomings of that investigation, including the CPD's lack of access to Jackie or her UVA records.  (Ex. 1 at ERAMO-04882.)  Given the tight time frame for this trial, the danger of wasting time on the CPD investigation substantially outweighs any marginal probative value this post-publication investigation might have.  *See United States v. Hill*, 322 F.3d 301, 306 (4th Cir. 2003) (holding that district court properly exercised its discretion under Rule 403 because, "[t]o have admitted these documents would have necessitated an exhaustive case within a case that would have confused the jury as to the issues to be decided").

---

[3] Defendants' respectfully refer the Court to Defendants' Motion in Limine No. 8 to exclude testimony from the "Three Friends" and evidence concerning "Haven Monahan" for further independent reasons why the Court should exclude evidence relating to the three friends and "Haven Monahan."

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully submit that the Court should preclude Plaintiff from mentioning, referencing, inquiring about, obtaining testimony about, or introducing evidence at trial about the conclusions and results of the Charlottesville Police Department's post-publication investigation, including without limitation statements made in the March 23, 2015 press release and press conference and/or testimony regarding these matters.

Dated: New York, New York
        September 16, 2016

By: /s/ Elizabeth A. McNamara

Elizabeth A. McNamara (*pro hac vice*)
Samuel M. Bayard (*pro hac vice*)

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Fl.
New York, New York  10020-1104
Telephone:  (212) 489-8230
Fax:         (212) 489-8340
Email:       lizmcnamara@dwt.com
             samuelbayard@dwt.com

Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC  20006-3401
Telephone:  (202) 973-4248
Fax:         (202) 973-4448
E-mail:      alisonschary@dwt.com

W. David Paxton (VSB No. 19798)
J. Scott Sexton (VSB No. 29284)
Michael J. Finney (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, VA  24022-0013
Telephone:  (540) 983-9300
Fax:         (540) 983-9400

9

E-mail:    paxton@gentrylocke.com
E-mail:    sexton@gentrylocke.com
E-mail:    finney@gentrylocke.com

*Attorneys for Defendants Rolling Stone LLC,*
*Sabrina Rubin Erdely, and Wenner Media LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 16, 2016, the foregoing was served by CM/ECF on

counsel of record for all parties to this action.  Notice of this filing will be sent by email to all

parties by operation of the Court's electronic filing system or by mail to anyone unable to accept

electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing

through the Court's CM/ECF System.


/s/ Elizabeth A. McNamara
Elizabeth A. McNamara