IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ROLLING STONE LLC,<br>SABRINA RUBIN ERDELY, and<br>WENNER MEDIA LLC,<br><br>　　　　　　Defendants. | Case No. 3:15-cv-00023-GEC |

## DEFENDANTS' MOTION *IN LIMINE* NO. 7 AND SUPPORTING AUTHORITIES: NEWSEUM EXHIBITION AND SIMILAR THIRD-PARTY ASSESSMENTS OF THE ARTICLE

Defendants Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely (collectively, "Defendants") move this Court *in limine* to exclude evidence, testimony and argument regarding the Newseum exhibition that Plaintiff has previously relied upon, as well as similar pejorative third-party critiques regarding the quality of journalism reflected in the Article. This evidence constitutes inadmissible hearsay and is highly and unfairly prejudicial to the Defendants—indeed, the only purpose for offering such material is to inflame the jury against Defendants and to cause them to prejudge the quality of the Article's reporting rather than to fairly and impartially evaluate the evidence for themselves. Therefore, Plaintiff should not be permitted to mention, reference, inquire about, obtain testimony from witnesses on, introduce documents, or show slides that reference the Newseum exhibition or any similar pejorative third-party characterizations of the journalism reflected in the Article.

### ARGUMENT

In oral argument on August 12, 2016, counsel for Plaintiff showed a slide of a photo of "A Rape on Campus" (the "Article") being added to an exhibition on "media mistakes" at the

Newseum in Washington D.C. Counsel for Plaintiff showed the slide and quoted the director of the exhibition saying: "It is to remind visitors of the power of the press, the responsibilities inherent in that power, and the damage that can occur when journalists don't do their job well. The Rolling Stone campus rape story is a cautionary tale about what can happen when the press doesn't live up to its standards of fact-checking, fairness, and questioning sources when reporting a story." (Ex. 1 [Hearing Tr.] 4:19-5:8.)

Plaintiff relied on a similar pejorative characterization of the journalism reflected in the Article in soliciting deposition testimony from one of Rolling Stone's witnesses. (*See* Ex. 2 [Garber Paul Dep.] 216:24-217:5.)[1] ("As the fact-checker for Rolling Stone, who was responsible for fact-checking this article, which the 'Columbia Journalism Review' named as 'The Worst Journalism Debacle of 2014,' don't you wish that you had been given Kathryn Hendley's name by Sabrina Rubin Erdely prior to publication of the article?").) Counsel's reference was to the Columbia Journalism Review's posting, "The Worst Journalism of 2014."[2] This posting is not related to the Columbia Journalism Review's investigation of the Article under an agreement with Rolling Stone.

    **A.    The Newseum Exhibition and Similar Pejorative Characterizations by Third Parties are Inadmissible Hearsay**

The most basic reason to exclude any reference to or evidence of the Newseum exhibition or similar third-party statements is that they are hearsay. "Federal Rule of Evidence 802 prohibits generally the admission of out-of-court statements offered to prove the truth of the matters asserted." *United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995). The Newseum's

---

[1] Exhibit 2 hereto consists of excerpted pages from the redacted transcript of the April 21, 2016 deposition of Elisabeth Garber-Paul, which was filed in full as Exhibit 6 to Plaintiff's Statement of Undisputed Facts in Support of Her Motion for Partial Summary Judgment (Dkt. 99-11), and is subject to a sealing order by this Court (Dkt. 130).

[2] The posting is available online at http://www.cjr.org/darts_and_laurels/the_worst_journalism_of_2014.php, and is attached hereto as Exhibit 3.

post-hoc conclusion that the Article was a "media mistake" and its director's statement that the Article "is a cautionary tale about what can happen when the press doesn't live up to its standards of fact-checking, fairness, and questioning sources when reporting a story" have no conceivable purpose other than to prove the truth of these criticisms. Likewise, the fact that the Columbia Journalism Review concluded that the Article was among the "worst journalism of 2014" can only feasibly offered for its truth. Accordingly, these out-of-court statements should be excluded as inadmissible hearsay.

### B. The Newseum Exhibition and Similar Pejorative Characterizations Should Be Excluded Under Rule 403

Federal Rule of Evidence 403 provides an independent ground to exclude post-publication, third-party criticisms of Article. Rule 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence

Fed. R. Evid. 403. Here, the probative value of the Newseum's conclusion about the Article and similar third-party conclusions is extremely low because they shed no light on any particular allegedly false and defamatory statements regarding Eramo. They also do not provide any evidence of actual malice because they do not give rise to a reasonable inference that Erdely and/or Rolling Stone knew that any allegedly defamatory statement to be false or entertained serious doubts about any allegedly defamatory statement at the time of publication. *See Hatfill v. N.Y. Times Co.*, 532 F.3d 312, 317 (4th Cir. 2008) ("The standard requires that the defendant have a 'subjective awareness of probable falsity' of the publication.") (citation omitted).

On the other side of the Rule 403 balance, the risk of unfair prejudice is extremely high because these conclusory, pejorative statements about the quality of Rolling Stone's journalism

3

threaten to inflame the jury against Defendants and cause them to prejudge Defendants' actions rather than evaluating the evidence and drawing conclusions about the reporting, editing, and fact-checking behind the Article themselves.  This is the essence of unfair prejudice, especially because these conclusions amount to pseudo-expert testimony on journalism standards, and Defendants will have no opportunity to cross-examine the declarants or examine the bases for the conclusions or methodology used in reaching these conclusions.  Moreover, such evidence threatens to confuse the jury about the applicable standard on actual malice, which does not look to objective standards of journalistic excellence or notions of negligence.  *See Reuber v. Food Chem. News*, *Inc.*, 925 F.2d 703, 711 (4th Cir. 1991) (*en banc*) (holding that it was reversible error to instruct the jury that actual malice may be established merely "by showing a departure from accepted journalistic practices"); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) (noting that even an "extreme departure from professional standards" does not rise to the level of actual malice); *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) ("[A]ctual malice cannot be established merely by showing a departure from accepted journalistic or professional practices."); *Tavoulareas v. Piro*, 817 F.2d 762, 796 (D.C. Cir. 1987) (noting that courts "do not sit as some kind of journalism review seminar offering our observations on contemporary journalism and journalists") (citation omitted).

The danger of unfair prejudice thus substantially outweighs any probative value the Newseum exhibition and similar third-party statements might have, and they should be excluded under Rule 403.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude Plaintiff from mentioning, referencing, inquiring about, obtaining testimony from witnesses on, introducing documents or

4

showing slides that reference the Newseum exhibition or any similar pejorative third-party characterizations of the Article.

Dated: New York, New York
       September 16, 2016

By: /s/ Elizabeth A. McNamara

Elizabeth A. McNamara (*pro hac vice*)
Samuel M. Bayard (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Fl.
New York, New York 10020-1104
Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
       samuelbayard@dwt.com

Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248
Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

W. David Paxton (VSB No. 19798)
J. Scott Sexton (VSB No. 29284)
Michael J. Finney (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9300
Fax: (540) 983-9400
E-mail: paxton@gentrylocke.com
E-mail: sexton@gentrylocke.com
E-mail: finney@gentrylocke.com

*Attorneys for Defendants Rolling Stone LLC, Sabrina Rubin Erdely, and Wenner Media LLC*

5

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, the foregoing was served by CM/ECF on counsel of record for all parties to this action. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Elizabeth A. McNamara
Elizabeth A. McNamara