IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

|  |  |
|---|---|
| NICOLE P. ERAMO, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-00023-GEC |
| ROLLING STONE LLC, SABRINA RUBIN ERDELY, and WENNER MEDIA LLC, | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION *IN LIMINE* NO. 11 AND SUPPORTING AUTHORITIES:
*LAW & ORDER* EPISODE**

Defendants Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin-Erdely (collectively, "Defendants"), move this Court *in limine* to exclude testimony, evidence and/or argument concerning an episode of *Law and Order: Special Victims Unit* titled "Girl Dishonored," which was attached as Exhibit 23 to Plaintiff's Counter-Statement of Material Facts opposing Defendants' Motion for Summary Judgment ("Pl. Counter-Statement") (Dkt. 116-28).

**ARGUMENT**

In her Counter-Statement, Plaintiff insinuated that Jackie made up her account of her sexual assault based upon a *Law & Order* television episode and suggested that Erdely's failure to watch this television episode prior to publication is evidence of actual malice. The undisputed evidentiary record demonstrates that this television episode is not relevant to any issue in the case and therefore inadmissible. Furthermore, any minimal probative value it may possess is outweighed by the substantial danger of prejudice and of confusing and misleading the jury.

All the facts concerning this issue are not in dispute. In short, Plaintiff failed to establish any foundation for the argument that Jackie made up her assault based on facts contained in a *Law & Order* episode and, as a result, the theory is pure speculation. Even then, it is speculation that informs the truth or falsity of Jackie's story, not any issue that is before the jury. *First*, there is no evidence that supports the conclusion that Jackie even saw this *Law & Order* episode before she first reported her sexual assault to UVA. Instead, the undisputed evidence establishes that Jackie told Erdely she saw the referenced episode after she had gone to Eramo in April 2014 for a second time to report two additional alleged sexual assaults at the Phi Kappa Psi house, which was *a full year after* she had first reported her sexual assault to the UVA administration. A transcript of Erdely's September 12, 2014 interview with Jackie shows that Jackie told Erdely she watched the episode with her father "*this May*"—referring to May 2014, a year *after* Jackie first reported her assault to the UVA administration. (*See* Ex. 1 at RS118378; *see also* Ex. 2 (confirming Jackie first reported her assault to Eramo in May 2013).[1]) Erdely confirmed at her deposition that she understood Jackie to have seen the *Law & Order* episode long after she reported her assault to Eramo and did not consider it to be of any relevance:

> Q: Did you ever bother to go and try to identify the Law & Order SVU episode that Jackie was referring to here?
>
> A: Why would I?
>
> Q I'm asking if you did.
>
> A: I didn't see any reason to.
>
> Q: Is that a "no"?

---

[1] Exhibit 1 consists of excerpted pages from the redacted version of the cited document, which was filed as Exhibit 23 to Plaintiff's Statement of Undisputed Facts in Support of Her Motion for Partial Summary Judgment ("Pl. SUF") (Dkt. 99-27). Exhibit 2 is a redacted version of the cited document, which was filed as Exhibit 26 to the Declaration of Sabrina Rubin Erdely in Support of Defendants' Motion for Summary Judgment (Dkt. 104-16). Both documents are subject to a sealing order by this Court (Dkt. 130).

> A: She recounted to me -- I just want to understand this. So, she recounted to me a television episode that she watched in May of that, of that year, that we were talking, that was similar to an account of gang rape that she had given earlier that same year, and also the year before. And you're wondering whether I -- whether I went and watched that episode?
>
> Q: Yes.
>
> A: No.
>
> Q: Have you since, during this litigation or anytime after, watched that episode?
>
> A: No.
> …
>
> Q: At the time that [Jackie] told you about this incident, you had no reason to go and view it; that's your testimony? …
>
> A: Yeah, my explanation here is that I don't really understand the correlation here between – she had reported a gang rape a year earlier – twice, in the preceding year, and then told me that, after the fact, she had seen an episode of a television show that was about a gang rape. So, I don't know why I would go and watch that television show.

(Ex. 3 [Erdely Dep.] 146:25-147:17, 148:15-22.[2]) Accordingly, there is no basis in the record for Eramo to claim that Erdely knew Jackie had seen this episode of *Law & Order before* reporting her sexual assault to UVA, much less that she should have somehow suspected that Jackie was making up her assault based on a television show.

*Second,* as set forth above, Plaintiff established at Erdely's deposition that Erdely has *never seen* the referenced *Law & Order* episode. (Ex. 3 [Erdely Dep.] at 146:25-147:20, 148:1-22.) In fact, during the September 12 interview where Jackie mentioned watching the episode with her father, Erdely told Jackie that she has "never seen any of the Law & Order" television shows. (Ex. 1 at RS11876.) Indeed, in the interview Jackie does not even specifically identify the episode and only described it generally as an episode in a "later season" involving a gang

---

[2] Exhibit 3 consists of excerpted pages from the redacted transcript of the May 12, 2016 deposition of Sabrina Rubin Erdely, which was filed in full as Exhibit 5 to Pl. SUF (Dkt. 99-10), and is subject to a sealing order by this Court (Dkt. 130).

rape at a fraternity.³ Because it is undisputed that Erdely never saw the referenced episode—and had no logical reason to seek it out—the actual content of the episode is irrelevant to her subjective state of mind at the time of publication and cannot be used to show actual malice. *See Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) (actual malice focuses solely on the defendant's state of mind "at the time of publication"); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996) ("[B]ecause the actual malice inquiry is subjective—that is, concerned with the defendant's state of mind when he acted—the inference of actual malice must necessarily be drawn solely upon the basis of the information that was available to *and considered by* the defendant prior to publication.") (emphasis added) (citing *Bose Corp.*, 466 U.S. at 498). On this basis alone, the *Law & Order* episode should be excluded as irrelevant. Fed. R. Evid. 401, 402.

*Finally*, Plaintiff has not established any material similarity between the referenced episode and Jackie's assault. *Law & Order: SVU* is a long-running police procedural with over 350 episodes to date, the plots of which focus almost exclusively on rape and sexual assault cases. Plaintiff's speculative theory that Jackie copied her assault from this particular episode appears to turn on that fact that a fraternity man says "grab her leg" during the assault. Pl. Counter-Statement (Dkt. 116) ¶ 65. However, within this genre, depicting a gang-rape scene where one of the assailants says "grab her leg" while trying to hold the victim down is so common as to be ubiquitous, and it in no way demonstrates that Jackie was lying about her own assault. Moreover, the line "grab her leg," is materially different from Jackie's account, where

---

³ (Ex. 1 at RS118375-76.) At her deposition, Erdely told Plaintiff's counsel that Jackie's general description "d[id]n't mean anything to me" in terms of identifying the episode, since she had never seen the show before. (Ex. 3 [Erdely Dep.] 146:16-19.)

4

she describes a man saying "grab *its* motherfucking leg"—and told Erdely that the use of "its" suggested to her that the men saw her as "less than human."[4] (Ex. 4 at RS004154.[5])

Compounding the myriad problems that render inadmissible the *Law & Order* episode, or any testimony or argument concerning it, is the reality that the Court would be opening the door to a mini-trial concerning the content of countless episodes of *Law & Order*. One could demonstrate that the information contained in the specific episode Eramo has chosen was hardly unique, which would require introducing and playing episode after episode of the show. Given the lack of foundation for Plaintiff's speculation that Jackie made up her assault based on *Law & Order*, subjecting the jury to this sideshow would unnecessarily prolong the trial and make it impossible to conclude in two weeks.

Because it is undisputed that Erdely did not see the episode prior to publication (or ever) and that Jackie told Erdely she watched the referenced episode a full year *after* reporting her assault to the UVA administration, the episode has no conceivable relevance to any issue of consequence in determining this action and is therefore inadmissible. Fed. R. Evid. 401, 402. Furthermore, any minimal probative value is far outweighed by the clear danger of prejudice and the likelihood of confusing and misleading the jury. Fed. R. Evid. 403. Accordingly, Plaintiff should be precluded from introducing, referencing, or examining witnesses at trial with respect to the *Law & Order: SVU* episode titled "Girl Dishonored."

---

[4] Rachel Soltis also confirmed to Erdely that Jackie had described the men referring to her as an "it." (*See* Ex. 4 at RS004422 (telling Erdely that one of Jackie's assailants had said "pin *its* legs up") (emphasis added).)

[5] Exhibit 4 consists of excerpted pages from the redacted version of the cited document, which was filed as Exhibit 15 to the Declaration of Sabrina Rubin Erdely in Support of Defendants' Motion for Summary Judgment (Dkts. 104-4 and 104-5), and is subject to a sealing order by this Court (Dkt. 130).

5

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that Plaintiff be precluded from introducing, referencing, or examining witnesses at trial with respect to the *Law & Order: Special Victims Unit* episode titled "Girl Dishonored."

Dated: New York, New York
September 16, 2016

By:   /s/ Elizabeth A. McNamara
Elizabeth A. McNamara (*pro hac vice*)
Samuel M. Bayard (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020-1104
Telephone:       (212) 489-8230
Fax:       (212) 489-8340
Email:    lizmcnamara@dwt.com
              samuelbayard@dwt.com

Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C.  20006-3401
Telephone:  (202) 973-4248
Fax:           (202) 973-4448
E-mail:       alisonschary@dwt.com

W. David Paxton (VSB No. 19798)
J. Scott Sexton (VSB No. 29284)
Michael J. Finney (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, Virginia  24022-0013
Telephone:  (540) 983-9300
Fax:           (540) 983-9400
E-mail:       paxton@gentrylocke.com
E-mail:       sexton@gentrylocke.com
E-mail:       finney@gentrylocke.com

*Attorneys for Defendants Rolling Stone LLC, Sabrina Rubin Erdely, and Wenner Media LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, the foregoing was served by CM/ECF on counsel of record for all parties to this action. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Elizabeth A. McNamara
Elizabeth A. McNamara