**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| NICOLE P. ERAMO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROLLING STONE, LLC, | ) | Case No. 3:15-cv-00023-GEC |
| SABRINA RUBIN ERDELY, and | ) | |
| WENNER MEDIA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF DEFENDANTS'
EMERGENCY MOTION FOR INJUNCTIVE RELIEF AND SANCTIONS**

Defendants Rolling Stone, LLC, Wenner Media, LLC (together, "Rolling Stone"), and Sabrina Rubin Erdely ("Erdely"), by counsel, respectfully move this Court to enter an emergency injunction preventing Plaintiff from further violations of the Amended Stipulated Protective Order ("Protective Order") (Dkt. No. 36), and further move this Court to sanction Plaintiff for her violation of the Court's Protective Order by leaking confidential deposition videos, which have caused and will cause personal harm, and improperly influence the jury pool. As explained further below, a severe sanction is warranted.

**SUMMARY**

Defendants have learned that Plaintiff intentionally leaked copies of video depositions – testimony marked as "Confidential" under this Court's Protective Order – to ABC for use in an upcoming "20/20" television broadcast about the case. The broadcast is set to air this coming Friday night, just before trial, and will feature an interview with Plaintiff (and possibly her attorneys). This past Friday night, ABC played a trailer promoting the broadcast. In part, it

1

shows a video clip of Erdely crying at her deposition, while the voice-over states: "now, for the first time, those at the center of the scandal, speak."

Plaintiff never asked for permission – from Defendants or the Court – to provide ABC with video deposition testimony in this case, and the Court's Protective Order plainly prohibited her from doing so without such permission. (*See* Dkt. No. 36 at ¶ 7.1). Plaintiff attempts to justify her disclosure by claiming that Defendants' de-designation of deposition ***transcripts*** – for the express purpose of summary judgment filings – permits unfettered media disclosure of deposition ***videos***. This calculated excuse is unsupported the Court's orders, the parties' communications regarding confidentiality de-designation prior to summary judgment filings, or any notion of fair play.

There is a vast difference between the public release of deposition transcripts and video testimony. The latter – due to the nature of the video medium – engenders a much greater risk of abuse, harm, and embarrassment. This is already evident here, as ABC chose for its promotional trailer a public display of Erdely at her most vulnerable moment. What is more, on the eve of trial, truncated and spliced portions of confidential video testimony from Erdely and possibly other trial witnesses is scheduled to air nationally on 20/20, causing further invasions of personal privacy.[1] And undoubtedly, many citizens in the Charlottesville Division will watch this sensationalized television broadcast about the University located in their backyard, or will access the program online. In the aftermath, seating an impartial jury in Charlottesville will be difficult, if not impossible.

Plaintiff's release of confidential video testimony for her personal benefit is inexcusable. The Court should not condone such stark gamesmanship, which threatens to undermine the

---

[1] Defendants have contacted ABC and demanded that they immediately remove the Erdely clip, and not air any further confidential video testimony.

23075/1/7742345v4

integrity and fairness of the trial, as well as subject witnesses to unwarranted embarrassment and personal harm.

Defendants ask the Court to enjoin Plaintiff from further dissemination of Protected Material, and to sanction Plaintiff for her blatant disregard for the Court's orders and fair play. The Court has broad powers to fashion appropriate relief and sanctions for such egregious behavior, ranging from dismissal of the action to the following forms of relief, any and all of which are warranted:

1. The Court should enjoin Plaintiff from further violations of the Protective Order, pursuant to Paragraph 10 of the Order;

2. The Court should order Plaintiff to inform the Court and Defendants what video testimony she has disclosed to ABC or any other third parties, and what efforts she or her counsel has taken to promote the 20/20 program;

3. The Court should hold Plaintiff in contempt;

4. The Court should prohibit Plaintiff from using any deposition testimony at trial (written transcripts or videos);

5. If the 20/20 broadcast airs as scheduled, the Court should transfer venue and postpone the trial date to allow the memory of the prejudicial broadcast to fade, and require the Plaintiff to reimburse the Court and Defendants for all costs incurred for rescheduling the trial that cannot be mitigated; and

6. The Court should order Plaintiff to pay Defendants the costs and fees they incurred due to Plaintiff's willful and improper conduct.

## RELEVANT BACKGROUND

### A. The Purpose of Video Deposition Testimony

Rule 30(b)(3) allows for video depositions in order to help present deposition testimony to the jury if trial witnesses are unavailable, or for purposes of impeachment. Thus, the rule recognizes "the fact that video tapes are a means of presenting deposition testimony to juries that is superior to readings from cold, printed records." *Lopez v. CSX Transp., Inc.,* No. 3:14-257,

3

2015 U.S. Dist. LEXIS 77689, at *15 (W.D. Pa. June 16, 2015) (quoting *Paisley Park Enters., Inc. v. Uptown Productions*, 54 F. Supp. 2d 347, 349 (S.D.N.Y. 1999)).

On the other hand, "the rule permitting videotaped depositions 'was not intended to be a vehicle for generating content for the broadcast and other media.'" *Lopez*, 2015 U.S. Dist. LEXIS 77689, at *15 (quoting *Paisley Park*, 54 F. Supp. 2d at 349). *See also Stern v. Cosby*, 529 F. Supp. 2d 417, 422-23 (S.D.N.Y. 2007) (expressing concern "that release of the video and transcript would create additional impediments to the fair and efficient administration of justice, without serving any legitimate purpose, and stating that "[v]ideotaped depositions are permitted to facilitate the presentation of evidence to juries; they are not intended to provide a vehicle for generating content for broadcast and other media").

## B. The Court's Orders

### 1. *The Protective Order.*

This Court entered the Protective Order nearly a year ago. (*See* Dkt. No. 36). It protects "[a]ny disclosure or Discovery Material that is designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" Information or items." (*Id.* at § 2.9). "CONFIDENTIAL" information includes "information of a personal or intimate nature regarding any individual." (*Id.* at § 2.4(g)).

Several provisions of the Protective Order make clear distinctions between written and video deposition testimony. For example, "Discovery Material" includes information across mediums, "including, among other things, testimony, transcripts, or tangible things." (*Id.* at § 2.3). And, any Discovery Material can be designated as "Protected Material." (*Id.* at § 2.9).

More specifically, in explaining the confidentiality designation mechanism, section 5.2(b) references "testimony transcripts" separately from "video recordings." (*Id.* at § 5.2(b)).

4

Likewise, section 5.2(c) also marks a distinction between "documentary" information and information produced in some other form. (*Id.* at § 5.2(c)).

Section 7.1 is the teeth of the Protective Order:

> A Receiving Party ***may only use Protected Material that is disclosed or produced by a Party or Non-party in connection with this case for prosecuting, defending, or attempting to settle this litigation.*** Such Protected Material may be disclosed only to the Court and to the categories of persons described in this Order provided with the Protected Material . . . .

(*Id.* at § 7.1 (emphasis added)).

Section 10 then provides a remedy structure for the unauthorized disclosure of Protected Material, and "[i]n the event any Party or Non-Party violates or threatens to violate any term of this Order, any Party may seek immediate injunctive relief against any such Party or Non-Party violating or threatening to violate any term of this Order." (*Id.* at § 10).

### 2. The Court's standing order on recording court proceedings.

On July 12, 2013, the Court issued a standing order entitled "Re: Possession and Use of Electronic Devices in Courthouses and Court Rooms" in the Western District. (**Exhibit 1** (Standing Order No. 2013-8)).[2] The order provides that "[n]o photography, audio or video recording, or broadcasting is permitting inside a courthouse." (*Id.* at 2). Further, "attorneys and their staff are not permitted to record proceedings while court is in session" and "[t]he taking of photographs, making audio recordings, and recording video of judicial proceedings and the broadcast thereof are prohibited." (*Id.* at 3). Accordingly, while trial and other Court proceedings are generally open to the media and the public, there is no right to record any courtroom proceedings for subsequent commercial or personal use. In fact, such practices are

---

[2] Standing Order No. 2013-8 is also available at http://www.vawd.uscourts.gov/media/9620/2013-8.pdf.

23075/1/7742345v4

strictly prohibited, and the public "record" of courtroom proceedings is in the form of a written transcript.

### C. The De-Designation of Written Transcripts for Summary Judgment Filings

Throughout discovery, Defendants properly designated portions of deposition testimony as "Confidential" pursuant to the Protective Order. For example, defense counsel wrote Plaintiff's counsel on June 16, 2016, and designated specific portions of Erdely's testimony as confidential, providing a list of page designations. (**Exhibit 2** (6/16/16 Letter from S. Bayard)).

#### 1. *The parties' discussions regarding confidentiality de-designation concerned documents and deposition transcripts.*

As summary judgment deadlines drew near, the parties sought to reach an agreement regarding the use of deposition transcripts and other documents that had been designated as Protected Material under the Protective Order. Defense counsel informed Plaintiff's counsel that it agreed to "review any Confidential documents and/or Confidential testimony that you plan to use in your summary judgment motion (or in opposition to Defendants' motion) and let you know what information we believe needs to remain Confidential and filed under seal in connection with the motions." (**Exhibit 3** (6/1/16 email from E. McNamara)). Significantly, defense counsel added, "[a]s we discussed, this 'de-designation' process is solely for purposes of filing the materials in connection with a request for judicial relief and not for public dissemination otherwise." (*Id.*)

In response, Plaintiff's counsel claimed that "the confidential designation needs to be removed before we can file for summary judgment." (**Exhibit 4** (6/6/16 email from L. Locke)). And, "DWT would need to reproduce those *documents* without a confidentiality designation in order to allows us to file the materials in a public manner." (*Id.* (emphasis added).) She further

contended that "[o]nce those *documents* are reproduced or de-designated, then there is no limitation on how they may be used in the future." (*Id.* (emphasis added)).

Accordingly, defense counsel responded:

> We understand that, once you have identified what *documents/testimony* you need to submit as relevant to issues raised on your motion for summary judgment motion, we will need to provide you with new sets of those *documents/testimony for purposes of filing*. However, the *documents/testimony* are being de-designated because they have been identified as relevant evidence to be submitted in support of summary judgment. Material properly designated as Confidential under the Protective Order should remain so until the evidence is used to seek a judicial ruling. *We do not agree that you should be free to disseminate such material or discuss it with third parties (like the press) until that filing has been made.*

(**Exhibit 5** (6/6/16 email from E. McNamara) (emphasis added)).

Plaintiff's counsel then stated that "[m]y question, however, remains about deposition testimony . . . our practice will be to file the entirety of the deposition transcripts (so as to make the entirety of the deposition part of the record on appeal). (**Ex. 5** (6/7/16 email response from L. Locke)).[3] Thus, she advised defense counsel: "[w]e can identify those depositions that we intend to us [sic], but I can tell you now that we are likely to use virtually all of them." (*Id.*)

### 2. *Defendants only de-designated deposition* <u>*transcripts*</u> *for limited use in summary judgment filings.*

To resolve the designation issue, defense counsel provided Plaintiff's counsel with redacted PDF *transcripts* for each deposition Plaintiff sought to use for her summary judgment filing. To reiterate the limited nature of this action, defense counsel again advised Plaintiff's counsel: "[a]s we agreed, *any documents that we provide you are being de-designated solely for*

---

[3] Defendants now believe that Plaintiff's desire to "file the entirety of the deposition transcripts" at summary judgment was for the ulterior purpose of later releasing said videos to the media for her benefit, under the claim that the filed transcripts also de-designated the full deposition videos.

23075/1/7742345v4

*purposes of public filing. Unless and until you file them in connection with your motion papers, they remain subject to the protective order and cannot be disseminated publicly.*" (**Exhibit 6** (7/11/16 email from A. Schary) (emphasis added)). In response, Plaintiff's counsel noted that this was "at least the fourth time" Defendants had specifically warned Plaintiff that providing any documents to third parties would violate the Protective Order, unless and until the documents were filed publicly in the record. (*Id.*)

Significantly, no video deposition testimony was de-designated; nor was any video testimony filed with the Court in the parties' summary judgment filings.

### D. Plaintiff intentionally provided confidential video testimony to ABC.

On the evening of October 7, 2016, defense counsel learned that Plaintiff had provided video deposition testimony to ABC for use in a 20/20 episode set to air Friday, October 14 --- three days before the start of trial. Plaintiff will be featured in the broadcast, and Defendants expect that Plaintiff's counsel will as well. ABC has already begun running teaser trailers for the program. The initial teaser highlights a video clip of Erdely crying during her deposition,[4] while voice-over states: "now, for the first time, those at the center of the scandal, speak."[5]

When defense counsel contacted Plaintiff's counsel about the release of the video testimony featured on the 20/20 trailer, Plaintiff's counsel claimed that disclosure of the videos was justified because the redacted transcripts of the deposition testimony were in the "public domain" through the summary judgment filings. But again, no video deposition testimony was in the public domain prior to Plaintiff's deliberate and unauthorized release of these confidential materials.

---

[4] It also depicts what footage of Plaintiff, who appears to have sat for an interview with ABC for the 20/20 program.

[5] The Court may review the 20/20 trailer at: https://twitter.com/ABC2020/status/784592916010283008. A copy of this trailer is also being submitted as **Exhibit 7**, and will be provided to the Court via email.

23075/1/7742345v4

**A. Plaintiff has violated the Protective Order, causing Defendants severe harm, and jeopardizing the integrity of the trial.**

Section 10 of the Protective Order authorizes Defendants to "seek immediate injunctive relief against any such Party or Non-Party violating or threatening to violate any term of this Order." (Dkt. No. 36 at § 10). Further, this Court has substantial authority – under Rule 37(b) and its inherent powers – to punish Plaintiff for misconduct. Here, there can be no doubt that Plaintiff blatantly violated the Protective Order by exposing confidential video testimony to ABC for widespread dissemination on national television and online. Therefore, an injunction and severe sanctions are warranted.

**1. Video deposition testimony has never been de-designated; the video testimony remains confidential.**

Rolling Stone and Erdely never de-designated the deposition videos. Only redacted PDF *transcripts* were de-designated and provided to Plaintiff for purposes of summary judgment filings, which is clear from the parties' communications prior to summary judgment filings. At no time did Plaintiff ask Defendants if they agreed to the public release of the video recordings of deposition testimony. In providing confidential deposition videos to the media, Plaintiff's counsel made a calculated decision to defy the Court's Protective Order, disregard the clear limited scope of the de-designations, and ignore their prior conversations with defense counsel concerning the breadth of the de-designations.

**2. Written transcripts filed with the Court do not excuse Plaintiff's misconduct and breach of the Protective Order.**

Deposition transcripts and videos are fundamentally distinct. If transcripts are filed with the Court, that does not make any corresponding video testimony a public record. *See, e.g.*, *United States v. McDougal,* 103 F.3d 651, 656, 659 (8th Cir. 1996) (affirming the trial court's

decision to deny public access to video deposition while allowing access to the written transcript; "a deposition videotape is not a judicial record to which the common right of public access attaches"); *Apple Ipod Itunes Antitrust Litig.,* 75 F. Supp. 3d 1271, 1275 (N.D. Cal. 2014) (video deposition not filed with the court was not a judicial record). Thus, that the public may be able to access a written deposition transcript does not necessarily justify public access to corresponding video testimony. *See Flake v. Arpaio,* No. CV-15-01132-PHX-NVW, 2016 U.S. Dist. LEXIS 101037, at *13 (D. Ariz. Aug. 2, 2016) (citing cases and observing that courts often release only the transcript of a deposition, and not the accompanying video); *Felling v. Knight,* No. IP 01-0571-C-T/K, 2001 U.S. Dist. LEXIS 22827, at *9-10 (S.D. Ind. Dec. 21, 2001) ("sealing videotapes of depositions has been approved of in several high profile cases where the written depositions have been released to the public").

There are sound reasons for this distinction. As a general matter, "[v]ideotapes are subject to a higher degree of potential abuse than transcripts." *Felling,* 2001 U.S. Dist. LEXIS 22827, at *9. The risks of sensationalism are "more acute with respect to video footage, since videos can be cut and spliced and used as 'sound-bites' on the evening news or sports shows, or even worse, on 'celebrity gossip' talk shows." *Flake,* 2016 U.S. Dist. LEXIS 101037, at *13 (quotation omitted).

Further, courts recognize the unnecessary embarrassment and unfairness to a party or witness that can ensue if their video testimony is publicly released. *See, e.g.*, *Lopez*, 2015 U.S. Dist. LEXIS 77689, at *17-20 (issuing a protective order over video depositions, and noting concerns of potential embarrassment to the defendant); *Stern v. Cosby,* 529 F. Supp. 2d 417, 423 (S.D.N.Y. 2007) (protecting video and transcript from disclosure, citing concerns of annoyance,

23075/1/7742345v4

embarrassment, and oppression); *Felling,* 2001 U.S. Dist. LEXIS 22827, at *9-10 (sealing videotapes of deposition testimony to avoid embarrassment and frustration).

Courts have likewise found that there are strong public policy reasons to not release deposition videos, particularly when courtroom proceedings themselves cannot be recorded:

> if releases of video depositions routinely occurred, witnesses might be reticent to submit voluntarily to video depositions in the future, knowing they might one day be publicly broadcast. If cameras in courtrooms were not currently prohibited, the argument might have less weight. However, given the lack of authority approving such a release, the concern is well-taken that under the current rules, *deponents have no expectation or notice that the videos will be disseminated beyond the presentation during trial.*

*Apple Ipod Itunes Antitrust Litig.,* 75 F. Supp. 3d at 1276 (emphasis added).

Finally, there "is a greater potential for harm where trial is imminent, or where there is reason to believe that media scrutiny will be ongoing rather than dissipate or lessen with time." *Low v. Trump Univ., LLC*, 3:10cv0940, 3:13cv02519, 2016 U.S. Dist. LEXIS 101329, at *22 (S.D. Cal. Aug. 2, 2016); *see also generally id.*, at *16, *28 (denying media intervenors' motion to obtain video depositions, even when their transcripts were publicly available, and concluding "that releasing the deposition videos would impair judicial efficiency by increasing the likelihood that prospective jurors would be exposed to information about the case, as well as to evidence that could be introduced at trial to impeach Defendant's testimony").

Here, there can be no dispute that the video recordings of the depositions were not filed with the Court on summary judgment. And the Protective Order distinguishes between written deposition transcripts and deposition videos. Accordingly, Plaintiff cannot legitimately claim

23075/1/7742345v4

that a written transcript filed for purposes of summary judgment simultaneously authorizes public dissemination of the video testimony.[6]

Further, the Court's standing order confirms that *this* Court views video recordings much differently from written transcripts. The standing order prohibits "[t]he taking of photographs, making audio recordings, and recording video of judicial proceedings" within the courthouse. (**Ex. 1** at 3). But of course, the members of the media or public are entitled to purchase a written transcripts of court proceedings.

Ultimately, Plaintiff has no valid excuse for her actions, because a written transcript simply does not equate to video testimony. Her disclosures were intentional and calculated, without regard for the rights of others in this case, and the harm and embarrassment that she would cause. Even before the 20/20 broadcast airs, there can be no dispute that – by her deliberate and wrongful leaks – Plaintiff has caused protected and sensitive footage of Erdely to reach the national stage. Defendants have already been prejudiced, and are rightly concerned about the great prejudice likely to ensue after the 20/20 show airs, particularly when ABC has marketed the leaked videos as Defendants "speaking" about their side of the case.[7]

To compound all of these problems, after leaking the videos to 20/20, Plaintiff (and perhaps her counsel) are also appearing on the same tainted program. The Court should not tolerate such blatant violations of its Protective Order, which are designed to enure to the benefit of Plaintiff to the detriment of Defendants, and which exhibit an utter disregard for fairness at the upcoming trial.

---

[6] At no time did Plaintiff file a challenge to Defendants' designation of the video testimony under Section 6 of the Protective Order; nor did she give any prior notice to Defendants of her views regarding the ability to release the video recordings. Equally important, Plaintiff made no effort to seek the Court's permission to release the video recordings under Section 6.3 of the Protective Order. Instead, they elected to shoot first and ask for forgiveness later.

[7] Defendants attempted to persuade ABC to delay broadcast of the program until after the conclusion of the trial, but ABC has made clear that the show will air this coming Friday.

23075/1/7742345v4

**B. The Court should enjoin Plaintiff from any further violations of the Protective Order.**

Although Plaintiff's deliberate violations of the Protective Order to-date cannot be unwound, pursuant to Section 10, the Court should enjoin Plaintiff (and her counsel) from any further violations.

**C. The Court should sanction Plaintiff for her violations of the Protective Order and abuse of the discovery process.**

Numerous court have sanctioned litigants for violations of protective orders under Rule 37(b). *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 488-90 (5th Cir. 2012) (affirming Rule 37(b) sanctions for the violation of Rule 26(c) protective order); *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 784 (9th Cir. 1983) (affirming award of attorney's fees under Rule 37(b) for a violation of a protective order); *Springs v. Ally Fin., Inc.,* No. 3:10-cv-00311-MOC-DCK, 2015 U.S. Dist. LEXIS 59317, at *2 (W.D.N.C. May 6, 2015) (issuing show cause order as to why Plaintiff should not be sanctioned under Rule 37(b)(2) for her use of video obtained in discovery, in clear violation of the court's protective order); *SAS Inst. Inc., v. World Programming Ltd.,* No. 5:1-CV-35-FL 2014 U.S. Dist. LEXIS 61455 (E.D.N.C. May 1, 2014) (sanctioning the plaintiff under Rule 37(b) for a violation of the parties' protective order); *see also Schiller v. City of New York,* No. 04 Civ. 7922, 04 Civ. 7921, (KMK) (JCF), 2007 U.S. Dist. LEXIS 40253, *10 (S.D.N.Y. June 5, 2007) (citing cases, explaining that "[d]iscovery orders that can be enforced through Rule 37(b) include protective orders . . .").

Further, "[e]very court has supervisory power over its own records and files," and court materials should not "become a vehicle for improper purposes." *Nixon v. Warner Communs*., 435 U.S. 589, 598 (1978). Accordingly, "courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role." *Paisley Park*, 54 F. Supp. 2d at

13

349 (ordering that a "videotape may be used solely for purposes of this litigation" when it was "readily apparent that the defendants intend to use any videotape for purposes entirely unrelated to the litigation as well as for the lawsuit itself").

Thus, the Court has the inherent power to "impose silence, respect, and decorum in [its] presence, and submission to [its] lawful mandates." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). This includes "the inherent power to maintain the integrity of protective orders by imposing sanctions on those who violate them." *Schiller,* 2007 U.S. Dist. LEXIS 40253 at *10.

"To allow a party to use [pretrial discovery] for purposes unrelated to the litigation and in a manner which harms the giver of that information is abusive, and courts have a significant interest in preventing such usage." *World of Faith World Outreach Center Church, Inc. v. Morales*, 143 F.R.D. 109, 113 (W.D. Tex. 1992); *see also Forrest v. Citi Residential Lending, Inc.*, 73 So. 3d 269, 277-78 (Ct. App. Fla. 2011) ("Significantly, the Appellants used the discovery process and the subpoena power of the court to obtain the video depositions at issue here. And the individual Appellees have demonstrated that the posting of those depositions on the Internet infringes upon their privacy rights and has already subjected them to harassment").

The Court should issue severe sanctions here. Plaintiff has blatantly violated the Court's Protective Order by disclosing video deposition testimony – designated as confidential – to ABC for widespread public dissemination. Based on the promotional video that first aired last Friday night, it seems very likely that excerpts of the video testimony given by Defendants will be featured on a 20/20 broadcast that is set to air this coming Friday evening – three days before trial is scheduled to begin. Although Defendants have asked ABC to refrain from using the video recordings received from Plaintiff, there is every reason to believe that ABC will continue

14

to advertise and promote this upcoming 20/20 show by circulating the trailer that portrays Erdely crying at her deposition, and possibly other video clips.

These actions are highly prejudicial to Defendants, and personally harmful and harassing to Erdely and the other deponents whose video testimony was leaked. Defendants' ability to receive a fair trial has already been compromised, and the prejudice engendered by Plaintiff and her lawyers will likely reach intolerable levels after the 20/20 program – containing confidential video testimony, much of which is unlikely to be admitted at trial – is broadcast nationwide, reverberating throughout the Charlottesville area and poisoning the jury pool. Further, Plaintiff is plainly attempting to benefit from her improper disclosures.

There is no valid excuse for Plaintiff's actions, which serve only to threaten the integrity and fairness of the trial, and impose real human costs on Defendants and others who may have been affected. The Court should not condone Plaintiff's flagrant misconduct. In addition to holding Plaintiff in contempt for violating the Protective Order, strong and significant sanctions are necessary and appropriate. The Court has a full range of sanctions at its disposal, from dismissing the action to postponing and transferring the venue of the trial, as well as the other specific actions suggested above.

But, what is certainly *not* appropriate is to give Plaintiff a "pass" for the calculated decision to release these video recordings, which has and will taint the jury pool in this case. Plaintiff's decision to "shoot first" and "beg for forgiveness" later should have severe consequences.[8] Otherwise, parties will freely disregard the Court's orders in other cases, generating a wave of sanction motions. Only a clear message from the Court requiring

---

[8] Plaintiff exhibits a troubling pattern of this type of behavior. Last Wednesday, Defendants filed a motion to exclude undisclosed expert testimony because Plaintiff listed her treating physician as a trial witness, despite not disclosing him as a non-retained expert under Rule 26(a)(2)(C). (*See* Dkt. Nos. 225 and 226.) And earlier today, Defendants filed a motion for a protective order, because Plaintiff improperly noticed a second deposition for Erdely (on October 16 no less). (*See* Dkt. Nos. 241 and 242.)

23075/1/7742345v4

compliance with its orders will ensure that the Western District continues to be a jurisdiction where sanction motions are rare, and counsel are expected to work cooperatively on matters.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Emergency Motion for Injunctive Relief and Sanctions, grant them the relief specified, and enter such additional relief as the Court deems just and proper.


ROLLING STONE, LLC
SABRINA RUBIN ERDELY
WENNER MEDIA, LLC

By: /s/ W. David Paxton
                      Counsel


W. David Paxton (VSB No. 19798)
J. Scott Sexton (VSB No. 29284)
Michael J. Finney (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9300
Fax: (540) 983-9400
E-mail:  paxton@gentrylocke.com
E-mail : sexton@gentrylocke.com
E-mail:  finney@gentrylocke.com

Elizabeth A. McNamara (*pro hac vice*)
Samuel M. Bayard (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
E-mail: lizmcnamara@dwt.com
E-mail: samuelbayard@dwt.com

23075/1/7742345v4

Alison B. Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C. 20006-3401
Telephone: (202) 973-4248
Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC, Sabrina Rubin Erdely, and Wenner Media LLC*

23075/1/7742345v4

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2016, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which provided electronic service to all counsel of record.

/s/ W. David Paxton

23075/1/7742345v4