IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO, | ) |
| | ) |
| Plaintiff | ) Case No. 3:15-cv-00023-GEC |
| | ) |
| v. | ) |
| | ) |
| ROLLING STONE LLC, | ) |
| SABRINA RUBIN ERDELY, and | ) |
| WENNER MEDIA LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S EXPEDITED OPPOSITION TO
DEFENDANTS' EMERGENCY MOTION FOR
INJUNCTIVE RELIEF AND SANCTIONS**

Neither Ms. Eramo nor her counsel violated the Court's Amended Stipulated Protective Order.[1]  Period.  There is no "Emergency" and neither injunctive relief nor sanctions are appropriate.  Because Defendants seek to have the Court hear their Motion tomorrow morning— less than eighteen hours after they filed it—Ms. Eramo submits this abbreviated, expedited Opposition to Defendants' Emergency Motion for Injunctive Relief and Sanctions.  As explained below, Defendants' Motion rests entirely on speculation, a misconstruction of the relevant law, and an erroneous and tortured reading of the Court's Protective Order.

**ARGUMENT**

**I.  The Court's Protective Order Protects Designated Deposition *Testimony* — It Does Not Distinguish Between Transcripts Or Videotape Of That Testimony.**

As an initial matter, the Court's Protective Order in this case is clear, and only certain materials are protected from disclosure under it.  Under the terms of the Protective Order, any

---
[1] *See* Am. Stip. Prot. Order [Dkt. 36] (Nov. 16, 2015) ("Protective Order").

party may designate Discovery Material as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," and such Discovery Materials thereby become "Protected Materials" under the terms of the Protective Order (unless or until de-designated by the Designating Party or until another party successfully challenges that designation).[2] As is relevant here, the Protective Order is likewise clear regarding the designation of deposition testimony. Paragraph 5.2 of the Protective Order provides:

> **5.2 Manner and Timing of Designations.** The designation of Protected Material hall be performed in the following manner:
>
> **(b) For testimony given in deposition or in other pre-trial proceedings, *testimony transcripts, testimony exhibits and video recordings*** shall be treated as CONFIDENTIAL for thirty (30) days after receipt of the final transcript to allow time for designation of Protected Material. The Designating Party shall designate and specify any ***portions of the testimony*** that qualify as "CONFIDENTIAL" in writing to all parties. Only those ***portions of the testimony*** that are appropriately designated for protection within the 30 days shall be covered by the provisions of this Order.[3]

That paragraph provides that deposition *testimony* shall be designated as confidential (if appropriate) under the Order. It ***does not provide*** that portions of transcripts of depositions or portions of videotapes of depositions—or one but not the other—can be designated as confidential. It plainly treats "testimony transcripts … and video recordings" in precisely the same manner. And for good reason: it is the content of testimony that contains the "Confidential Information" that the Order Protects: the "(a) non-public information that reveals trade secrets or that is proprietary or commercially sensitive; (b) medical or psychiatric information concerning any individual; (c) personal identity information; (d) personal income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; (e) personnel or employment records; (f) unpublished newsgathering materials; and (g) information of a personal or nature

---

[2] Protective Order at ¶¶ 2.9, 5.

[3] *Id.* ¶ 5.2 (bold, non-italic emphasis in original). Emphases added unless otherwise noted.

regarding any individual."[4]  That Confidential Information does not depend on the form in which it was recorded.

Moreover, and importantly, the Protective Order is not just a form order that one could conceivably argue may not fit the circumstances of this case: it was negotiated by the parties to this case for this case.  Had Defendants wished to prohibit videotapes of depositions from disclosure, they could have sought to include such a provision in the Order, as is done in countless other cases.  *See, e.g.*, *Banga v. Kohl's Dep't Stores, Inc.*, No. 13-cv-275, 2013 WL 6734116, at *1 (N.D. Cal. Dec. 20, 2013) ("The [protective] order states that plaintiff's "deposition transcript and video recording shall be used only for purposes of this litigation," and "shall only be accessed by the parties to the action and their attorneys." (quoting Deposition Protective Order in case).  But Defendants did not request or seek such a provision.

In addition, Paragraph 3 of the Protective Order ("Scope") further provides that "the protections conferred by this Stipulation and Order do ***not*** cover the following information: (a) except for education records covered by FERPA, any information that ... becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, ***including becoming part of the public record through trial or otherwise.***"[5]  Accordingly, by its own terms, the Protective Order does not apply to prevent disclosure of any materials or testimony that becomes part of the public record through the litigation of this case—including through public summary judgment filings.

Thus, in sum, contrary to Defendants' contentions—which they base on a cherry-picked mish-mash of disparate parts of the Protective Order—the Protective Order does ***not*** treat deposition transcripts and videotapes differently, and does not prevent or restrict disclosure of

---

[4] *Id.* ¶ 2.4.

[5] *Id.* ¶ 3(a).

materials or testimony that become part of the public record in this case. Accordingly, Defendants' assertions that Ms. Eramo's counsel could have somehow violated the Order by disclosing videotape of testimony that was not designated as confidential or otherwise protected under the Protective Order—indeed, testimony that was already part of the public record—are baseless.

### II. Plaintiff's Counsel Has Only Shared Materials Not Designated As Confidential Under The Protective Order And That Were *Already Part Of The Public Record* In This Case.

As the Court is aware—having ruled on (and denied) numerous motions to seal—the parties in this case have filed voluminous materials in support of their various motions, particularly at the summary judgment stage.

At summary judgment, before the parties filed their respective motions, exhibits, and deposition testimony, the parties reviewed countless confidentiality designations under the Protective Order in an effort to minimize filings under seal and serve the well-established public interest in access to the courts and litigation materials. As part of that process, as is relevant here, the parties—including Defendants—specifically ***removed*** Confidential designations from significant portions of their witnesses' deposition testimony precisely so that testimony could be filed publicly.[6] Moreover, Defendants repeatedly made clear that the de-designation of that testimony became operative ***upon their filing of that testimony publicly***.[7]

Upon the public filing of the parties' summary judgment briefs and the exhibits and testimony cited (by both parties) in support thereof, Plaintiff's counsel received inquiries from third-party media companies regarding access to those publicly filed materials, including

---

[6] *See* Decl. of Elizabeth M. Locke in Supp of Pl.'s Opp'n to Defs.' Emergency Mot. for Injunctive Relief & Sanctions ("Locke Decl.") ¶ 3 (attached as **Exhibit A**); Decl. of Thomas A. Clare in Supp of Pl.'s Opp'n to Defs.' Emergency Mot. for Injunctive Relief & Sanctions ("Clare Decl.") ¶ 3 (attached **Exhibit B**).

[7] *See, e.g.*, June 7, 2016 Email from E. McNamara to E. Locke (attached as **Exhibit A** to the Locke Decl. filed contemporaneously herewith).

requests for deposition testimony that had been publicly filed in support of the parties' summary judgment motions.[8] Before responding to those requests, Plaintiff's counsel consulted and reviewed in detail the Court's Protective Order, including the terms discussed above.

In light of the clear terms of the Protective Order, Plaintiff's counsel provided materials and testimony that either was never designated as confidential under the Protective Order or with regard to which such designations had been removed by the Designating Party—and testimony that was ***already part of the public record*** through the parties public summary judgment filings—in response to these requests.[9] Before any materials were provided to the requesting third-party media organization, all information that was designated as confidential under or otherwise protected by the Court's Protective Order was redacted or otherwise removed, and in the case of videotaped deposition testimony, portions of the videotaped deposition testimony that were designated as confidential or otherwise protected under the Protective Order were edited out and removed from the videotape (at significant expense). Such actions fully complied with the Protective Order.[10]

### III. Defendants' Remaining Arguments Lack Merit.

In light of the clear terms of the Protective Order, and the undisputed ***facts*** about Plaintiff's counsel's conduct—as opposed to Defendants' rank ***speculation*** and fear-mongering—it is clear that Plaintiff's counsel has not violated the Protective Order in any manner. And Defendants' fallback arguments asserting that the disclosure of videotapes of depositions (or other materials) not otherwise protected by the Protective Order is somehow improper all fail.

---

[8] Locke Decl. ¶ 4; Clare Decl. ¶ 4.

[9] Locke Decl. ¶ 6; Clare Decl. ¶ 6.

[10] Locke Decl. ¶ 6; Clare Decl. ¶ 6.

5

As an initial matter, it is settled law that "[a] party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal." *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683-84 (5th Cir. 1985) (collecting cases); *see also, e.g.*, *In re Halkin*, 598 F.2d 176, 188 (D.C. Cir. 1979) ("Generally speaking, when a party obtains documents or information through the discovery process, he can use that information in any way which the law permits." (quotation marks omitted)); *accord Morrow v. City of Tenaha*, No. 08-cv-288, 2010 WL 3927969, at *3 (E.D. Tex. Oct. 5, 2010) (similar). "The discovery rules themselves place no limitations on what a party may do with materials obtained in discovery," and, "[u]nder Rule 26(c), ... without a protective order materials obtained in discovery may be used by a party for any purpose, including dissemination to the public." *Halkin*, 598 F.2d at 188; *accord Harris*, 768 F.2d at 684. And this applies to videotapes of depositions just as it does to any other discovery materials. *See, e.g.*, *Pia v. Supernova Media, Inc.*, 275 F.R.D. 559, 562 (D. Utah 2011) (denying request for protective order to prevent release of videotape of deposition even though "the dissemination of [the party's] videotaped deposition may cause him some level of discomfort," and explaining that "there is nothing inherently oppressive in the dissemination of [the party's] [videotaped] deposition").

Notably, although Defendants' counsel run away from this longstanding precedent now, they are well-aware of it—and have argued in favor of it elsewhere, even intervening in litigation in other courts to argue in favor of the disclosure of discovery materials such as "excerpts of witness interviews" and "excerpts of the deposition testimony of NCAA officials describing the NCAA's investigative and adjudicative process." *McNair v. Nat'l Coll. Athletic Ass'n*, 234 Cal. App. 4th 25, 30 (2015), *reh'g denied* (Feb. 24, 2015). But Defendants' counsel now want to have their cake and eat it too.

6

Case 3:15-cv-00023-GEC   Document 248   Filed 10/10/16   Page 6 of 11   Pageid#: 13328

Here, Plaintiff's counsel acted in full accord with this settled law. In an attempt to suggest otherwise, Defendants cite numerous inapposite cases and make a false analogy to cameras in the courtroom, but their cases and analogy are unpersuasive. First, Defendants' cases are entirely inapposite. For example, many of Defendants' cases are decisions on requests for protective orders (*see, e.g.*, *Flake v. Arpaio*, *Felling v. Knight*, *Lopex cv. CSX Transportation*, *U.S. v. McDougal*, *Stern v. Cosby*), and have no relation or bearing on situations where, like here, a Protective Order governing the disclosure of materials is already in place. And in another of Defendants cases, *Apple Ipod Itunes Antitrust Litig.*, only portions of the deposition testimony at issue were part of the public record—that is not the case here, where all testimony provided to third parties is already part of the Court's public record. None of that case law has any bearing whatsoever on a situation where, like here, a party simply shares testimony that is *already* part of the public record.

Defendants' analogy to cameras in the courtroom is similarly inapposite and has been expressly rejected. As one court explained in rejecting this precise analogy, a "[deposition] videotape is more akin to a judicial record than a violation of the ban of cameras in a federal courtroom. No one took any photographs in the courtroom; nor did anyone broadcast live via radio or television any judicial proceeding occurring within the courtroom. Moreover, there was no camera or satellite feed emanating from the courtroom [] as the [] deposition occurred." *United States v. Berger*, 990 F. Supp. 1054, 1057 (C.D. Ill. 1998) (requiring public access to videotape of deposition and explaining that its release was no different or more prejudicial than release of the transcript of the deposition).

Finally, Defendants are simply incorrect that Plaintiff's counsel has somehow tainted the jury pool by sharing information that is *already* part of the public record in this case. As

7

everyone is aware—and has long been aware—this case has been the subject of significant and ongoing media coverage since its inception.[11] Indeed, Defendants' "A Rape on Campus" article has been the subject of an intense media firestorm (and scrutiny) since it was debunked shortly after its publication.[12] And in light of the significant national interest in this case, attorneys for both parties have spoken to the press.[13]

Simply put, this is not the first case that has ever received intense media coverage, and it will not be the last. And courts have established procedures for dealing with such media coverage and ensuring that an unbiased jury is empaneled. As Virginia federal courts have explained, "a searching voir dire is the appropriate means to ensure the defendant's constitutional right to a fair and impartial jury untainted by pre-trial publicity." *United States v. Lentz*, 352 F. Supp. 2d 718, 722 (E.D. Va. 2005) (explaining that this rule is "well-settled" and denying a requires to transfer venue); *accord United States v. Lindh*, 212 F. Supp. 2d 541, 548 (E.D. Va. 2002) (same). Here, the Court and parties will be fully able to ask prospective jurors whether they have seen the 20/20 broadcast that is the subject of Defendants' Motion just like they will be able to ask prospective jurors if they have seen other media coverage of this case and Defendants' "A Rape on Campus" over the nearly two years since it was published. And, of

---

[11] *See, e.g.*, Alyssa Rosenberg, "Rolling tone Needs to Come Clean About Its Campus Rape Story," *Wash. Post* (Dec. 5, 2014), *available at* https://www.washingtonpost.com/news/act-four/wp/2014/12/05/rolling-stone-needs-to-come-clean-about-its-campus-rape-story/?utm_term=.ff11a46d35ed; Erik Wemple, "The Full Demise of Rolling Stone's Rape Story," Wash Post. (Dec. 11, 2014), *available at* https://www.washingtonpost.com/blogs/erik-wemple/wp/2014/12/11/the-full-demise-of-rolling-stones-rape-story/?utm_term=.ccb603d166ba

[12] Polly Mosendz, "More 'Rolling Stone' Rape Article Fallout: UVA Dean Files Defamation Lawsuit," *Newsweek* (May 12, 2015), *available at* http://www.newsweek.com/uva-dean-nicole-eramo-files-defamation-suit-against-rolling-stone-sabrina-331050; Sam Sanders, "University Of Virginia Dean Sues 'Rolling Stone' Over Discredited Rape Article," *NPR* (May 12, 2015), *available at* http://www.npr.org/sections/thetwo-way/2015/05/12/406227644/university-of-virginia-dean-sues-rolling-stone-over-discredited-rape-article

[13] T. Rees Shapiro, "Federal Judge Leabs Towar Jury Trial in Rolling Stone Defamation Lawsuit Over U.Va. Rape Article," *Wash. Post* )Aug. 13, 2016) (reporting how Rolling Stone attorney Elizabeth McNamara spoke to reporters about the case, telling them that it should be dismissed), *available at* https://www.washingtonpost.com/news/grade-point/wp/2016/08/12/federal-judge-to-decide-if-u-va-deans-defamation-lawsuit-against-rolling-stone-will-proceed/.

course, the Court and parties will be able to ask jurors whether they are capable of being impartial and rendering a just verdict based on the evidence admitted at trial, and only the evidence admitted at trial.

\* \* \*

As explained above, Plaintiff and her counsel have in no way, shape, or form violated the Court's Protective Order. There is no "emergency," and no injunctive relief or sanctions are appropriate.

## CONCLUSION

For the foregoing reasons, Ms. Eramo respectfully requests that the Court deny Defendants' Emergency Motion for Injunctive Relief and Sanctions.

Dated: October 10, 2016

Respectfully submitted,

By: */s/ Elizabeth M. Locke*
Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
Andrew C. Phillips (VA Bar No. 88880)
Joseph R. Oliveri (VA Bar No. 77152)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
andy@clarelocke.com
joe@clarelocke.com

*Attorneys for Plaintiff Nicole P. Eramo*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Nicole Eramo's Opposition to Defendants' Emergency Motion for Injunctive Relief and Sanctions was served on the below counsel of record on October 10, 2016 in accordance with the Fed. R. Civ. P.:

Michael John Finney & William David Paxton
GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373
Telephone: (540) 983-9334
Fax: (540) 983-9400
Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara & Samuel M. Bayard
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230 / Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 / Fax: (202) 973-4448
Email: alisonschary@dwt.com
*Attorneys for Defendants Rolling Stone LLC,*
*Sabrina Rubin Erdely, and Wenner Media LLC*

Benjamin Gaillard Chew
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, DC 20036-5303
Telephone: (202) 585-6511
Email: bchew@manatt.com
*Attorney for Defendant Sabrina Rubin Erdely*

Dated: October 10, 2016By:/s/ Elizabeth M. Locke
Elizabeth M. Locke