IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-0023-GEC |
| ) | |
| ROLLING STONE LLC, ) | |
| SABRINA RUBIN ERDELY, and ) | |
| WENNER MEDIA LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DEFENDANTS' OPPOSITION AND STATEMENT THAT THE JOINT DEFENSE AND CONFIDENTIALITY AGREEMENT IS INADMISSIBLE

Defendants Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely submit this opposition to Plaintiff's motion for miscellaneous relief (Dkt. No. 312), which explains why the privileged post-publication Joint Defense and Confidentiality Agreement (the "Agreement")[1] between Rolling Stone LLC and Erdely is inadmissible and should not be referenced in this proceeding, and in particular not during the liability phase.

RELEVANT BACKGROUND

*Erdely's Indemnification was Disclosed*

After the Article was effectively retracted, and in the reasonable anticipation of litigation, Defendants entered into the Agreement. As part of the Agreement, Rolling Stone agreed to indemnify Erdely from any judgment or liability arising from the Article. The Agreement itself is privileged.

Plaintiff asked Erdely about indemnification at her May 12, 2016 deposition, which she readily acknowledged:

---

[1] Plaintiff's submission misstates the Agreement's title. (*See* Dkt. No. 312.)

> Q Is Rolling Stone, in fact, indemnifying you in this action, Ms. Erdely?
>
> MR. CHEW: Objection.
>
> A Yes.
>
> Q Are they paying for your legal fees?
>
> A They are.

(5.12.16 Erdely Dep. at 12.) Plaintiff, however, did not further inquire about this topic.

*The Court's Ruling at the October 11, 2016 Pre-Trial Conference*

At the October 11, 2016 pre-trial conference, Defendants brought to the Court's attention the previously disclosed fact that Rolling Stone is indemnifying Erdely. There, Defendants argued that—from either side—no implication should be made implying who would be obligated to pay or not pay any judgment rendered against Erdely; instead, the issue of payment responsibility should be treated in a "neutral" fashion, *i.e.*, not raised to the jury. (10.11.16 Tr. at 57-58.). Specifically, Defendants asked the Court to instruct Plaintiff "not to ask Ms. Erdely if she has an indemnity agreement where Rolling Stone is going to pay any judgment in this case. It's plainly not relevant to the issues that are in this case." (*Id*. at 58-59.)

In response to this statement, the Court agreed that such issues were ***not relevant*** in the liability phase: "Well, it's not [relevant] during the liability phase; I certainly agree with that. If we should get to a punitive damage phase, it would be relevant." (*Id*. at 59.) The Court subsequently stated that "it might be different if, for example, some of the defendants might go away at the end of plaintiff's case. That might change the dynamic of the situation somewhat." (*Id*. at 61.)

After a recess, the Court raised the indemnification issue again, stating:

> THE COURT: Don't sit down quite yet. On the indemnification agreement, I've had the chance to think about that a little bit more. I think what you need to do is to either provide plaintiff with not

necessarily a copy of the agreement, but its salient terms.

MR. SEXTON: Okay.

THE COURT: Or at the conclusion of the liability phase, if certain of the defendants go out, I think that it would need to be provided then. And in any event, it would need to be provided if the case proceeds to a punitive damage phase. So the better course may be just to provide the terms now --

MR. SEXTON: All right.

THE COURT: -- so we'll be able to understand if there's any agreement about the substance of it.

MR. SEXTON: Okay.

(*Id*. at 64.)

Thus, the Court presented three options: (1) provide the salient terms of the Agreement at that point; (2) if certain Defendants go out of the case, provide the Agreement at the conclusion of liability phase; or (3) provide the Agreement if the agreement proceeds to a punitive damages phase.

On October 17, 2016, Plaintiff withdrew her claim for punitive damages. (Dkt. No. 287.) Thus, only the first two options of the Court's October 17 ruling are still applicable.

*Plaintiff Contended That There Had Not Been Consequences to the Article*

At trial, Plaintiff read her April 22, 2015 letter to Jann Wenner, which was also admitted as Plaintiff's Trial Exhibit 97. (10.19.16 Tr. at 181-88.) In this letter, Plaintiff stated that "Rolling Stone has refused to hold anyone accountable," and that the steps taken to date were "not good enough." (*Id*. at 188.)[2]

---

[2] During her cross-examination, Plaintiff also acknowledged that she had celebrated the firing of Rolling Stone's managing editor, Will Dana, which occurred after in July 2015. (10.19.16 Tr. at 118. *See also* Defs. Trial Ex. 46 at 7-8.) Plaintiff also acknowledged that she had previously texted "Sara [Surface] that [she] would like to make sure that Sabrina never sells another article to anyone, ever." (10.19.16 Tr. at 118.)

3

23075/1/7761129v2

Case 3:15-cv-00023-GEC    Document 313    Filed 10/24/16    Page 3 of 10    Pageid#: 15473

*Plaintiff Introduces Erdely's Independent Contractor Agreement*

At trial, Plaintiff introduced Erdely's Independent Contractor Agreement as Plaintiff's Trial Exhibit 22. (10.20.16 Tr. at 140.) She then asked Erdely questions about the Independent Contractor Agreement, emphasizing that Erdely was scheduled to be paid $300,000 between July 1, 2014 and June 30, 2016, and stating the $300,000 figure twice. (*Id.* at 143.) In addition, Plaintiff sought to imply that Erdely was under financial pressure to rapidly turn out articles in order to satisfy the terms of her new contract. (*See, e.g.*, *id.* at 144 ("You understood that, if you did not produce the seven articles in those two years, that your contract could be terminated from Rolling Stone, isn't that correct?").)

During Plaintiff's examination, however, no question was asked about how Erdely was to be paid under the Independent Contractor Agreement—*i.e.*, whether it was a fixed monthly amount (as is in fact the case) or whether she was eligible for a bonus depending on the popularity of any articles (which is not the case). Likewise, no mention was made that Rolling Stone had terminated Erdely's Independent Contractor Agreement early, which had occurred after receiving Plaintiff's April 22, 2015 letter.

*Erdely Corrects the Record*

During her cross-examination, Erdely addressed some of the incorrect implications and omitted topics from Plaintiff's direct examination. Erdely explained that she was paid monthly, and did not receive any bonus compensation. (10.22.16 Tr. at 76.) She also corrected the implication—hanging from Plaintiff's examination—that she had fulfilled her Independent Contractor Agreement and received the $300,000 amount. Instead, Erdely explained that her contract had been terminated by Rolling Stone, and that she had not since received any income from writing. (*Id.* at 77.)

23075/1/7761129v2

*Plaintiff Raises the Indemnification Issue With the Court Again*

At the end of Saturday's session, Plaintiff argued that Defendants had opened the door to questioning to Erdely about her indemnification. (*Id*. at 156.) Specifically, Plaintiff contended that Defendants had "opened the door and suggested that Ms. Erdely couldn't afford – effectively the implication is that she couldn't afford to pay a judgment because she's earned no money since 'A Rape on Campus.'" (*Id*. at 157.) Plaintiff also stated that "[w]ith respect to liability, it shows the relationship between the parties." (*Id*.)

In response, Defendants explained that there had been absolutely no suggestion that Erdely would have to pay a judgment on her own, which is the predicate to "opening the door" with respect to damages. (*Id*. at 157-58.) Further, Defendants pointed out that this testimony was necessary rebut implications ***raised by Plaintiff***—including that it was to "debunk the notion that [Erdely] had a financial motive" in writing the Article (because it had the opposite effect), and that there was a "real consequence" to Erdely from the Article. (*Id*. at 158.)

During this discussion, the Court indicated that the indemnification issue also relates to Erdely's motivation in giving testimony,[3] and that in the few times it had experienced this issue in the past, "a written stipulation is reached, it's read into the record, made part of the record, and that's the end of it." (*Id*. at 159.) The Court continued that it did not "think much needs to be said about it. I don't think we need to have answer a lot of questions about it because then it becomes argument. I think it's enough that the jury understands that she and Rolling Stone are one in terms of their defense of the case." (*Id*.)

---

[3] By this statement, it appears that the Court believed that any indemnification agreement would also have a cooperation aspect. When reviewing this issue on Sunday, Defendants' counsel realized that the Agreement did in fact contain a cooperation clause. They then promptly contacted Plaintiff's counsel and made this disclosure.

5

## ARGUMENT AND AUTHORITIES

The Court already addressed this issue at the October 11 Pre-Trial Conference. There, it stated that the indemnification issue was not relevant at the liability phase, but presented options for moving forward: (1) for the Defendants to provide the salient terms of the Agreement to Plaintiff; or (2) if certain Defendants go out of the case, provide the Agreement to Plaintiff at the conclusion of liability phase.[4]

Nothing has occurred at trial that should in any way alter the Court's prior ruling. With respect to the liability phase, Plaintiff's rationale during Saturday's session had no substance whatsoever; it was simply that the indemnification issue goes to the "relationship between the parties." But, precisely because of the Court's October 11 ruling, no testimony has been introduced on this issue, and thus no door could have or has been opened. Further, the Court's prior ruling appears to have presumed a cooperation aspect, in conjunction with indemnification. At bottom then, Plaintiff is just dissatisfied with the Court's prior decision, but has not presented grounds for reconsideration.

As for damages, Plaintiff's argument is that Defendants "opened the door" to the alleged implication that Erdely could not afford to pay a judgment. On its face—and as acknowledged by Plaintiff on October 22—this argument would only be relevant during the damages phase, not liability. (*See* 10.22.16 Tr. at 157 ("[W]ith ***respect to damages***, they've opened the door and suggested that Ms. Erdely couldn't afford . . .") (emphasis added).) Accordingly, this issue should not even be considered during the liability stage.

Plaintiff's argument also lacks a factual basis, as well as distorts the record. In no way did Defendants "open the door." Nor, as Plaintiff incorrectly asserts in her written submission,

---

[4] The Court's third stated option, with respect to punitive damages, is no longer an issue, as Plaintiff has withdrawn her punitive damages claim.

did Erdely "affirmatively raise[] the issue of her finances" or make any "plea of poverty." (Dkt. No. 312 at 4.) To the contrary, it was Plaintiff that raised the issue of Erdely's Independent Contractor Agreement, repeatedly invoked the $300,000 amount, implied this contract continued to completion, and implied that Erdely had a financial motive to take shortcuts with the Article. Plaintiff also read her April 22, 2015 letter into the record, which incorrectly suggested that Rolling Stone had held no one "accountable." Defendants were absolutely entitled to correct the record on the issues that **Plaintiff opened**, informing the jury that Erdely's contract had been terminated by Rolling Stone and that she had not since earned any money from writing.

Moreover, evidence of any defendant's ability to pay is of no or marginal probative value, but carries the great danger of being unfairly prejudicial. *See* Fed. R. Evid. 403. For just these reasons, in the similar context of insurance agreements, there is a specific rule that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411 And while Rule 411 does provide the Court with discretion to admit such evidence for another liability purpose, this evidence must have sufficient probative value such that it is not substantially outweighed by its inherent and obvious prejudice.

Earlier this past year, the Fourth Circuit[5] affirmed exclusion of an indemnification agreement under Rule 403. In *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228 (4th Cir. 2016), an ADA plaintiff appealed a verdict in her favor for $20,000. *See id*. at 231. The defendants had asserted that the plaintiff's employment was terminated because of a restructuring plan and not because of her worker's compensation claim and injury. On appeal, the plaintiff argued that she should have been permitted to introduce the defendants' insurance

---

[5] While Defendants have not had the opportunity to review authorities cited in Plaintiff's submission, most are not from within the Fourth Circuit, and none are from the Western District of Virginia or from the Fourth Circuit itself.

23075/1/7761129v2
Case 3:15-cv-00023-GEC    Document 313    Filed 10/24/16    Page 7 of 10    Pageid#: 15477

and indemnity agreements to rebut the effect of the defendants' testimony regarding their poor financial status. *Id*. at 239-40.

The Fourth Circuit disagreed. It found that such evidence had independent relevance, and that the plaintiff "points to nothing in the record indicating that Appellees claimed that they could not pay the judgment or suggested that the jury should consider their financial condition in determining the damages to award." *Id*. at 240. Further, a jury should be presumed to be able to follow a court's instructions, including that a plaintiff should be awarded fair compensation. Under these circumstances, the Fourth Circuit agreed with the district court's ruling that any "pour mouthing" was "insufficient to open the door to evidence of [the defendant's] insurance coverage and indemnification." *Id*.

Likewise, this Court recently granted a § 1983 plaintiff's motion for a new trial as to damages when defense counsel's comments could have led the jury to believe that the defendant policy officer would have had to personally pay any judgment against him. *See Adkins v. McClanahan*, No. 1:12CV00034, 2013 U.S. Dist. LEXIS 131672 (W.D. Va. Sept. 16, 2013). In *Adkins*, Judge Jones held that that ultimate payment responsibility should not be part of a case, unless the opposing side was the one that opened the door. He stated that "[t]he general rule in the state courts and under Fed. R. Civ. P. 61 is that interjection of the fact that the defendant is protected by insurance or other indemnity may be prejudicial error requiring reversal." 2013 U.S. Dist. LEXIS 131672, at *9 (quoting *Griffin v. Hilke*, 804 F.2d 1052, 1057 (8th Cir. 1986)). But, "[c]onversely, when jurors are given the impression that there is no indemnification, they may improperly consider the financial impact that a judgment would have on a defendant." *Id*.

Finally, and without waiver to any of its arguments above regarding the admissibility of any evidence regarding the Joint Defense and Confidentiality Agreement, Defendants object to and reject Plaintiff's proposed stipulation (*see* Dkt. No. 312 at 5) for numerous reasons. First, it

8

is factually incorrect and inconsistent with the language of the Agreement.  Second, it is argumentative, repetitive, and prejudicial.  Third, it improperly includes a jury instruction as part of an evidentiary stipulation.  Fourth, any evidentiary stipulation should only be read to the jury at the conclusion of Erdely's testimony, not during her examination.[6]

CONCLUSION

       For the foregoing reasons, the Court should uphold its prior ruling, deny Plaintiff's motion, and hold that any evidence regarding the Joint Defense and Confidentiality Agreement is inadmissible.

Dated: October 24, 2016

ROLLING STONE, LLC
SABRINA RUBIN ERDELY
WENNER MEDIA, LLC

By: /s/ Michael J. Finney
                Counsel

W. David Paxton (VSB No. 19798)
J. Scott Sexton (VSB No. 29284)
Michael J. Finney (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9300
Fax: (540) 983-9400
E-mail:  paxton@gentrylocke.com
E-mail:  sexton@gentrylocke.com
E-mail:  finney@gentrylocke.com

Elizabeth A. McNamara (*pro hac vice*)
Samuel M. Bayard (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
Telephone: (212) 489-8230
Fax: (212) 489-8340
E-mail: lizmcnamara@dwt.com
E-mail: samuelbayard@dwt.com

---

[6] Defendants have been attempting to work with Plaintiff on a reasonable and factually accurate stipulation.

9

Alison B. Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C. 20006-3401
Telephone: (202) 973-4248
Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC, Sabrina Rubin Erdely, and Wenner Media LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October, 2016, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which provided electronic service to all counsel of record.

/s/ Michael J. Finney