IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| NICOLE P. ERAMO )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ROLLING STONE LLC, )<br>SABRINA RUBIN ERDELY, and )<br>WENNER MEDIA LLC, )<br>)<br>Defendants. )<br>) | Case No. 3:15-CV-0023-GEC |

**IMPLICATION AS TO PLAINTIFF'S INTENT OR MOTIVE IS NOT ACTIONABLE
AND CANNOT BE MADE WITH ACTUAL MALICE AS A MATTER OF LAW**

Defendants submit this brief memorandum in support of their motion for judgment as a matter of law on Plaintiff's claim for defamation by implication, pursuant to Fed. R. Civ. P. 50. Because Plaintiff's implication claim was not articulated at the time of summary judgment and therefore not addressed in previous briefing, Defendants offer this memorandum to provide the Court with the relevant legal principles referenced during oral argument on their Rule 50 motion.

**A. Plaintiff Cannot Meet the Legal Standard for Defamation by Implication Claims**

Plaintiff articulates her implication claim as follows:

Plaintiff alleges that the Rolling Stone article "A Rape on Campus," taken as a whole and viewed in context with its headlines, illustrations, captions and promotional material, implies and insinuates that Nicole Eramo acted as a false friend to Jackie, pretending to be on her side while at the same time discouraging Jackie from pursuing a formal complaint or police investigation regarding her rape allegations in order to suppress the assault and protect the University's reputation.

As Defendants argued during oral argument on October 28, Plaintiff's implication claim should be dismissed pursuant to Rule 50 because the evidence in the record at the close of Plaintiff's case would not allow a reasonable jury to find that the language of the article "affirmatively

1

suggests" that any of the defendants intended or endorsed Plaintiff's implication. Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1093 (4th Cir. 1993) (a libel-by-implication plaintiff must "make an especially rigorous showing" that "[t]he language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference"). The mere fact that the language could potentially be read to support the proffered implication—even if the implication is "clear and inescapable" to the Court—is not sufficient to create a triable issue of fact as to whether the defendants intended or endorsed that reading. Newton v. Nat'l Broad. Co., Inc., 930 F.2d 662, 681 (9th Cir. 1990). See also Woods v. Evansville Press Co., Inc., 791 F.2d 480, 487 (7th Cir. 1986) (no triable issue on defamation by implication claim where "there is no evidence that the defendants … shared the Plaintiff's interpretation of the [publication] or intended that [it] be read to contain the defamatory innuendoes the plaintiff attributes to it"). This heightened burden stems from First Amendment protections; without it, publishers could be liable "not only for what was not said but also for what was not intended to be said." Newton, 930 F.2d at 681 (emphasis added). "A publisher reporting on matters of public concern cannot be charged with the intolerable burden of guessing what inferences a jury might draw from an article and ruling out all possible false and defamatory innuendoes that could be drawn from the article." Woods, 791 F.2d at 487-88.

### B. Speculation About a Person's Motive or Intent Is Not Actionable

Plaintiff's implication claim also fails as a matter of law on two additional, independent grounds. First, the proffered implication constitutes conjecture about Plaintiff's internal motivations and intent, which is not capable of being proven true or false. Plaintiff claims that the article implies she was a "false friend" to Jackie by "pretending" to be on her side while intentionally "discouraging" her from reporting "in order to suppress the assault and protect the

2

University's reputation." It is not an alleged implication that Plaintiff in fact suppressed and discouraged Jackie's assault; rather, as framed by Plaintiff, it is an implication that she set out to be a "false friend" because she was motivated to (or "in order to") protect UVA's reputation by discouraging and suppressing her sexual assault. Even if Plaintiff could show that this implication was supported by the plain language of the article and intended by the Defendants, speculation or conjecture about a person's internal motivations is generally not subject to objective verification and not actionable.[1] For this reason, courts across the country have found speculation as to a person's internal motives to be nonactionable opinion. See, e.g., Montgomery v. Risen, No. CV 16-0126 (RC), 2016 WL 3919809, at *20 (D.D.C. July 15, 2016) ("The assertion that Montgomery was motivated out of greed or ambition is a subjective judgment that is not verifiable."); Underwager v. Channel 9 Austl., 69 F.3d 361, 367 (9th Cir. 1995) (statements concerning the plaintiff's "motivations and personality" were opinion); Price v. Viking Penguin, 881 F.3d 1426, 1432 (8th Cir. 1989) ("Statements regarding motive are 'intrinsically unsuited' to serve as a basis for libel."); Greenberg v. Western CPE, No. SACV 12–02074, 2013 WL 1628905, at *4 (C.D. Cal. Apr. 15, 2013) (finding "speculation on the part of the author regarding Plaintiff's possible feelings or motivations behind his actions" to be non-actionable statement of opinion); cf., Potomac Valve & Fitting Inc. v. Crawford Fitting Co.. 829 F.2d 1280, 1289 (4th Cir. 1987) (in finding a statement that a company's test for tube fittings was "purposely … designed to snow the customer" was non-actionable opinion, the Court observed that the motivation in this context could be verified.)

The Eighth Circuit's decision in Janklow v. Newsweek, Inc., 788 F.2d 1300 (8th Cir. 1986) (en banc), is instructive. Like this case, Janklow involved a public figure and government

---

[1] Plaintiff's attempt to bring extrinsic "promotional material" into the alleged implication is prohibited by Chapin's clear instruction that one must look at the "language used" of the operative publication. Chapin, 993 at 1094.

employee (an attorney general) who claimed that an article defamed him by implying that one of his prosecutions was motivated by revenge. The court rejected that proposed implication as unverifiable, recognizing that unlike an implication of affirmative conduct, "the singling out of impermissible motive is a subtle and slippery enterprise, particularly when the activities of public officials are involved." Id.

Similarly, in Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222 (7th Cir. 1993) (Posner, J.), the court dismissed a claim based on an implication that the plaintiff had a financial motive in leaving his wife. The court explained that the plaintiff's motives "can never be known for sure (even by [plaintiff]) and anyone is entitled to speculate on a person's motives from the known facts of his behavior." Id. at 1227. The court also noted that the author "did not pretend to have the inside dope," making no suggestion that the plaintiff himself had confirmed that motive. Instead, the author was simply drawing a "natural though not inevitable inference" from the plaintiff's actions, which is "not information that the plaintiff might be able to prove false in a trial." Id. Here, too, the article makes clear that Defendants were not permitted to speak with Ms. Eramo for the article. (PTX 1 at RS001076.) Accordingly, there can be no plausible suggestion that they had the "inside dope" on her internal motivations.[2]

### C. No Reasonable Jury Could Find that Defendants Acted with Actual Malice as to Plaintiff's Proffered Implication

Second, Plaintiff's implication claim also fails as a matter of law because she cannot possibly show that Defendants intended or endorsed this implication knowing it was false, and therefore with actual malice. Even assuming the implication as framed is verifiable, it is

---

[2] Likewise, the Laura Dunn quote relied on by Plaintiff is couched in self-evident advocacy rhetoric and speaks of "an alarming trend . . . on campuses" across the country; as such, it cannot reasonably be understood to convey any inside knowledge about Eramo's motivations or intent with respect to the University of Virginia. (PTX 1 at RS001076.)

4

undisputed that she was not permitted to speak with Defendants in their reporting for the article. Accordingly, no reasonable jury could find that Defendants subjectively <u>knew</u> these alleged implied motivations were false.

Likewise, Plaintiff's implication claim ultimately fails because it cannot be squared with the Supreme Court's holding in <u>Time Inc. v. Pape</u>, 401 U.S. 279 (1971). The actual malice standard permits a speaker to present a "rational interpretation[ ]" of an ambiguous situation and, given the fraught and complex nature of Jackie's case, UVA's response and its general policies surrounding victim choice, the events "bristled with ambiguities." <u>Pape</u>, 401 U.S. at 290. <u>See also</u> <u>CACI Premier Tech., Inc. v. Rhodes</u>, 536 F.3d 280, 296 (4th Cir. 2008) ("a speaker or publisher may adopt 'one of a number of possible rational interpretations of [sources] that [contain] ambiguities' without creating a jury issue of actual malice") (alterations in original). The rationale for this is straightforward: where a situation is open to multiple interpretations, a jury cannot find by clear and convincing evidence that the defendant <u>knew</u> its interpretation to be false, even if it actually turned out to be false.

Here, Plaintiff essentially contends that Defendants were implying the wrong conclusion from the known facts that UVA sexual assault survivors described feeling supported by their interactions with her and yet few moved forward with formal complaints. Plaintiff claims that she wanted those students to move forward, and their decisions not to do so had nothing to do with her or the victim choice policy she implemented. Defendants suggested in the article that the low number of formal complaints might be an unintended consequence of the victim choice policy itself, positing that "the sheer menu of choices, paired with the reassurance that any choice is the right one" might have the "end result" of lulling students into opting for the easier avenue of emotional support rather than formal action, with a negative effect on campus safety.

5

These are both rational interpretations of ambiguous facts and difficult questions of public policy about the best way to handle sexual assault reports. Accordingly, no reasonable jury could find that Defendants' rational conclusions from these ambiguous facts were made with actual malice.

Dated: Charlottesville, Virginia
October 30, 2016

By:    /s/ Elizabeth A. McNamara
Elizabeth A. McNamara (*pro hac vice*)
Samuel M. Bayard (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP 1251
Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Telephone: (212) 489-8230
Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison Schary (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248
Fax: (202) 973-4448
E-mail: alisonschary@dwt.com

W. David Paxton (VSB No. 19798)
J. Scott Sexton (VSB No. 29284)
Michael J. Finney (VSB No. 78484)
GENTRY LOCKE
10 Franklin Road S.E., Suite 900
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9300
Fax: (540) 983-9400
E-mail: paxton@gentrylocke.com
E-mail: sexton@gentrylocke.com
E-mail: finney@gentrylocke.com

*Attorneys for Defendants Rolling Stone LLC,
Sabrina Rubin Erdely, and Wenner Media LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2016, the foregoing was served by CM/ECF on counsel of record for all parties to this action. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Elizabeth A. McNamara
Elizabeth A. McNamara