**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | | |
|---|---|---|
| **NICOLE P. ERAMO** | ) | |
| | ) | |
| **Plaintiff** | ) | **Case No. 3:15-cv-00023-GEC** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ROLLING STONE LLC,** | ) | |
| **SABRINA RUBIN ERDELY, and** | ) | |
| **WENNER MEDIA LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S REVISED PROPOSED JURY INSTRUCTIONS

Plaintiff Nicole P. Eramo hereby submits the following revised proposed jury instructions for this case, together with supporting authorities. Plaintiff respectfully requests the ability to amend or supplement these proposed charges, or to withdraw proposed charges, as necessary based on the contents of any opinions or rulings issued by the Court, her review of the Defendants' proposed charges, the outcome of various pending and anticipated motions, any rulings the Court may render in charging conferences or during the course of the trial, or the evidence adduced at trial.

Dated:  October 30, 2016

Respectfully submitted,

By:   _/s/ Elizabeth M. Locke_____
Thomas A. Clare (VA Bar No. 39299)
Elizabeth M. Locke (VA Bar No. 71784)
Andrew C. Phillips (VA Bar No. 88880)
Joseph R. Oliveri (VA Bar No. 77152)
CLARE LOCKE LLP
902 Prince Street
Alexandria, Virginia 22314
Telephone: (202) 628-7400
tom@clarelocke.com
libby@clarelocke.com
andy@clarelocke.com
joe@clarelocke.com

*Attorneys for Plaintiff Nicole P. Eramo*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Nicole Eramo's Revised Proposed Jury Instructions was served on the below counsel of record on October 30, 2016 in accordance with the Federal Rules of Civil Procedure.

Michael John Finney & William David Paxton
GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Telephone: (540) 983-9373
Telephone: (540) 983-9334
Fax: (540) 983-9400
Email: finney@gentrylocke.com
Email: paxton@gentrylocke.com

Elizabeth A. McNamara & Samuel M. Bayard
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230 / Fax: (212) 489-8340
Email: lizmcnamara@dwt.com
Email: samuelbayard@dwt.com

Alison B. Schary
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, DC 20006-3401
Telephone: (202) 973-4248 / Fax: (202) 973-4448
Email: alisonschary@dwt.com

*Attorneys for Defendants Rolling Stone LLC,*
*Sabrina Rubin Erdely, and Wenner Media LLC*

Benjamin Gaillard Chew
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, DC 20036-5303
Telephone:  (202) 585-6511
Email:  bchew@manatt.com

*Attorney for Defendant Sabrina Rubin Erdely*

Dated:  October 30, 2016                    By:   */s/ Elizabeth M. Locke*
                                                      Elizabeth M. Locke

## INSTRUCTION No. 1: Preliminary Instructions to the Jury in a Civil Case

Good morning, members of the jury. Before we begin the trial, I want to give you some preliminary instructions to help you understand what will happen during the trial and also to guide your conduct. I will give you detailed instructions near the end of the trial but what I say now is to explain to you your role here, as well as the role of the court and the role of others here.

This is a civil case. In a civil case, the party who brings the lawsuit is called a plaintiff. In this case, the plaintiff is Nicole P. Eramo. The party against whom the suit is brought is called the defendant. In this case, the defendants are Sabrina Rubin Erdely, Wenner Media LLC, and Rolling Stone LLC.

In a civil case, the plaintiff has the burden of proving her case by what is called the preponderance of evidence. That means the plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what the plaintiff claims is more likely true than not. To put it differently, if you were to put plaintiff's and defendants' evidence on opposite sides of the scales, plaintiff would have to make the scales tip somewhat on his side. If the plaintiff fails to meet this burden, the verdict must be for the defendants.

Those of you who have sat on criminal cases will have heard of proof beyond a reasonable doubt. That requirement does not apply to a civil case and you should, therefore, put it out of your mind.

*Source: Western District of Virginia Preliminary Jury Instructions in a Civil Case*

It is your role to decide disputed questions of fact. You and you alone, are the judges of the facts. Nothing I say or do during this trial should make you feel one way or another about the facts. You will hear the evidence, decide what the facts are, and then apply those facts to the law which I will give to you. Even if you personally disagree with the law, you are bound to accept it and follow it as I give it to you. I will decide all questions of law that arise during the trial.

You must keep an open mind to both sides during this entire trial until it is time for you to retire and deliberate. You must not decide this case near the beginning, halfway through or near the end. You must wait to decide until you have heard all the evidence, and I have given you the instructions as to the law before you render your decision.

You will decide this case based on the evidence. The evidence from which you will find the facts will consist of the sworn testimony of witnesses, documents, and other things received into the record as exhibits.

Statements and arguments by lawyers or an unrepresented party are not evidence in the case, unless made as an admission or stipulation of fact. When the parties stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved to you.

Objections to questions are not evidence. Lawyers and unrepresented parties have an obligation to make an objection when they believe evidence

being offered is improper under the rules of evidence. You should not be influenced by the objection or by my ruling on it.

Any evidence as to which an objection is sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded. If an objection is overruled, treat the answer like any other. You should not concern yourself with why an objection is made or why the court has decided one way or another.

Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

When I say that something is "admitted or received into evidence" that means that exhibit is now part of the evidence and part of what you may consider in your decision in this case. Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

I urge you to pay close attention to the testimony as it is given.

Case 3:15-cv-00023-GEC   Document 341   Filed 10/30/16   Page 6 of 47   Pageid#: 16778

**INSTRUCTION 2: Standard Civil Jury Instructions**

Members of the jury, you have heard the parties argue the case and you have heard the evidence. It is now my duty to instruct you as to the law. The instructions that I gave you at the beginning of the trial and during the trial remain in effect. You must, of course, continue to follow my earlier instructions as well as those that I give you now. You must not single out some instructions and ignore others, but must consider the instructions as a whole.

Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be. During this trial, I may have occasionally asked questions of witnesses in order to bring out facts not then fully covered in testimony. Do not assume that I hold any opinion on the matter to which my questions related.

It is your duty to determine from the evidence what the facts are. You will then apply the law, as I give it to you, to those facts. You must follow my instructions on the law, even if you believed that the law was different or should be different.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

Source: Western District of Virginia Standard Civil Jury Instructions

I have mentioned the word "evidence." The "evidence" in this case consists of the testimony of witnesses, the documents and other things received as exhibits and the facts that have been stipulated -- that is formally agreed to by the parties.

You may use reason and common sense to draw deductions or conclusions from facts that have been established by the evidence in the case.

During the trial items were received into evidence as exhibits. Any or all of these exhibits will be sent into the jury room if you request. Examine the exhibits if you think it would help you in your deliberations.

Certain things are not evidence. I shall list those things for you now:

First: Statements, arguments, questions and comments by lawyers representing the parties in the case and by the unrepresented parties do not constitute evidence.

Second: Objections are not evidence. Lawyers and unrepresented parties have a right to object if they believe something is improper. You should not be influenced by an objection. If I sustained an objection to a question, you must ignore the question and must not attempt to guess what the answer might have been.

Third: Testimony that I struck from the record, or told you to disregard, is not evidence and must not be considered.

Source: Western District of Virginia Standard Civil Jury Instructions

Fourth: Anything you saw or heard about this case outside of the courtroom is not evidence.

Finally, during the course of this trial you may have been instructed that some evidence was received for a limited purpose only. You may consider such evidence only for the specific limited purpose for which it was admitted.

Evidence may be direct or circumstantial. Direct evidence is testimony by a witness about a matter that the witness personally saw, heard or did. Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find another fact. You are to consider both direct and circumstantial evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give any evidence.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited solely to what you have seen and heard the witnesses testify. You are permitted to draw, from the facts which you find have been proved, such reasonable inferences as seem justified in the light of your experience.

Inferences are deductions or conclusions which reason and common sense lead the jury to draw from the facts which have been established by the evidence in the trial.

Source: Western District of Virginia Standard Civil Jury Instructions

In deciding what the facts are, you also may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, only part of it, or none of it.

In weighing the testimony of a witness, you should consider his or her relationship to the parties. You must also consider his or her interest, if any, in the outcome of the case, his or her manner of testifying, his or her opportunity to observe or acquire knowledge concerning the facts about which he or she testified, the candor, fairness, and intelligence of a witness and the extent to which a witness' testimony is supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

This case should be considered by you as an action between persons of equal worth. All persons are equal before the law and are considered equals in the courtroom today.

In weighing a witness's testimony, you also should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony he or she gave before you during the trial.

You should again keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to

Source: Western District of Virginia Standard Civil Jury Instructions

consider whether that misstatement was simply an innocent lapse or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or only a small detail.

…

In conducting your deliberations and returning your verdict, there are certain rules you must follow. I shall list those rules for you now.

First, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement without violence to individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict.

Source: Western District of Virginia Standard Civil Jury Instructions

Third, if you need to communicate with me during your deliberations, you may send a note to me through the bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or by having you returned to the court room so that I can address you orally. Remember that you should not tell anyone -- including me -- how your vote stands numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be -- that is entirely for you to decide.

Finally, a verdict form is simply written notice of a decision that you reach in this case. You will take this form to the jury room, and when you have reached your verdict, your foreperson will fill in the form, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

Source: Western District of Virginia Standard Civil Jury Instructions

## INSTRUCTION No. 3: Effect of rulings on objections

From time to time, it is my duty as judge to rule on the admissibility of evidence. I may make rulings as to the questions that attorneys are or are not permitted to ask of certain witnesses, and in some instances may have ruled prior to trial that certain witnesses could not be questioned as to certain topics. For example, with respect to Jackie [last name], the Court has ruled that the parties are permitted to ask questions regarding what she told to defendant Sabrina Rubin Erdely and/or other individuals that defendants were aware of prior to publication, and whether Jackie stands by the truth of those statements, but the parties are not permitted to ask Jackie about the details of her claimed sexual assault outside of what she related to the reporter or other individuals defendants were aware of. You should not concern yourselves with the reasons for these rulings, and you are not to take any inference from an attorney's inability or failure to ask a particular question of a witness.

# INSTRUCTION No. 4: Liability

Your verdict in this case must be based upon the facts as you find them and on the law contained in all of these instructions.

The issues in this case for you to decide are:

(1)    Did the defendants make the statements that plaintiff alleges are defamatory? In this case, there are three defendants and multiple statements at issue. You must decide:

- Did the defendants, Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely, make the following statements in the November 19, 2014 online edition of Rolling Stone magazine:

  o "Lots of people have discouraged her from sharing her story, Jackie tells me with a pained look, including the trusted UVA dean to whom Jackie reported her gang-rape allegations more than a year ago."

  o "A bruise still mottling her face, Jackie sat in Eramo's office in May 2014 and told her about the two others. One, she says, is a 2013 graduate, who'd told Jackie that she'd been gang-raped as a freshman at the Phi Psi house. The other was a first-year whose worried friends had called Jackie after the girl had come home wearing no pants. Jackie said the girl told her she'd been assaulted by four men in a Phi Psi bathroom while a fifth watched. (Neither woman was willing to talk to RS). As Jackie wrapped up her story, she was disappointed by Eramo's nonreaction. She'd expected shock, disgust, horror…. Of all her assailants, Drew was the one she most wanted to see held accountable — but with Drew about to graduate, he was going to get away with it. Because, as she miserably reminded Eramo in her office, she didn't feel ready to file a complaint. Eramo, as always, understood."

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

- o "Like most colleges, sexual assault proceedings at UVA unfold in total secrecy. Asked why UVA doesn't publish all its data, President Sullivan explains that it might not be in keeping with 'best practices' and thus may inadvertently discourage reporting. Jackie got a different explanation when she'd eventually asked Dean Eramo the same question. She says Eramo answered wryly, 'Because nobody wants to send their daughter to the rape school.'"

- Did the defendants, Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely, make the following statements in the December 5, 2014 print edition of Rolling Stone magazine?

  - o "Lots of people have discouraged her from sharing her story, Jackie tells me with a pained look, including the trusted UVA dean to whom Jackie reported her gang-rape allegations more than a year ago."

  - o "A bruise still mottling her face, Jackie sat in Eramo's office in May 2014 and told her about the two others. One, she says, is a 2013 graduate, who'd told Jackie that she'd been gang-raped as a freshman at the Phi Psi house. The other was a first-year whose worried friends had called Jackie after the girl had come home wearing no pants. Jackie said the girl told her she'd been assaulted by four men in a Phi Psi bathroom while a fifth watched. (Neither woman was willing to talk to RS). As Jackie wrapped up her story, she was disappointed by Eramo's nonreaction. She'd expected shock, disgust, horror…. Of all her assailants, Drew was the one she most wanted to see held accountable — but with Drew about to graduate, he was going to get away with it. Because, as she miserably reminded Eramo in her office, she didn't feel ready to file a complaint. Eramo, as always, understood."

  - o "Asked why UVA doesn't publish all its data, President Sullivan explains that it might not be in keeping with 'best practices' and thus may inadvertently discourage reporting. Jackie got a different explanation when she'd eventually asked Dean Eramo the same

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

question. She says Eramo answered wryly, 'Because nobody wants to send their daughter to the rape school.'"

- Did the defendant, Sabrina Rubin Erdely, make the following statements on the November 26, 2014 broadcast of the Brian Lehrer Show radio program?

  o "[Jackie] was just kind of brushed off by her friends and by the administration…. And eventually, when she did report to the administration, the administration did nothing about, they did nothing with the information. And they even continued to do nothing even when she eventually told them that she had become aware of two other women who were also gang raped at the same fraternity."

- Did the defendant, Sabrina Rubin Erdely, make the following statements on the November 27, 2014 episode of the Slate DoubleX Gabfest Podcast?

  o "[Jackie] had eventually kind of mustered up the courage to tell the administration that she had been brutally gang raped, and that the University did nothing with this information and that they continued to do nothing even when she told them that she had become aware of two other women that were also gang raped at that fraternity."

  o "It is incredibly extreme. I mean whether this was perpetrated by a serial rapist who has many victims — I mean it seems like no matter what, this is an incredibly messed up situation. But it was absolutely a violent crime and I think what was really telling was the idea that — and this really underscores the entire article; is the student body and the administration doesn't really treat rape as a crime, as a violent crime…. Even in this case, right, exactly. And this is why this case blew my mind, that Jackie's situation blew my mind; that even in a situation that was so extreme and so obviously

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

within the realm of criminal, that they would seek to suppress something like this because that's really what they did. Not only did they not report it to police, but really I feel she was sort of discouraged from moving this forward."

o "She's particularly afraid of Drew who she's assigned a tremendous amount of power in her own mind.... So I think that the idea of [Jackie] facing him or them down in any way is really just emotionally crippling for her. She's having a hard time facing up to that, and I think that she needs a lot of support if she's going to get to the place where she can actually confront them. When she does actually run into some of her alleged assailants on campus sometimes, she recognizes them all. She can identify them all. When she sees them, just the sight of them, obviously it's a shock but also it tends to send her into a depression. So it just goes to show sort of the emotional toll something like this would take. I just think it would require a great deal of support for her to move forward into any of these options to resolve her case and that's something that's been completely absent. She really hasn't had any of that support from her friends, from the administration, nor from her family."

o "What I found is that UVA is a place where their culture is one of extreme loyalty, so I guess it shouldn't have surprised me that the community of survivors, they're totally devoted to the University, even as they're not happy with the way that their cases are handled. They totally buy into the attitude that radiates from the administration that doing nothing is a fine option. You know, if you unburden yourself to the Dean and take care of your own mental health, then that's good enough. They created this support group, which is great for them and they do activism, they do bystander support seminars, I mean intervention seminars and things like that which is great, but really what they're doing is affirming one another's choices not to report, which is, of course, an echo of their own administration's kind of ethos."

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

- Did the defendants, Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely, make the following statement to the Washington Post on December 1, 2014?

  o "As I've already told you, the gang-rape scene that leads the story is the alarming account that Jackie — a person whom I found to be credible — told to me, told her friends, and importantly, what she told the UVA administration, which chose not to act on her allegations in any way — i.e., the overarching point of the article. THAT is the story: the culture that greeted her and so many other UVA women I interviewed, who came forward with allegations, only to be met with indifference."

- Did the defendants, Rolling Stone LLC and Wenner Media LLC, make the following statement to various media outlets from December 2, 2014 through December 4, 2014?

  o "The story we published was one woman's account of a sexual assault at a UVA fraternity in October 2012 – and the subsequent ordeal she experienced at the hands of University administrators in her attempts to work her way through the trauma of that evening. The indifference with which her complaint was met was, we discovered, sadly consistent with the experience of many other UVA woman who have tried to report such assaults. Through our extensive reporting and fact-checking, we have found Jackie to be entirely credible and courageous and we are proud to have given her disturbing story the attention it deserves."

- Did the defendants, Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely, make the following statements in the December 5, 2014 online edition of Rolling Stone magazine?

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

- "Lots of people have discouraged her from sharing her story, Jackie tells me with a pained look, including the trusted UVA dean to whom Jackie reported her gang-rape allegations more than a year ago."

- "A bruise still mottling her face, Jackie sat in Eramo's office in May 2014 and told her about the two others. One, she says, is a 2013 graduate, who'd told Jackie that she'd been gang-raped as a freshman at the Phi Psi house. The other was a first-year whose worried friends had called Jackie after the girl had come home wearing no pants. Jackie said the girl told her she'd been assaulted by four men in a Phi Psi bathroom while a fifth watched. (Neither woman was willing to talk to RS). As Jackie wrapped up her story, she was disappointed by Eramo's nonreaction. She'd expected shock, disgust, horror…. Of all her assailants, Drew was the one she most wanted to see held accountable — but with Drew about to graduate, he was going to get away with it. Because, as she miserably reminded Eramo in her office, she didn't feel ready to file a complaint. Eramo, as always, understood."

- "Like most colleges, sexual assault proceedings at UVA unfold in total secrecy Asked why UVA doesn't publish all its data, President Sullivan explains that it might not be in keeping with 'best practices' and thus may inadvertently discourage reporting. Jackie got a different explanation when she'd eventually asked Dean Eramo the same question. She says Eramo answered wryly, 'Because nobody wants to send their daughter to the rape school.'"

For each individual statement, you must then determine:

(2)     Was the statement seen, read, or heard by someone other than the plaintiff?

(3)     Is the statement false?

(4)     Did the defendant or defendants make the statement knowing it to be false or did the defendant or defendants make it so recklessly as to

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

amount to a willful disregard for the truth, that is, with a high degree
of awareness that the statement was probably false?

(5)     Was the plaintiff damaged as a result of the statement?

(6)     If the plaintiff is entitled to recover, what is the amount of plaintiff's
damages?

On these issues the plaintiff has the burden of proof.

Your decisions on these issues must be governed by the instructions that
follow.

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing
*Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

## INSTRUCTION No. 5: Liability-Defamation by implication

Plaintiff contends that defendants' statements in the November 19, 2014 online edition of Rolling Stone magazine and the December 5, 2014 print edition of Rolling Stone magazine, read as a whole and in context, defamed her by inference, implication or insinuation. In determining whether defendants defamed the plaintiff by inference, implication, or insinuation, the issues for you to decide are:

(1)  Did the defendants make the statements that plaintiff alleges defamed her by inference, implication, or insinuation?

(2)  Were the statements seen, read, or heard by someone other than the plaintiff?

(3)  Is the claimed inference, implication or insinuation a reasonable one that a reasonable person would draw from the words used?

(4)  Is the claimed inference, implication, or insinuation false?

(5)  Did the defendants know that the inference, implication, or insinuation was false or did they make it so recklessly as to amount to a wilful disregard for the truth, that is, with a high degree of awareness that the inference, implication or insinuation was probably false?

(6)  Was the plaintiff damaged as a result of the inference, implication, or insinuation?

(7)  If the plaintiff is entitled to recover, what is the amount of plaintiff's damages?

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013); Va. Prac. Series TM, Va. Prac. Jury Instruction §48:4. Defamation by inference, implication, or insinuation from the words used (Updated Sept. 2015), citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7 (1954).

On these issues the plaintiff has the burden of proof.

Your decisions on these issues must be governed by the instructions that follow.

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.010 Liability Issues (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013); Va. Prac. Series TM, Va. Prac. Jury Instruction §48:4. Defamation by inference, implication, or insinuation from the words used (Updated Sept. 2015), citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7 (1954).

## INSTRUCTION No. 6: Publication—Definition

A defamatory statement is deemed published whenever communicated to and understood by a person other than the plaintiff.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:11. Publication—Definition (Updated Sept. 2015), citing *Thalhimer Bros v. Shaw,* 156 Va. 863, 871 (1931).

**INSTRUCTION No. 7: Publication—Direct or circumstantial evidence**

The plaintiff must prove by preponderance of the evidence that the defamatory statements at issue in this case were published. However, publication may be proven by either direct evidence of a third party or by circumstantial evidence. The plaintiff need not identify the person to whom the defamatory words were published, and need not place in evidence testimony from a third party regarding what the person heard and understood.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:512. Publication—Direct or circumstantial evidence (Updated Sept. 2015), citing *Food Lion, Inc. v. Melton,* 250 Va. 144, 150 (1995).

## INSTRUCTION No. 8: Of and Concerning

Generally, a libel plaintiff must show that the alleged libel was published "of or concerning" her. In order for the statement made by the defendant to be of and concerning the plaintiff, it is not necessary that the plaintiff be designated by name in the statement. It is a sufficient designation of or reference to the plaintiff if under all the surrounding circumstances those who hear or read the statement would reasonably believe that the plaintiff was the person referred to. Moreover, statements or publications by the same defendant regarding one specific subject or event and made over a relatively short period of time, some of which clearly identify the plaintiff and others which do not, may be considered together for the purpose of establishing that the plaintiff was the person 'of and concerning' whom the alleged defamatory statements were made.

Source: Va. Prac. Jury Instruction 48:5, Indirect reference to plaintiff (Updated Sept. 2015); *WJLA-TV v. Levin*, 264 Va. 140 (2002).

**INSTRUCTION No. 9: Defamation—Definition—Attack upon reputation**

A person has a right to an uninterrupted enjoyment of his or her reputation, and any attack upon his or her reputation is defamation.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:1. Defamation—Definition—Attack upon reputation (Updated Sept. 2015), citing *Gazette, Inc. v. Harris,* 229 Va. 1, 7 (1985).

## INSTRUCTION No. 10: Definition of Defamation

Defamation is a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:2.  Defamation—Definition—False factual statement (Updated Sept. 2015), citing *Hyland v. Raytheon Tech. Serv's Co.,* 277 Va. 40, 46 (2009).

**INSTRUCTION No. 11: Defamation by inference, implication or insinuation from words used**

In determining whether the statement made by the defendant is defamatory, you are to consider the words used in their proper context and in their plain and natural meaning as other people would understand them and according to the sense in which they appear to have been used. Defamation may be made by inference, implication or insinuation by the words used if such an inference, implication or insinuation is a reasonable one and if a reasonable person would draw it from the words used.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:4. Defamation by inference, implication or insinuation from words used (Updated Sept. 2015), citing *Carwile v. Richmond Newspapers*, 196 Va. 1, 7 (1954).)

**INSTRUCTION No. 12: Actual constitutional malice—Definition**

The Court has held as a matter of law that the plaintiff in this case was a limited purpose public figure at the time that defendants made the statements at issue. Because of this designation, the plaintiff is required to prove, in addition to the other elements of liability, that each statement was made with "actual malice." "Actual malice" is that malice that shows that a statement was made with knowledge that it is false or with reckless disregard of whether it is false or not.

Source: Sept. 22, 2016 S.J. Mem. Op. [Dkt. 188] at 9; Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:15. Actual constitutional malice—Definition (Updated Sept. 2015), citing *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964)*; Richmond Newspapers, Inc. v. Lipscomb,* 234 Va. 277, 289-95 (1987).

**INSTRUCTION No. 13: Actual constitutional malice—Test for**

The burden of proving "actual malice" requires the plaintiff to demonstrate with clear and convincing evidence that the defendants realized that their statements were false or that they subjectively entertained serious doubts as to the truth of their statements.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:16. Actual constitutional malice—Test for (Updated Sept. 2015), citing *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 511 (1984).

**INSTRUCTION No. 14: Actual constitutional malice—Proof of, evidence**

Actual malice is a subjective inquiry that focuses on the defendants' state of mind at the time the statements were published. A plaintiff is entitled to prove the defendants' state of mind through circumstantial evidence. In determining whether defendants acted with actual malice, you are entitled to consider evidence that the defendants failed to properly investigate the truth or falsity of their statements, that defendants departed from journalistic standards, that defendants evidenced ill will towards or intent to injure the plaintiff, and evidence that defendants conceived a storyline in advance of publication and then consciously set out to make the evidence conform to the preconceived story. Evidence of ill will, prejudice, hostility, hatred, contempt, intent to injure, and failure to conduct a sufficient investigation in the circumstances may be considered in determining whether a statement was made with actual malice; nevertheless, they do not in themselves prove that the statement was made knowing that it was false or that it was made with reckless disregard as to whether it was false or not. You must consider all of the evidence taken as a whole and determine as a question of fact whether the defendants made each statement knowing that it was false or with reckless disregard for the truth or falsity of the statement.

Source: Sept. 22, 2016 Mem. Op. [Dkt. 188] at 10-12; Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:17. Actual constitutional malice—Distinguished from common-law malice (Updated Sept. 2015), citing *Garrison v. State of La.,* 379 U.S. 64 (1964); *Ryan v. Brooks,* 634 F.2d 726 (4th Cir. 1980).

**INSTRUCTION No. 15: Actual constitutional malice—Awareness of contradictory information**

If the evidence shows that defendants failed to investigate where the story was weakened by inherent improbability, internal inconsistency, or apparently reliable contradictory information, you are permitted to infer from such evidence that defendants acted with actual malice. If you find that the information in defendants' possession at the time of publication did not support the statements that defendants made, or that defendants were aware of facts contradicting those statements, you may infer that defendants acted with actual malice.

Source: Sept. 22, 2016 Mem. Op. [Dkt. 188] at 13-14.

**INSTRUCTION No. 16: Actual constitutional malice—Reliance on source**

Repetition of another's words does not release one of responsibility if the repeater knows that the words are false or inherently improbable, or there are obvious reasons to doubt the veracity of the person quoted. Where a defendant relies on a source for a statement alleged to be defamatory, you may infer actual malice if the evidence shows that defendants had obvious reasons to doubt the source's veracity.

Source: Sept. 22, 2016 Mem. Op. [Dkt. 188] at 10-11; *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670 (4th Cir. 1982).

## INSTRUCTION No. 17: Defamation—Recovery based upon actual constitutional malice of defendant

If you believe from a preponderance of the evidence that the statements of the defendants were published, that they were defamatory and false, and if you further believe from clear and convincing evidence that in making the statements the defendants either knew that they were false or that they made the statements with reckless disregard as to whether they were false or not, and if you further believe from a preponderance of the evidence that the publication of the statements was the proximate cause of injury to the plaintiff, then you shall find your verdict in favor of the plaintiff and award compensatory damages.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:19. Recovery based upon actual constitutional malice of defendant (Updated Sept. 2015), citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964); *Gazette, Inc. v. Harris*, 229 Va. 1, 8 (1985).

# INSTRUCTION No. 18: Damages—Republication as an element

Plaintiff in this case alleges that the defendants republished certain of the defamatory statements on December 5, 2014. Whether defendants republished the statements is a question of fact for you to determine. A republication occurs when a defendant edits and retransmits the defamatory material or redistributes the material with a goal of reaching a new audience or, in other words, where a defendant has affirmatively reiterated a statement. In the context of internet articles, a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience. Where substantive material is added to a website, and that material is related to defamatory material that is already posted, a republication has occurred.

If you find that a republication occurred, you must determine, as with the other statements at issue, whether the republished statements were false and defamatory, whether they were made with actual malice, and whether the republication caused injury to the plaintiff.

If on the evidence and the other instructions of the court you find your verdict in favor of the plaintiff, and if you find that defendants authorized or directed the republication of the defamatory statements, then you may consider such republication in fixing the damages to which the plaintiff is entitled.

Source: Sept. 22, 2016 S.J. Mem. Op. [Dkt. 188] at 24-25; Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:36. Damages—Republication as an element (Updated Sept. 2015), citing *Weaver v. Beneficial Finance Co.,* 199 Va. 196, 199 (1957); *Luhring v. Carter,* 193 Va. 529, 537 (1952).

## INSTRUCTION No. 19: Compensatory damages

If you find your verdict for the plaintiff, then in determining the amount of damages to which she is entitled, you may take into consideration all of the circumstances surrounding the statements, the occasion on which they were made and the extent of their publication, the nature and character of the insult, the probable effect on those who heard the statements, and their probable and natural effect upon the plaintiff's personal feelings and upon her standing in the community and in her profession.

Your verdict should be for an amount that will fully and fairly compensate her for:

(1) Any loss or injury to her business or professional prospects;

(2) Any insult to her including any pain, embarrassment, humiliation, or mental suffering;

(3) Any injury to her reputation; and

(4) Any actual, out-of-pocket losses that were caused by the statement.

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.100 Actual Damages (LEXIS 2014), citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974); *Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 44-49 (2006); *WJLA-TV v. Levin*, 264 Va. 140, 163-64 (2002); *Poulston v. Rock*, 251 Va. 254, 261-62 (1996); *Gazette, Inc. v. Harris*, 229 Va. 1, 13 (1985); *Fleming v. Moore*, 221 Va. 884 (1981).

## INSTRUCTION No. 20: Punitive damages

If you find your verdict in favor of the plaintiff for compensatory damages, and if you believe from clear and convincing evidence that the defendant either knew that the statements made by them were false or that they made them with reckless disregard as to whether they were false, then you may also award the plaintiff punitive damages. Punitive damages are not awarded to compensate the plaintiff for any loss suffered by her, but to punish the defendants for their wrongful conduct and to deter them, and set an example for others, from engaging in similar conduct.

Source: Va. Prac. Series TM, Va. Prac. Jury Instruction § 48:37. Punitive damages (Updated Sept. 2015), citing *Gazette, Inc. v. Harris, 229 Va. 1, 43-51 (1985).*

**INSTRUCTION No. 21: Retraction Irrelevant To Liability Determination**

Defendants contend that they have retracted the statements in "A Rape on Campus" that Ms. Eramo alleges are defamatory. Whether or not Defendants have retracted those statements is not relevant for determining Defendants' defamation liability in this case.

You may not consider whether or not Defendants have retracted the statements in "A Rape on Campus" that Ms. Eramo alleges are defamatory in determining whether Defendants are liable for those statements.

Source: Virginia Code §§ 8.01-46 and 48 (retraction only relevant as potential evidence of mitigation of damages),

**INSTRUCTION No. 22: Taxability of Damages Award**

In determining the amount of damages to which Ms. Eramo is entitled, you should consider the fact that any damages you award to Ms. Eramo to compensate her for injury to her reputation and/or any damages you award to Ms. Eramo for harm, pain, embarrassment, humiliation will be considered taxable income — and she will have to pay federal and state income tax on any such award. For a married couple filing jointly, the federal government taxes income at the following rates:

| Rate | Income Amount |
|------|---------------|
| 25% | $75,300 to $151,900 |
| 28% | $151,900 to $231,450 |
| 33% | $231,450 to $413,350 |
| 35% | $413,350 to $466,950 |
| 39.6% | $466,950+ |

In addition to federal income taxes, Virginia taxes all income over $17,000 at a rate of $720 plus 5.75% of income over $17,000.

## Source and Authority

As the U.S. Supreme Court has recognized, jurors, like the American public, are tax-conscious and may make assumptions—including incorrect assumptions—about the taxability or non-taxability of damages awards. *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 496 (1980). And as the Supreme Court has explained, jurors' assumptions about the taxability or non-taxability can affect the amount of damages a jury awards to compensate for their belief in the taxability or non-taxability of those damages. *Id.* Accordingly, in order to avoid the possibility that mistaken assumptions about the taxability or non-taxability of damages may affect the jury's damages award, it is proper and advisable to instruct the jury about the tax implications of such an award. This is especially true where, as here, the applicable tax rules are anomalous: whereas most recoveries for personal injury sounding in tort are *not* taxable, damages awarded to

compensate a defamation plaintiff for injury to her reputation — and damages awarded to compensation a defamation plaintiff for harm, pain, embarrassment, humiliation — *are* taxable. *See* I.R.C. (26 U.S.C.) § 104; *see also, e.g.*, *Rivers v. U.S. Dep't of Interior*, No. 05-cv-2086, 2006 WL 2841929, at *14 (W.D. Wash. Oct. 3, 2006) (observing that Congress amended I.R.C. § 104 in 1996 to "treat[] damages in defamation actions as taxable income").

The Supreme Court and Fourth Circuit have repeatedly approved the use of jury instructions regarding the taxability of damages awards and have found error in refusals to give a requested instruction about the taxability or non-taxability of damages. *See id.* at 498 (holding district court's refusal to give instruction on taxability of damages to be reversible error, and observing: "[T]he requested instruction ...was brief and could be easily understood. It would not complicate the trial by making additional qualifying or supplemental instructions necessary. It would not be prejudicial to either party, but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages"); *Allred v. Maersk Line, Ltd.*, 35 F.3d 139 (4th Cir. 1994) (holding that "[i]t was reversible error for the district court to refuse the non-taxability instruction" regarding personal injury award"); *Stebbins v. Clark*, 5 F. App'x 196, 200-01 (4th Cir. 2001) (affirming instruction regarding taxability). And while the above cases involved instructions regarding the non-taxability of damages awards, the same logic applies to instructions regarding the taxability of awards.

Accordingly, Ms. Eramo respectfully requests that, during the damages phase, the Court instruct the jury in accordance with the instruction proposed above.

# INSTRUCTION No. 23: Finding Instruction

You shall return your verdict for the plaintiff if the plaintiff has proved by the greater weight of the evidence that:

(1)      The defendants made the following statements:

- That the defendants, Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely, made the following statements in the November 19, 2014 online edition of Rolling Stone magazine:

  o "Lots of people have discouraged her from sharing her story, Jackie tells me with a pained look, including the trusted UVA dean to whom Jackie reported her gang-rape allegations more than a year ago."

  o "A bruise still mottling her face, Jackie sat in Eramo's office in May 2014 and told her about the two others. One, she says, is a 2013 graduate, who'd told Jackie that she'd been gang-raped as a freshman at the Phi Psi house. The other was a first-year whose worried friends had called Jackie after the girl had come home wearing no pants. Jackie said the girl told her she'd been assaulted by four men in a Phi Psi bathroom while a fifth watched. (Neither woman was willing to talk to RS). As Jackie wrapped up her story, she was disappointed by Eramo's nonreaction. She'd expected shock, disgust, horror…. Of all her assailants, Drew was the one she most wanted to see held accountable — but with Drew about to graduate, he was going to get away with it. Because, as she miserably reminded Eramo in her office, she didn't feel ready to file a complaint. Eramo, as always, understood."

  o "Like most colleges, sexual assault proceedings at UVA unfold in total secrecy. Asked why UVA doesn't publish all its data, President Sullivan explains that it might not be in keeping with 'best practices' and thus may inadvertently discourage reporting. Jackie fot a different explanation when she'd eventually asked

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.095 Finding Instruction (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

Dean Eramo the same question.  She says Eramo answered wryly, 'Because nobody wants to send their daughter to the rape school.'"

- That the defendants, Rolling Stone LLC, Wenner Media LLC, and

  Sabrina Rubin Erdely, made the following statements in the December

  5, 2014 print edition of Rolling Stone magazine:

  o "Lots of people have discouraged her from sharing her story, Jackie tells me with a pained look, including the trusted UVA dean to whom Jackie reported her gang-rape allegations more than a year ago."

  o "A bruise still mottling her face, Jackie sat in Eramo's office in May 2014 and told her about the two others.  One, she says, is a 2013 graduate, who'd told Jackie that she'd been gang-raped as a freshman at the Phi Psi house.  The other was a first-year whose worried friends had called Jackie after the girl had come home wearing no pants.  Jackie said the girl told her she'd been assaulted by four men in a Phi Psi bathroom while a fifth watched.  (Neither woman was willing to talk to RS).  As Jackie wrapped up her story, she was disappointed by Eramo's nonreaction.  She'd expected shock, disgust, horror….  Of all her assailants, Drew was the one she most wanted to see held accountable — but with Drew about to graduate, he was going to get away with it.  Because, as she miserably reminded Eramo in her office, she didn't feel ready to file a complaint.  Eramo, as always, understood."

  o "Like most colleges, sexual assault proceedings at UVA unfold in total secrecy.  Asked why UVA doesn't publish all its data, President Sullivan explains that it might not be in keeping with 'best practices' and thus may inadvertently discourage reporting.  Jackie fot a different explanation when she'd eventually asked Dean Eramo the same question.  She says Eramo answered wryly, 'Because nobody wants to send their daughter to the rape school.'"

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.095 Finding Instruction (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

- That the defendant, Sabrina Rubin Erdely, make the following statements on the November 26, 2014 broadcast of the Brian Lehrer Show radio program:

  o "[Jackie] was just kind of brushed off by her friends and by the administration…. And eventually, when she did report to the administration, the administration did nothing about, they did nothing with the information. And they even continued to do nothing even when she eventually told them that she had become aware of two other women who were also gang raped at the same fraternity."

- That the defendant, Sabrina Rubin Erdely, made the following statements on the November 27, 2014 episode of the Slate DoubleX Gabfest Podcast:

  o "[Jackie] had eventually kind of mustered up the courage to tell the administration that she had been brutally gang raped, and that the University did nothing with this information and that they continued to do nothing even when she told them that she had become aware of two other women that were also gang raped at that fraternity."

  o "It is incredibly extreme. I mean whether this was perpetrated by a serial rapist who has many victims — I mean it seems like no matter what, this is an incredibly messed up situation. But it was absolutely a violent crime and I think what was really telling was the idea that — and this really underscores the entire article; is the student body and the administration doesn't really treat rape as a crime, as a violent crime…. Even in this case, right, exactly. And this is why this case blew my mind, that Jackie's situation blew my mind; that even in a situation that was so extreme and so obviously within the realm of criminal, that they would seek to suppress something like this because that's really what they did. Not only

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.095 Finding Instruction (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

did they not report it to police, but really I feel she was sort of discouraged from moving this forward."

o "She's particularly afraid of Drew who she's assigned a tremendous amount of power in her own mind…. So I think that the idea of [Jackie] facing him or them in any way is really just emotionally crippling for her. She's having a hard time facing up to that, and I think that she needs a lot of support if she's going to get to the place where she can actually confront them. When she does actually run into some of her alleged assailants on campus sometimes, she recognizes them all. She can identify them all. When she sees them, just the sight of them, obviously it's a shock but also it tends to send her into a depression. So it just goes to show sort of the emotional toll something like this would take. I just think it would require a great deal of support for her to move forward into any of these options to resolve her case and that's something that's been completely absent. She really hasn't had any of that support from her friends, from the administration, nor from her family."

o "What I found is that UVA is a place where their culture is one of extreme loyalty, so I guess it shouldn't have surprised me that the community of survivors, they're totally devoted to the University, even as they're not happy with the way that their cases are handled. They totally buy into the attitude that radiates from the administration that doing nothing is a fine option. You know, if you unburden yourself to the Dean and take care of your own mental health, then that's good enough. They created this support group, which is great for them and they do activism, they do bystander support seminars, I mean intervention seminars and things like that which is great, but really what they're doing is affirming one another's choices not to report, which is, of course, an echo of their own administration's kind of ethos."

- That the defendants, Rolling Stone LLC, Wenner Media LLC, and

  Sabrina Rubin Erdely, made the following statement to the

  Washington Post on December 1, 2014:

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.095 Finding Instruction (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

- o "As I've already told you, the gang-rape scene that leads the story is the alarming account that Jackie — a person whom I found to be credible — told to me, told her friends, and importantly, what she told the UVA administration, which chose not to act on her allegations in any way — i.e., the overarching point of the article. THAT is the story: the culture that greeted her and so many other UVA women I interviewed, who came forward with allegations, only to be met with indifference."

- That the defendants, Rolling Stone LLC, and Wenner Media LLC, made the following statement to various media outlets from December 2, 2014 though December 4, 2014:

  - o "The story we published was one woman's account of a sexual assault at a UVA fraternity in October 2012 – and the subsequent ordeal she experienced at the hands of University administrators in her attempts to work her way through the trauma of that evening. The indifference with which her complaint was met was, we discovered, sadly consistent with the experience of many other UVA woman who have tried to report such assaults. Through our extensive reporting and fact-checking, we have found Jackie to be entirely credible and courageous and we are proud to have given her disturbing story the attention it deserves."

- That the defendants, Rolling Stone LLC, Wenner Media LLC, and Sabrina Rubin Erdely, made the following statements in the December 5, 2014 online edition of Rolling Stone magazine:

  - o "Lots of people have discouraged her from sharing her story, Jackie tells me with a pained look, including the trusted UVA dean to whom Jackie reported her gang-rape allegations more than a year ago."

  - o "A bruise still mottling her face, Jackie sat in Eramo's office in May 2014 and told her about the two others. One, she says, is a 2013 graduate, who'd told Jackie that she'd been gang-raped as a

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.095 Finding Instruction (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

freshman at the Phi Psi house. The other was a first-year whose worried friends had called Jackie after the girl had come home wearing no pants. Jackie said the girl told her she'd been assaulted by four men in a Phi Psi bathroom while a fifth watched. (Neither woman was willing to talk to RS). As Jackie wrapped up her story, she was disappointed by Eramo's nonreaction. She'd expected shock, disgust, horror…. Of all her assailants, Drew was the one she most wanted to see held accountable — but with Drew about to graduate, he was going to get away with it. Because, as she miserably reminded Eramo in her office, she didn't feel ready to file a complaint. Eramo, as always, understood."

- o "Like most colleges, sexual assault proceedings at UVA unfold in total secrecy. Asked why UVA doesn't publish all its data, President Sullivan explains that it might not be in keeping with 'best practices' and thus may inadvertently discourage reporting. Jackie fot a different explanation when she'd eventually asked Dean Eramo the same question. She says Eramo answered wryly, 'Because nobody wants to send their daughter to the rape school.'"

And, for each individual statement, that

(2)    it was heard or seen by someone other than the plaintiff; and

(3)    it was false; and

(4)    the plaintiff sustained actual damage as a result of the statement; and

if the plaintiff further proved by clear and convincing evidence

(5)    that the defendant knew the statement was false or made it so recklessly as to amount to a wilful disregard for the truth, that is, with a high degree of awareness that the statement was probably false.

You shall find your verdict for the defendants if the plaintiff failed to prove any one or more of the elements above.

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.095 Finding Instruction (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013).

**INSTRUCTION No. 24: Finding Instruction-Defamation by implication**

Plaintiff contends that defendants' statements in the November 19, 2014 online edition of Rolling Stone magazine and the December 5, 2014 print edition of Rolling Stone magazine, read as a whole and in context, defamed her by inference, implication or insinuation. You shall find you verdict for the plaintiff if, considering the statements in their proper context and in their plain meaning as other people would understand them and according to the sense in which they appear to be used:

 (1) The statements were heard or seen by someone other than the plaintiff; and

 (2) the claimed inference, implication, or insinuation is a reasonable one that a reasonable person would draw from the words used; and

 (3) the inference, implication, or insinuation was false; and

 (4) the plaintiff sustained actual damage as a result of the inference, implication, or insinuation; and

if the plaintiff further proved by clear and convincing evidence

 (5) that the defendant knew the inference, implication, or insinuation was false or made it so recklessly as to amount to a wilful disregard for the truth, that is, with a high degree of awareness that the statement was probably false.

You shall find your verdict for the defendants if the plaintiff failed to prove any one or more of the elements above.

Source: 2-37 Virginia Model Jury Instructions — Civil Instruction No. 37.095 Finding Instruction (LEXIS 2014), citing *Tharpe v. Saunders*, 285 Va. 476, 483-84 (2013); Va. Prac. Series TM, Va. Prac. Jury Instruction §48:4. Defamation by inference, implication, or insinuation from the words used (Updated Sept. 2015), citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7 (1954).